# Exhibit A

BURNS & SPECK
120 WOOD AVENUE SOUTH
SUITE 609
ISELIN, NJ 08830
(732) 596-1999 / Fax (732) 596-1979
Attorney for Plaintiff

SUPERIOR COURT OF NEW JERSEY
CHANCERY DIVISION
MIDDLESEX COUNTY

EMMMANUEL OTIOGIAKHI                    :
                                        :
                    Plaintiff           :
                                        :   Docket No.: L-5090-11
            vs.                         :
                                        :          **Civil Action**
AAMCO TRANSMISSIONS, INC.               :
                                        :   **VERIFIED COMPLAINT**
                    Defendant           :
                                        :

      Plaintiff, Emmanuel Otiogiakhi doing business at 209 New Brunswick Avenue in the

City of Perth Amboy, County of Middlesex and State of New Jersey by way of Complaint

against Defendant, Aamco Transmissions, Inc. hereby says:

## PRELIMINARY STATEMENT

1.    Defendant, Aamco Transmissions, Inc. [hereinafter ATI] is a corporation with a

    headquarters at 201 Gibraltar Road in the Township of Horsham, County of

    Montgomery, State of Pennsylvania.

2.    Plaintiff entered into a Franchise Agreement with Defendant Aamco Transmissions, Inc.

    on or about November 6, 2006 for the location at 209 New Brunswick Avenue, Perth

    Amboy, New Jersey.  Copy of the Agreement is annexed hereto as Exhibit A.

3.    Pursuant to the Franchise Agreement all disputes are to be settled through binding

    arbitration in a accordance with the Commercial Arbitration Rules of the American

    Arbitration Association.

4.    Defendant, ATI sent a letter dated June 2, 2011 to Plaintiff giving formal notice of the

termination of his franchise effective sixty days from the date of receipt of the letter. Copy of same is annexed hereto as Exhibit B.

5.   Plaintiff did not purposefully not pay any amounts owed.

6.   The amounts first claimed by ATI were approximately $380,000.  The only reports ever supplied to Plaintiff are attached at Exhibit C.

   a.   However, ATI miscounted the amount due based on the fleet sales.  Fleets make direct payments to ATI who then submit the payment minus the five percent owed to ATI to Plaintiff.  This reduced the amount due.  Plaintiff had to point this out to the auditor by the name of Ed Boyle.

   b.   There was a second meeting and ATI took out $40,000 due to fleet sales bringing the amount down to $340,000.

   c.   Also, there are receipts wherein the customer abandoned the car and no money was ever paid.  Plaintiff does not believe he has been given credit for these.

   d.   The reports given to Plaintiff at Exhibit C were generated randomly with no backup for him to refer too.

   e.   All the auditor did was come to his computer, take a back up and take it to the home office.

   f.   The auditor then claimed that "most" of the invoices he found in Plaintiff's drawer were not in the system.  This is not true.

   g.   The auditor effectively accused Plaintiff of intentionally deleted invoices.  During the meeting the auditor brought out RO receipts and claimed they were deleted.

   h.   Plaintiff came back to the office after the meeting to verify ATI's auditor's claim and printed out some of the RO's that the auditor claimed were not in the system.

Plaintiff was not able to print them all out because he was not given a specific list. Plaintiff remembered some of them by name so he printed them out.  See sample attached at Exhibit D.

i. Additionally, in 2009 Plaintiff's accountant came to his office and attempted to print out some data for sales tax purposes.  The computer was somehow screwed up by this.  Plaintiff called ATI's home office and asked for help with the FOCUS computer program.  Plaintiff was advised to call the FOCUS department by the field manager.

j. Plaintiff was told it was too late and there was nothing they could do about the lost information.  Plaintiff was advised to do something to the computer to avoid the deletions of the new receipts that were being introduced currently.

k. It should be known that even though there were deletions in the system Plaintiff had already provided the gross sales data to ATI.

l. Plaintiff tried to explain the deletions issue to ATI, but they did not want to hear anything.

7. It seemed that Defendant's mind was already made up what they wanted to do with Plaintiff.

8. Other dealers have had the exact same problems as Plaintiff has.  There was at least one dealer with the same problem who was not terminated.

9. Brian O'Donnell who is the person Plaintiff believes that made the decision to terminate him has in the past said to Plaintiff, "they want to protect AAMCO.  People complain about understanding your accent"; Lou Fizzourati [phonetic] who is the chairman of the ad pool stated, "people in the home office are complaining about your accent, you should

not be answering the phone but rather a manager should be who has a better command of English." Roy Argento who is an AAMCO dealer has denigrated me because of my accent.

10. Plaintiff is the only black man who is an owner in the New Jersey, New York, Connecticut area. Plaintiff is being treated differently from other people who ATI has accused of the same thing as he was accused of.

11. ATI will not care if they close a shop. They then make the fees for the sale of the shop.

12. Currently, Plaintiff does not believe that ATI's accounting is accurate.

13. Finally, the District Manager, Rob Fillman and Plaintiff discussed the date out procedures. Plaintiff was advised that he could date out the invoice. This would have the effect of not showing the gross amount until later. This would allow ATI to claim that Plaintiff was not billing properly when in fact he was.

## FIRST COUNT

14. Plaintiff repeats the allegations contained in paragraphs 1 to 13 above as if same were set forth at length herein.

15. Plaintiff had a franchise agreement contract with Defendant and as a matter of law, there was a covenant of good faith and fair dealing that neither party would do anything to injure the other in obtaining the fruits and benefits of the agreement.

16. Plaintiff performed according to the agreement at all times mentioned herein and performed all terms and conditions of the agreement in a competent and professional manner.

17. Defendant's deliberate and knowing actions involving deception, fraud, false pretense, false promises, concealment of material facts and misrepresentations, constitute a breach

of the implied covenant of good faith and fair dealing.

18.   As a direct, proximate and foreseeable result of Defendant's breach of the implied

covenant of good faith and fair dealing, Plaintiff has suffered damages..

WHEREFORE, Plaintiff demands judgment against Defendant for compensatory

damages, together with attorney fees, cots of suit and such other relief as the court may deem

just and proper.

## SECOND COUNT

19.   Plaintiff repeats the allegations contained in paragraphs 1 to 18 above as if same were set

forth at length herein.

20.   Plaintiff entered into a Franchise Agreement with Defendant.

21.   Defendant breached it's contract with Plaintiff by unilaterally terminating same without

sufficient cause under the agreement.

22.   Defendant had an obligation to properly audit Plaintiff's books.  Defendant failed to

properly audit the books and records of Plaintiff.

23.   Plaintiff has suffered damages as a result of Defendant's breach of contract.

WHEREFORE, Plaintiff demands judgment against Defendant for compensatory

damages, together with attorney fees, costs of suit and  such other relief as the court may deem

just and proper.

## THIRD COUNT

24.   Plaintiff repeats the allegations contained in paragraphs 1 to 23 above as if same were set

forth at length herein.

25.   Plaintiff is the only black man who is who is an owner in the New Jersey, New York,

Connecticut area.

26.    Plaintiff is being treated differently from other people who Defendant has accused of the same thing as he was accused of yet their franchise agreements were not terminated.

27.    Plaintiff was told by several representatives of Defendant that people complain about his accent and he shouldn't be answering the phone because of his accent.

28.    Defendant's termination of Plaintiff's franchise agreement is a direct result of the discrimination by Defendant, ATI's employees towards Plaintiff.

29.    At all material times, Plaintiff was subjected to discrimination from Defendant and has suffered damages as a result of the acts of Defendant.

30.    At all material times, Defendant violated the New Jersey Law Against Discrimination (NJ LAD), N.J.S.A. 10:5-2, *et. al.*

WHEREFORE, Plaintiff demands judgment against Defendant for compensatory damages, together with attorney fees, costs of suit and such other relief as the court may deem just and proper.

## FOURTH COUNT

31.    Plaintiff repeats his allegations contained in paragraphs 1 to 30 above as if same were set forth at length herein.

32.    Defendant's auditor did not do a proper or thorough accounting of Plaintiff's business.

33.    Defendant terminated their agreement with Plaintiff as a result of this improper audit.

34.    A full and proper accounting of Plaintiff's business needs to be done to respond to Defendant's false allegations.

WHEREFORE, Plaintiff demands judgment against Defendant for compensatory damages, together with attorney fees, costs of suit and such other relief as the court may deem just and proper.

## DESIGNATION OF TRIAL COUNSEL

Pursuant to the provisions of Rule 4:5-1, the Court is advised that Michael R. Speck is hereby designated as trial counsel.

## CERTIFICATION PURSUANT TO R. 4:5-1

The undersigned hereby certifies that this matter is not the subject of any other action or of a pending arbitration proceeding.  The undersigned hereby certifies that he knows of no other parties that should be joined in the action at this time.

BURNS & SPECK
Attorneys for Plaintiff

By: _____

Michael R. Speck

Dated: 6-30-11

## CERTIFICATION AND VERIFICATION OF NONCOLLUSION

1.      I am the Plaintiff in the foregoing complaint to which this is annexed.

2.      The allegations of the complaint are true to the best of my knowledge and belief.  The
complaint is made in truth and good faith and without collusion for the causes set forth
therein.


I certify that the foregoing statements made by me are true.  I am aware that if any of the
foregoing statements made by me are wilfully false, I am subject to punishment.

_____
Emmanuel Otiogiakhi

Dated:   6/21/11

# Exhibit A

# AAMCO TRANSMISSIONS, INC.
## Franchise Agreement

This Agreement has been entered into this 6th day of November, 2006 at Horsham, Pennsylvania between AAMCO Transmissions, Inc., a Pennsylvania corporation having its principal office in Horsham, Pennsylvania, referred to as "AAMCO", and

Emmanuel Otolglakhi

referred to as "Franchisee".

AAMCO has developed methods, techniques and systems for the operation of centers devoted to transmission repair. AAMCO has built up substantial business and valuable good will by the establishment of such centers throughout the United States and in Canada.

AAMCO makes its experience and know-how available to all its franchisees in order to assist them in opening and operating a successful AAMCO center. AAMCO makes this and other means at its disposal available to aid in the management and merchandising of Franchisee's center.

Franchisee acknowledges that he does and will have full managerial responsibility and authority for the operation of his center; he recognizes that his success, and that of all AAMCO centers, depends on adherence to the highest standards of business practice and on the maintenance of prompt, efficient, courteous and satisfactory service to the public.

Franchisee acknowledges that he has conducted a thorough and independent investigation and based on that investigation, Franchisee desires to enter into the business of operating an AAMCO center, and to develop the market to its full potential in his locality.

The parties enter into this Agreement in recognition of these considerations and of the mutual agreements expressed herein.

1.1    **Franchise.** This Agreement is for the operation by Franchisee of one AAMCO transmission repair center. The location is specified at section 1.2 of this Agreement. This Agreement allows Franchisee to use the trade name and trademark "AAMCO" only upon fulfillment of the following conditions:

(a)   Franchisee must successfully complete AAMCO's training course.

(b)   Franchisee must equip and inventory the center/location according to AAMCO's standards before opening; this requirement includes the appearance of the center, all to be done in accordance with sections 8.1 and 9.2 of this Agreement.

(c)   Franchisee must secure insurance as required by section 12.1 of this Agreement.

1.2    **Location.** The center shall be located as follows:

209 New Brunswick Avenue
Perth Amboy, NJ  08861

During the term of this Agreement, Franchisee shall operate his center at no other address. Franchisee shall not move or relocate his center without the prior written consent of AAMCO.

1.3    **Market.** AAMCO expressly reserves the right to grant additional franchises in the same county or MSA/PMSA. The number of centers will be based upon then current motor vehicle registrations and the marketing program of AAMCO; the number of franchised centers shall be limited to a maximum of one center for each 100,000 motor vehicle registrations.

2.1    **Trademark.** Franchisee acknowledges that AAMCO is the owner of valid trademarks and service marks using the mark "AAMCO". Franchisee expressly agrees not to register the word "AAMCO" as part of the company name of his business entity, corporation, partnership or limited liability company.

3.1    **Franchise Fee.** Starting with the opening of his center, Franchisee agrees to pay a weekly franchise fee to AAMCO of five (5)% of the gross receipts of the preceding week. "Gross receipts" shall mean all forms of consideration received for any services or parts in the center, including supplies and accessories, regardless of whether for manual or automatic transmissions, whether from wholesale, fleet, commercial or retail business.

4.1    **Business Reports.** Starting with the opening of his center, Franchisee agrees to mail to AAMCO an accurate report of gross receipts received during the preceding week, along with copies of the repair orders for all work completed during the preceding week and such other information or reports as AAMCO may request. These should accompany a check or money order for the amount required under section 3.1, and should be mailed so as to be received no later than Tuesday of each week. Franchisee acknowledges that failure to furnish complete and accurate reports of business on a timely basis deprives AAMCO of the means to control and supervise the use of its marks, or to communicate with members of the motoring public who are customers of AAMCO's franchisees. In addition to an accurate report of gross receipts on the forms prescribed by AAMCO, business reports shall also consist of all home office copies of repair order forms used in the center during the reporting period which shall be attached to the prescribed form.

5.1   General Policies.   Franchisee agrees that for the term of this Agreement he shall give his personal loyalties to the goals of the AAMCO chain in order to enhance the growth of AAMCO's national identity, the reputation of AAMCO as a specialist in the transmission field, and the quality of repairs associated with the name AAMCO.

Franchisee agrees that, regarding the hiring of employees for his center, he will not initiate directly or indirectly any contact with any other person known to him to be employed by another AAMCO franchisee for the purpose of inducing such employee to work in Franchisee's center; provided, however, nothing shall prevent Franchisee from advertising generally for employees to fill vacant positions. Franchisee agrees to hire only those employees who, upon appropriate screening, demonstrate themselves to be honest and dependable. Franchisee agrees to direct any of his employees, including any customer service manager employed in his AAMCO center, to attend meetings and to meet training requirements as AAMCO may determine.

5.2   Performance Standards.   Except as otherwise approved in writing by AAMCO, which approval shall not be unreasonably withheld, Franchisee agrees that during the period of this Agreement he will devote his full time, energy and effort to the operation of his center, and agrees not to engage in any other business either at the location of his center or at any other location.

Franchisee agrees that he will comply with all of the policies and procedures which AAMCO establishes from time to time including those set forth in AAMCO's training manuals, as modified and/or updated from time-to-time as determined by AAMCO in its sole discretion.

Franchisee acknowledges that AAMCO has the right to visit and enter the center at reasonable times, for the purpose of inspecting the center, its equipment and inventory, and to determine the nature and quality of the service rendered there, including the manner and method of the center's operation by Franchisee. Franchisee specifically agrees that neither his physical presence in the center nor his specific consent to the inspection shall be necessary.

Franchisee acknowledges that any customer complaints cause harm to the growth of AAMCO's national identity, reputation in the marketplace and association of its name with quality repairs. Franchisee agrees that any customer complaints generated by his center, including but not limited to those in which customers allege abuse, fraud, deceptive or unfair trade practices, cause such harm individually and in the aggregate. Franchisee agrees to operate his center in such manner so as to avoid customer complaints. Franchisee agrees that he will deal fairly and honestly with AAMCO and with each customer, and that he will render prompt, workmanlike, courteous and willing service in his center. Franchisee agrees to handle all customer complaints and adjustments in the same fashion whether they arise from his center or from any other AAMCO center. Franchisee specifically agrees to conduct his center in a manner so that it will not detract from nor bring into disrepute the trademark or name "AAMCO".

All personnel whom Franchisee employs shall conform to the experience or skill standards which AAMCO may prescribe. Franchisee further agrees to attend such meetings and training sessions as AAMCO may require, and to direct any of his employees to attend such meetings and training sessions, including directing the center's technicians to obtain technical certification, as AAMCO may require, pursuant to AAMCO's technical certification program or a comparable technical certification program which complies with AAMCO's specifications.

In his operation of his center, Franchisee agrees to use only such forms as AAMCO specifically prescribes or authorizes including, without limitation, AAMCO diagnostic forms, AAMCO repair order, AAMCO warranty cards and AAMCO reporting forms.

Franchisee agrees to offer to customers of his center all services, products and/or warranties which AAMCO may prescribe. Franchisee acknowledges that AAMCO retains the exclusive right to make modifications from time-to-time to such services, products and/or warranties.

5.3   Appearance Standards.   Franchisee agrees to keep his center's premises in a clean, wholesome, attractive and safe condition, and to keep it in good maintenance and repair. Franchisee agrees to maintain the interior and exterior painting and décor, and furnishings of his center in such a manner and form as may be required by AAMCO. Franchisee agrees to purchase and display in or about his center only the signs, logos or other materials which are required or approved by AAMCO.

5.4   Maintenance Standards.   Franchisee recognizes that it is in the mutual interests of both parties to this Agreement that the AAMCO center he operates be equipped and maintained in accordance with the highest standards of quality, and Franchisee specifically agrees to follow the directions of AAMCO in this regard, subject to the observance of any applicable laws.

5.5   Non-Disclosure.   Franchisee agrees that he will not furnish any information concerning AAMCO's service program, training, diagnostic and technical materials, operations techniques, advertising or promotion ideas, or concerning the financial status of AAMCO to anyone; provided, that nothing in this section shall prevent the use of these materials or of this information by employees in Franchisee's AAMCO center.

Franchisee acknowledges that AAMCO is the sole owner of all rights to the AAMCO service program, and of all books, manuals or documents provided to Franchisee for the operation of his center.

Franchisee recognizes that AAMCO has expended substantial funds and effort in the development of its service program, training, diagnostic and technical materials, and operating techniques, and he specifically agrees not to engage in competition with AAMCO using any training or policy manuals, catalogues, lists, forms or aids provided by AAMCO.

6.1   Obligations of AAMCO.   AAMCO agrees that before AAMCO grants any additional franchise in the county or MSA/PMSA in which Franchisee is located, it will conduct a marketing study and will receive and consider input and comments from Franchisee.

AAMCO agrees to assist Franchisee by providing Technical Consulting services for use by all franchisees. These services shall include Technical Hot Line Department, Publication of Technical Advisory bulletins, Publication of Technical Bench tips, Publication of Technical Bench notes, Publication of Technical columns in the Twin Post, Production of video training films, the availability of the Rebuilders Academy and additional in-house only training seminars. AAMCO further agrees that the ratio of the Technical Department's expenditures to franchise fee revenue for the provision of said services will be the minimum ratio maintained for the provision of these services. AAMCO further agrees to assist Franchisee by providing limited operations consulting services to all franchisees.

AAMCO agrees that it will assist in the design of advertising promoting the business of AAMCO franchisees and the services they sell.  AAMCO agrees to make available to Franchisee its experience, know-how, guidance, and counseling with respect to national, regional, and local advertising, and combinations thereof, including the selection of particular media and advertising content, as well as the choice of agencies for the purchase and use of these advertising techniques.

AAMCO agrees to sell to Franchisee during this Agreement the quantities of those AAMCO products mentioned in the Appendix A of this Agreement, as Franchisee wishes from time to time to order subject to AAMCO's standard credit approval; provided, however, that AAMCO may at any time in its own discretion discontinue the sale of any product or products, if in AAMCO's opinion it is unprofitable, not feasible, or otherwise undesirable to continue such products.

7.1    National Creative Advertising.   Franchisee agrees to pay his proportionate share of "National Creative Advertising" in accordance with the formulas which will be provided by the National Creative Committee and administered by AAMCO.  Payment for National Creative Advertising shall be made to AAMCO in accordance with its instructions.

7.2    Local Advertising.   Franchisee acknowledges and agrees that all advertising must be approved by AAMCO in advance of its use and Franchisee agrees not to use any advertising unless and until its content is approved in writing by AAMCO.

Franchisee specifically agrees to participate in and pay for the national Yellow Pages program of AAMCO and agrees not to place Yellow Pages advertising in any other manner.

Franchisee acknowledges that, in addition to Yellow Pages advertising, it is mandatory to employ advertising at the local level and to participate in and pay for advertising programs and promotional activities at the local level.  Franchisee specifically agrees to establish and adhere to a local advertising budget, subject to AAMCO's approval.

Franchisee further agrees to share local advertising expenses with other franchisees in the Designated Market Area (DMA) as defined by A.C. Nielsen Company which may change from time-to-time.  If Franchisee's AAMCO center is not part of a DMA or is the only AAMCO center in a DMA, Franchisee agrees to share local advertising with other franchisees in related or adjoining DMAs if coverage from local advertising in the related or adjoining DMAs permeates within Franchisee's market or if directed by AAMCO.

Franchisee acknowledges that AAMCO has the right to approve an advertising agency, which approval shall not be unreasonably withheld, and Franchisee agrees to place advertising only with an agency approved by AAMCO; Franchisee agrees to pay promptly fees which become due to any such agency.

If Franchisee fails to pay promptly an amount due his advertising agency or his local advertising group or pool, then either AAMCO, or other AAMCO franchisees in the local advertising group or pool of which Franchisee is a member, or the local advertising group or pool shall be entitled to recover the amount due from Franchisee.  Franchisee acknowledges that all local advertising benefits him and the other franchisees in the local advertising group or pool.  Franchisee acknowledges that despite failure to contribute to his local AAMCO advertising group or pool, local advertising expenditures by such group or pool confer substantial benefits on him, and further acknowledges his responsibility for payment therefor.

AAMCO specifically reserves the right to have or allow the local AAMCO advertising group or pool seek enforcement of this obligation.

7.3    National Advertising.   Franchisee agrees to participate in advertising programs at the national level if established or directed by AAMCO.  Franchisee agrees to pay his proportionate share of "National Advertising" and publicity in accordance with reasonable formulas provided by AAMCO.  Payment for National Advertising billings and costs shall be made in accordance with AAMCO's instructions.

8.1    Signs.   Franchisee agrees to erect in and outside of his center only such signs as are approved by AAMCO.  No other signs regardless of content, size or construction may be erected or used.

9.1    Standards and Specifications for Equipment and Inventory.   AAMCO shall fix and determine all standards, specifications and requirements for the equipment, including diagnostic and technical equipment, supplies, parts, and assembly sets used by Franchisee in his AAMCO center.  Franchisee may purchase these items from any source, as long as they conform to those standards and specifications.  AAMCO agrees to furnish these standards and specifications to Franchisee, or to a vendor or manufacturer, without charge.

Franchisee acknowledges that AAMCO may change such standards, specifications and requirements from time-to-time, and agrees to make any additional purchases of equipment and/or supplies needed to comply with such updated requirements.

9.2    Equipment, Supplies and Inventory.   If Franchisee requests to purchase equipment, supplies and inventory from or through AAMCO, AAMCO agrees to supply them at the price then in effect; provided, that if prior to delivery the price to AAMCO shall increase, then AAMCO may proportionately increase the price to Franchisee.  If any item is not available at the time of request, then AAMCO may substitute merchandise of a similar quantity, and adjust the price, after notice to Franchisee.

AT-04-6(1) Resale                                                      3

9.3    Operating Inventory.  Franchisee acknowledges that the consumer acceptance, quality, and standardization of parts and assembly sets sold by AAMCO centers, and agrees that the use exclusively of parts and assembly sets which comply with AAMCO's specifications is an essential condition of the performance of this Agreement.  Franchisee agrees to purchase and sell parts and assembly sets which comply with AAMCO's specifications.  At the request of AAMCO, Franchisee will submit a certification that he uses parts and assembly sets which comply with AAMCO's specifications.  Further, Franchisee agrees that at the request of AAMCO he will submit information about the purchase of his parts and assembly sets, including without limitation, invoices, lists of vendors and manufacturers from whom Franchisee purchases, and actual parts and assembly sets for testing and examination.  AAMCO in its discretion shall determine what information is necessary in order to perform such testing or examination.

Franchisee acknowledges and agrees that the training of his technical employees is essential to the successful operation of his Center.  Franchisee, therefore, agrees to participate in and pay for the AAMCO Tech Video Library Program according to the terms and conditions as determined by AAMCO, or to participate in a comparable technical training program which complies with AAMCO's specifications.  Franchisee further agrees that at the request of AAMCO he will submit information about his participation in a comparable technical training program, including without limitation, invoices, lists of vendors from which Franchisee purchases such technical training programs and actual copies of such training.  AAMCO's Technical Services Department shall determine if any such technical training program is comparable.

9.4    Product Warranties.  There are no warranties, express or implied, made by AAMCO under this Agreement for the products purchased by Franchisee, including the implied warranty of MERCHANTABILITY.

10.1   Warranty Program.  Franchisee agrees to honor each warranty presented by an AAMCO customer in accordance with its terms, regardless of whether the service was rendered at his center or at some other authorized AAMCO center.  Franchisee agrees to comply at all times with AAMCO's policies concerning the AAMCO warranty program.

10.2   Warranty Payment Rates.  Franchisee shall be entitled under this Agreement to receive from another AAMCO center the costs of supplies, accessories and parts which Franchisee uses in honoring the warranty, plus a sum of money based on either an hourly rate for labor, or a flat fee, depending on the extent of repairs required.  The payment rate used in making payments under this section will be determined by AAMCO and published to all franchisees.

Franchisee agrees to pay within ten (10) business days to any other AAMCO center the amount due to such other center for the honoring of a warranty issued to a customer of Franchisee.  If Franchisee fails to pay promptly any amount due under this section, AAMCO shall be entitled to recover such amount from Franchisee for the benefit of the other AAMCO center, or to credit such other center for money which may be due and owing to Franchisee for such payments.

10.3   Prohibition Against Other Warranties.  Franchisee agrees to make no warranties or guarantees other than those contained in the printed forms of warranty issued or approved by AAMCO, which warranty is made by Franchisee to the customer and not by AAMCO either to any customer or to Franchisee.  There are no warranties expressed or implied made by AAMCO to the customer in connection with any product or service furnished by AAMCO under this Agreement.

11.1   Accounting Forms.  Franchisee agrees to keep true and correct books and records according to directions of AAMCO, and to employ such record keeping systems as AAMCO may request.  Franchisee agrees to promptly deliver to AAMCO records, reports and copies of tax returns which AAMCO may request.  Franchisee agrees to use exclusively numerically certified work or repair orders provided by AAMCO.  Franchisee agrees to furnish to AAMCO bank deposit slips, verification of cash receipts and any other documents or information requested by AAMCO.  Franchisee agrees to keep true and correct books and records according to directions of AAMCO, and to employ such recordkeeping systems as AAMCO may request.  Franchisee agrees to promptly deliver to AAMCO records, reports and copies of tax returns which AAMCO may request.  Franchisee agrees to use exclusively numerically certified work or repair orders provided by AAMCO as part of standard auditing procedures.  Franchisee further agrees to furnish to AAMCO bank deposit slips, verification of cash receipts and any other documents or information requested by AAMCO.

11.2   Inspection of Records.  AAMCO's representative may enter Franchisee's center to inspect books and records to verify the accuracy of Franchisee's reports.  Franchisee agrees to keep its books and records available in the center at all times, or to make them available there upon request by AAMCO.

11.3   Damages.  If at any time Franchisee's actual gross receipts are greater than Franchisee's reported receipts by one percent (1%) or more, then Franchisee shall pay AAMCO immediately any deficiency in franchise fees together with interest pursuant to section 14.1, calculated from when such fees should have been paid.  In addition, Franchisee agrees to pay AAMCO for any and all expenses connected with AAMCO's examination of Franchisee's reporting practices, including but not limited to reasonable administrative, accounting and attorneys' fees and the costs incurred in connection with the investigation of Franchisee's recordkeeping and obtaining inspection of his records.

Franchisee further acknowledges and agrees that the actual damages sustained by AAMCO in the event of underreporting of gross receipts are difficult to ascertain and that in addition to the fees, interest and expenses stated above, Franchisee shall also pay AAMCO liquidated damages in an amount equal to the franchise fees due plus interest calculated pursuant to section 14.1.  These liquidated damages shall be in addition to any other remedies AAMCO may have.

11.4   Financial Statements.  Franchisee agrees to submit to AAMCO within 60 days after the end of each year a Profit and Loss Statement for the year and a Balance Sheet as of the last day of the year.  In addition, within 60 days after the end of each semi-annual period, Franchisee agrees to submit to AAMCO a Profit and Loss Statement for the previous 6-months and a Balance Sheet as of the last day of the 6-month period.  All statements required by this paragraph may be unaudited but must be prepared by an accountant, and, unless otherwise specified by AAMCO, shall be in accordance with generally accepted accounting principles.  All references in this section to "year" of Franchisee shall mean either calendar or fiscal year, as adopted by Franchisee.

12.1   Insurance.   Franchisee agrees to purchase and maintain at his own expense insurance against all types of public liability, as directed by AAMCO, including but not limited to garage liability, garage keeper's legal liability, garage keeper's direct primary coverage and workers' compensation insurance, including coverage for AAMCO as an additional named insured.  Franchisee acknowledges that AAMCO reserves the right to increase the amounts of insurance coverage required by this section and agrees to comply with any such increased amounts after notice from AAMCO; AAMCO agrees to act reasonably in determining such increased amount.  In no event shall the amounts of coverage be less than $1,000,000 per occurrence, bodily injury and property damage combined.  Franchisee shall furnish AAMCO with certificates of such insurance including the insurance upon AAMCO, along with satisfactory evidence that premiums have been paid.  Each certificate shall provide that the policy may not be cancelled as to AAMCO without thirty days' prior notice to AAMCO.  Franchisee shall pay AAMCO its costs and expenses, including reasonable attorneys' fees, incurred by AAMCO in connection with any proceedings arising out of this provision.

12.2   Indemnity Agreement.   Franchisee agrees by this Agreement to defend and to hold harmless and indemnify AAMCO from any and all claims, demands or suits of any kind, and to pay to AAMCO all expenses and liabilities which may be associated with such claims, demands or suits, which are based on or arise out of or relate in any way to the operation or the condition of Franchisee's center.  This Agreement to indemnify AAMCO shall be given effect whether the claim arises indirectly or directly out of the center's operation, Franchisee's conduct of his business there, the ownership or possession of real or personal property there or from or by any act of negligence, omission or willful conduct by Franchisee or by any of his employees, servants or agents.  The minimum amounts of insurance outlined in section 12.1 shall not be construed to limit liability under this section of the Agreement.

Franchisee also agrees by this Agreement to pay on behalf of AAMCO any and all fees, costs, or other expenses which AAMCO reasonably incurs as a result of any investigation or defense of any such claim, including reasonable attorneys' fees.

12.3   Independent Contractor.   Franchisee acknowledges that under the terms of this Agreement he is not an agent, employee, or servant of AAMCO for any purpose whatsoever.  Franchisee agrees that he shall not hold himself out as an agent, employee, or servant of AAMCO under any circumstances for any reason whatsoever.  Franchisee is an independent contractor and is not in any way authorized to make a contract, agreement or promise on behalf of AAMCO, or to create any implied obligation on behalf of AAMCO.  Franchisee specifically agrees that he shall not do so.

13.1   Security Deposit.   Franchisee acknowledges that he has deposited with AAMCO the sum of $5,000 as security for compliance with all the provisions of this Agreement.  This deposit shall be retained by AAMCO and AAMCO shall have the right to reimburse itself or others, including customers of Franchisee's center, from this account for any damages which may be sustained by AAMCO or others, as a result of failure by Franchisee to comply with any provision of this Agreement.  AAMCO has sole and absolute discretion in determining the amount of reimbursement from this account, and agrees to act reasonably in making such determinations.

Franchisee acknowledges that the creation and use of this account is a condition of the franchise and is intended to maintain a high level of customer satisfaction and to minimize or resolve customer complaints.  It is agreed that AAMCO may use the funds to cure any default by Franchisee under this Agreement and to defray expenses, damages or attorneys' fees of AAMCO or others, reasonably necessary to cure any such default, including refunds to customers of Franchisee as AAMCO may determine.  AAMCO may send written notice to Franchisee of defaults calling for action under these provisions to Franchisee's last known address.  Franchisee hereby authorizes AAMCO to apply the money in this account for the purposes specified in this provision without prior, actual notice to Franchisee that the money has been applied.

Franchisee agrees that should the amount on deposit with AAMCO become less than $5,000 because of any reason whatsoever, then Franchisee, upon notice from AAMCO, shall pay whatever amount is needed so that the amount on deposit equals $5,000.

AAMCO agrees to pay interest on this deposit at the rate of 3% less than prime rate as established by a leading bank as determined by AAMCO averaged over the preceding twelve months to a maximum of six percent (6%) per year, provided that Franchisee is, at all times, in full compliance with the provisions of this section.

14.1   Defaults in Payment.   Franchisee agrees to pay all invoices from AAMCO for merchandise or other items under this Agreement in strict accordance with the payment and credit terms applicable to them when they are issued.  Any such amount not so paid when due, as well as any amount due from Franchisee under any section of this Agreement, shall bear interest at the annual rate of eighteen percent (18%), or the legally permissible rate, whichever is less, from thirty (30) days after the due date until payment.  The payment of such interest will not be deemed to allow delay in the payment of those invoices or other invoices or amounts.  Franchisee agrees further to pay when due any bills or other amounts owed to third parties, especially under sections 7.1, 7.2 and 7.3 of this Agreement, or under any other purchasing arrangement in which AAMCO may be involved; but, AAMCO shall not by virtue of such an arrangement become liable to any such third party on the account of Franchisee.

In the event that Franchisee is in default in the payment of any franchise fee, invoice for parts, invoice for advertising, or for any other amount due to AAMCO under the terms of this Agreement, including an amount which may be due to an advertising association, pool, or agency under sections 7.1, 7.2 and 7.3 of this Agreement, then in any and all actions which may be brought for the amount in default, AAMCO or the party bringing such action shall be entitled to recover the amount in default, with any interest thereon at the rate set forth above, and costs of the action, together with reasonable attorneys' fees.  In the event that a local advertising group or pool becomes entitled to recover, by virtue of such an action pursuant to section 7.2 of this Agreement, then Franchisee acknowledges that such group or pool shall also be entitled to recover, in addition to any judgment, an amount equal to the costs and reasonable attorneys' fees therefor.  Franchisee specifically agrees that AAMCO may bring an action on behalf of National Creative Committee to collect amounts due pursuant to section 7.1.

In the event that Franchisee fails to pay for National Creative Advertising and/or Yellow Pages advertising, then Franchisee acknowledges and agrees that AAMCO has the right (1) to direct any publisher of a Yellow Pages advertising directory to omit Franchisee's listing from such directory and (2) to withhold all television and radio tapes from Franchisee, until all sums owed plus interest and any costs of collection, including attorneys' fees, have been paid in full.

15.1   **Assignment.** This Agreement is a personal obligation of Franchisee and his rights to the use of AAMCO's service marks and trademarks are not assignable nor transferable under any circumstances except in strict compliance with the provisions herein.

(a)  In the event of Franchisee's death, his rights shall pass to his heirs or next of kin on the condition that such heirs or next of kin must immediately attend and successfully complete AAMCO's training course as provided for in this Agreement. Such person or persons must attend the AAMCO Operator's Training Course by the third class offered after the date of the death of Franchisee. Failure to do so will result in the termination of all rights conferred under this Agreement.

(b)  If Franchisee, as an individual, desires to form a corporation, partnership or a limited liability company for the operation of the AAMCO center and to have rights under this Agreement, he may do so only upon the following terms and conditions:

(1)   Franchisee's name remains on the Agreement and the entity is added as a co-franchisee on the Agreement.

(2)   The entity is newly organized and its activities are confined exclusively to acting as an AAMCO franchisee under this Agreement.

(3)   Franchisee is the owner of the majority of the stock, partnership interests or membership units of the entity, is the principal executive officer of the entity and has full and complete authority to act for the entity. In the event of the death of Franchisee who is the majority shareholder, partner or member of such entity, then the provisions of section 15.1(a) above will apply, except that such heir or next of kin must hold a majority interest in the entity, be a principal executive officer of the entity and must have full and complete authority to act for the entity.

(4)   All money obligations of Franchisee under this Agreement must be satisfied.

(5)   The entity must sign an agreement with AAMCO assuming jointly and severally all obligations of Franchisee under this Agreement. It is expressly understood that the assumption of Franchisee's obligation by any entity does not limit Franchisee's personal obligations under this Agreement and Franchisee and the entity shall be jointly and severally liable.

(6)   The entity shall disclose in writing the names and addresses of all of its officers and directors, partners or members and, whenever there is a change in any such officer, director, partner or member, shall immediately notify AAMCO of such change. Franchisee acknowledges that AAMCO has the right to approve the officers, directors, partners and members, which approval shall not be unreasonably withheld, and agrees that any such individual not approved by AAMCO will be immediately removed from such position and shall not be permitted to have any involvement in the operation of the entity or the AAMCO center.

(c)   If Franchisee organizes or has organized a corporation, partnership or limited liability company in connection with the operation of the center, the capital stock, partnership interests or membership units shall not be sold, assigned, pledged, mortgaged or transferred without the prior written consent of AAMCO. There may be a sale of all of the capital stock, partnership interests or membership units of the entity subject to the same conditions listed in subparagraph (b) above to a purchaser, as though the person acquiring were a purchaser under section 16.2 of this Agreement. All ownership certificates shall have endorsed upon them the following:

The transfer of this stock (or membership unit) is subject to the terms and conditions of a Franchise Agreement dated November 6, 2006, between AAMCO Transmissions, Inc. and Emmanuel Otoiglakhi

(d)   Franchisee agrees that this Agreement may not be transferred by a corporation, partnership or limited liability company by transfer of stock, partnership interests, membership units or by any other means.

15.2   **Sale.** If Franchisee desires to sell his AAMCO center, he may do so provided that the purchaser is first approved by AAMCO, and provided that the purchaser executes AAMCO's then current form of franchise agreement at the fee structure provided below. AAMCO agrees to approve such prospective purchaser if his credit ratings are satisfactory, he has good moral character and has a reputation and business qualifications satisfactory to AAMCO, and provided further that any and all financial obligations of Franchisee are fully paid and satisfied. The accounts which must be satisfied include sums owed for local, national or national creative advertising, Yellow Pages advertising, sums owed to any advertising agency, sums due AAMCO pursuant to the terms of this Agreement, including any amounts due because of a default of any provision of this Agreement, and any sums due other AAMCO dealers. Franchisee and other person or persons having control of the affairs of a corporate or other similar business entity franchisee shall execute a general release of all claims against AAMCO and a termination of franchise, and Franchisee shall pay AAMCO the sum of $2,000 for expenses in connection with the administration and approval of this sale. Ownership of Franchisee's AAMCO center may not be transferred until a purchaser has successfully completed any training course which may be provided for in the then current form of franchise agreement.

(a)   If Franchisee sells his AAMCO center without the aid or assistance of AAMCO then the purchaser must sign a current form of franchise agreement. The purchaser has the option of signing an agreement for only the balance of Franchisee's term at the franchise fee being paid by Franchisee; or, of signing an agreement for a fifteen (15) year term, the first portion of the term will be for the balance of Franchisee's term at the franchise fee being paid by Franchisee, and the second portion of the term will be for the remainder of the fifteen (15) year term at the franchise fee being charged by AAMCO for new franchises as of the time of the purchase.

(b)   If Franchisee has listed his center with AAMCO or the purchaser has received a presentation from AAMCO's franchise sales department within the past 12 months, then the purchaser must sign a current form of franchise agreement for a fifteen (15) year term at the franchise fee being charged by AAMCO for new franchises as of the time of the purchase.

15.3   Attempted Sale, Assignment or Transfer.   If Franchisee attempts to sell, assign or transfer his AAMCO center without following the procedures required by this Agreement, then any such attempted sale, assignment or transfer is void.   In the event that such attempted assignment or transfer is to a corporation wholly or partially owned or controlled by Franchisee, then, at AAMCO's option, Franchisee agrees on behalf of the corporation that the attempted assignment or transfer shall subject the corporation to all the terms and conditions of this Agreement.   Franchisee shall remain jointly and severally liable for all obligations and responsibilities of this Agreement, including money owed, despite any such attempted and/or unauthorized sale, assignment or transfer of Franchisee's AAMCO center.

15.4   Notification of Resale.   Franchisee agrees to submit to AAMCO a copy of any written offer or a statement from Franchisee of all the terms of the proposed sale and the identity of any proposed purchaser before consummation of an agreement of sale.

16.1   Duration of the Franchise.   This Agreement shall begin as of the date set forth above, and shall continue for a term of fifteen (15) years.   Unless either party gives written notice of its intention not to renew at least one (1) year prior to the expiration of the fifteen (15) year term, then this franchise shall be renewed for fifteen (15) years.   Failure to renew by AAMCO will be based on good cause; the parties agree that "good cause" shall be defined to include the following:

(a)   Any default set forth in section 18.1 of this Agreement notwithstanding compliance with paragraph 18.1(b); or

(b)   Any cause that in AAMCO's reasonable estimation brings discredit upon its trademarks and trade name, or seriously interferes with AAMCO's business interests.

In connection with any renewal, Franchisee agrees to execute a franchise agreement of the type then currently being used by AAMCO.   AAMCO expressly reserves the right to increase the franchise fee upon renewal in accordance with its then current policy.

17.1   No Waiver by AAMCO.   AAMCO's failure to insist upon strict compliance with all provisions of this Agreement, except section 21.1 shall not be a waiver of its right to do so; delay or omission by AAMCO respecting any default shall not affect its rights respecting any subsequent defaults.

18.1   Termination

(a)   AAMCO may terminate this Agreement by giving written notice to Franchisee upon the occurrence of any of the following:

(1)   A breach by Franchisee of sections 5.2 or 20.2 of this Agreement.

(2)   If Franchisee unreasonably delays in opening his center.   In no event shall a period of less than eight (8) months be considered an unreasonable delay.   In the event that this Agreement is terminated pursuant to this subsection, then AAMCO may elect to retain as liquidated damages the deposit paid by Franchisee pursuant to section 3.1.

(3)   If Franchisee terminates or attempts to terminate this Agreement for any reason.   If this Agreement is terminated under this subsection, then AAMCO may elect to retain the deposit made by Franchisee as liquidated damages or as against compensatory and punitive damages which may be sought under this Agreement.

(4)   In the event that Franchisee is declared insolvent or bankrupt by any court, or makes an assignment for the benefit of creditors, or in the event that a receiver is appointed for Franchisee's business, or Franchisee is unable to continue in business, or in the event of the sale, insolvency or termination of the business operated pursuant to this Agreement, or in the event that any proceedings demanded by Franchisee under a provision of the Federal Bankruptcy Act or any other laws for the relief of debtors are commenced, or in the event Franchisee becomes the involuntary subject of any such proceeding, which proceeding continues undismissed for a period of thirty (30) days.

(5)   Failure to make any payments to an advertising agency and/or local advertising group or pool, or to make any other advertising payments required pursuant to section 7 of this Agreement.

(6)   Failure to make any payments required under any provision of this Agreement.

(7)   If Franchisee closes his center for any reason and fails to reopen within ten (10) days from the date of such closing.

(8)   If Franchisee sells or attempts to sell, transfer or assign his rights under this Agreement without the approval of AAMCO as required by this Agreement.

(9)   If Franchisee shall commit a violation of any provision of this Agreement.

(b) Upon receipt of notice pursuant to section 18.1(a), Franchisee shall have ten (10) days within which to cure completely any default based on a failure to make any payment required under any provision of this Agreement. For any other default, except as set forth below in section 18.1(c), Franchisee shall have thirty (30) days within which to cure completely any such default. Failure of Franchisee to effect such cure within the cure period shall result in the immediate termination of this Agreement. It shall be Franchisee's responsibility to advise AAMCO of his attempt to cure any default.

(c) Any notice of termination which is based, in whole or in part, upon the fraudulent acts of Franchisee or on Franchisee's failure to deal honestly and fairly with AAMCO or with any customer of the center, shall be effective upon receipt by Franchisee, and the provisions of section 18.1(b) shall not be applicable thereto.

19.1   Procedures after Termination.

(a) Upon the termination of this Agreement for any reason, including, without limitation, termination upon the expiration of the current term by virtue of Franchisee's failure to renew as provided in section 16.1 (sometimes herein called "Expiration"), Franchisee shall cease to be an authorized AAMCO franchisee and shall:

(1) Promptly pay AAMCO all sums due and owing.

(2) Promptly pay AAMCO the sum of $5,000 to be held by AAMCO to cover the costs of warranty work for customers of Franchisee's former center. If there is any amount remaining unused two (2) years after the date of termination and Franchisee has complied fully with the provisions of section 19, then any such amount shall be returned to Franchisee.

(3) Immediately and permanently discontinue the use of the mark AAMCO and all similar names or marks, and any other designation tending to indicate that Franchisee is or was an authorized AAMCO franchisee.

(4) Promptly surrender to AAMCO all signs, training materials, manuals, videos, stationery, letterheads, forms, repair orders, printed matter and advertising material containing the mark AAMCO, all similar names or marks or any other designation tending to indicate that Franchisee is or was an authorized franchisee of AAMCO.

(5) Immediately and permanently discontinue all advertising as an authorized AAMCO dealer.

(6) Promptly transfer to AAMCO or AAMCO's designee each telephone number listed under the designation AAMCO or any similar designation, and execute such instruments and take such steps as AAMCO may require to accomplish the transfer of each such telephone number.

(7) At AAMCO's discretion, sell all inventories on hand to AAMCO at the price then being charged by AAMCO to authorized AAMCO dealers, less freight and handling costs.

(b) Upon termination of Expiration, AAMCO shall have the option to purchase all of Franchisee's right, title and interest in the center and all equipment contained therein. If AAMCO intends to exercise its option, AAMCO shall notify Franchisee of such intention at the time of termination or, in the case of Expiration, within ten (10) days prior to the Expiration of the current term of this Agreement. The full purchase price of the center shall be:

(1) In the case of Expiration, the fair market value of the equipment and parts then located at the center, less all outstanding liabilities of the center.

(2) In the case of all other terminations, the lesser of the fair market value of the equipment and parts then located at the center or Franchisee's cost, less depreciation on the equipment computed on a fifteen (15) year straight-line basis, less all outstanding liabilities of the center. AAMCO shall have the right to withhold from the purchase price funds sufficient to pay all outstanding debts and liabilities of the center and to pay such debts and liabilities from such funds. If such liabilities exceed the purchase price of the equipment and parts, AAMCO shall apply the purchase price in such manner as AAMCO, in its sole discretion, shall determine. In no event, however, shall AAMCO become liable for any of the debts and liabilities of Franchisee or of the center and Franchisee shall remain responsible for all outstanding debts and liabilities of the center which remain unsatisfied subsequent to the distribution by AAMCO of the purchase price funds.

(c) If, within five (5) days after termination or Expiration, Franchisee fails to remove all displays of the AAMCO name and trademark and any other materials of any kind from the center which are identified or associated with AAMCO, AAMCO may enter the center or premises to effect such removal. In such event, AAMCO shall not have any liability to Franchisee therefor, nor shall AAMCO be accountable or required to pay for such displays or materials.

(d) If, within three (3) days after termination or Expiration, Franchisee has not taken all steps necessary to amend, transfer or terminate all telephone listings or service and any registration or filing of any fictitious name, Franchisee hereby irrevocably nominates, constitutes and appoints AAMCO or any prothonotary, clerk of court or attorney of any court of record as its true and lawful attorney for him and in his name, and on his behalf to take all such action as may be necessary or appropriate to amend, transfer or terminate all such telephone listings and service and registrations and filings of such fictitious name, without liability to Franchisee for doing so. In the event that any action is required to be taken by or on behalf of AAMCO pursuant to this subsection 19(d), the telephone company, Yellow Pages publishers and all listing agencies, without liability to Franchisee, may accept this Agreement and the directions by or on behalf of AAMCO as conclusive proof of AAMCO's exclusive rights in such telephone numbers and directory listings and its authority to direct their amendment, termination or transfer and Franchisee hereby releases and waives any claim of any kind that he may have against any telephone company and/or yellow or white page directory publisher as a result of their implementing the transfer, amendment or termination set forth herein.

(e)   The termination of this Agreement shall not affect, modify or discharge any claim, rights or causes of action which AAMCO may have against Franchisee, under this Agreement or otherwise, for any reason whatsoever, whether such claims or rights arise before or after termination.

19.2   Covenant Not-To-Compete.   Franchisee acknowledges that as a franchisee of AAMCO he will receive confidential information and materials and trade secrets and have access to unique procedures and systems developed by AAMCO. Franchisee further acknowledges that the development of the marketplace in which his center is located is solely as a result of the AAMCO name and trademark. Therefore, to protect the AAMCO name and trademark and to induce AAMCO to enter into this Agreement, Franchisee represents and warrants:

(a)   During the term of this Agreement and any renewal thereof, Franchisee shall not directly or indirectly, engage in any business the same as, similar to or in competition with AAMCO or any other AAMCO Franchisee, except for the business contemplated by this Agreement.

(b)   For a period of two (2) years after the termination of this Agreement, Franchisee shall not directly or indirectly engage in the transmission repair business within a radius of ten (10) miles of the former center or any other AAMCO center. The two (2) year period shall not begin to run until Franchisee commences to comply with all obligations stated in this section 19.2(b).

(c)   Franchisee acknowledges that because of the business of AAMCO and the strength of the AAMCO name and trademark, the restrictions contained in this section 19.2 are reasonable and necessary to protect the legitimate interests of AAMCO and that any violation of these restrictions will result in irreparable injury to AAMCO. Therefore, Franchisee acknowledges that, in the event of such violation, AAMCO shall be entitled to preliminary and permanent injunctive relief and damages, as well as an equitable accounting of all earnings, profits and other benefits, arising from such violation, which remedies shall be cumulative and in addition to any other rights and remedies to which AAMCO shall be entitled.  If Franchisee violates any restriction contained in this section 19.2 and it is necessary for AAMCO to seek equitable relief, the restrictions contained herein shall remain in effect for two (2) years after such relief is granted.

(d)   Franchisee agrees that the provisions of this covenant not-to-compete are reasonable.  If, however, any court should hold that the duration or geographical limits of any restrictions contained in this section 19.2 are unreasonable, the parties agree that such determination shall not render the restriction invalid or unenforceable, but that such restriction shall remain in full force and effect for such duration and within such geographical limits as the court shall consider reasonable.

20.1   Applicable Laws.   Franchisee agrees to comply with all federal, state, county and municipal laws and regulations which may be applicable to Franchisee's business.

20.2   Federal Trade Commission Orders.   Franchisee acknowledges receipt of a copy of FTC Order No. 8816 and Franchisee agrees to adhere to the provisions of this Order in his dealings with the public and with AAMCO.

21.1   Jurisdiction.   This Agreement shall be deemed to have been made within the Commonwealth of Pennsylvania, shall be interpreted according to the laws of Pennsylvania and Pennsylvania law shall apply to any claims arising out of, connected to or relating to this Agreement or its performance.

Franchisee hereby agrees that mailing to his last known address by certified or registered mail or by any overnight carrier service which provides a receipt of any process shall constitute lawful and valid process. Franchisee agrees to the jurisdiction and venue of the United States District Court for the Eastern District of Pennsylvania or to the Court of Common Pleas of Philadelphia or Montgomery County, Pennsylvania in any action, proceeding or counterclaim, whether at law or at equity, in any manner whatsoever which arises out of or is connected in any way with this Agreement or its performance, and Franchisee specifically agrees not to bring suit against AAMCO in any other jurisdiction or venue.

21.2   Jury Trial Waived.   Franchisee and AAMCO hereby agree that they shall and hereby do waive trial by jury in any action, proceeding or counterclaim, whether at law or at equity, brought by either of them, or in any matter whatsoever which arises out of or is connected in any way with this Agreement or its performance.

21.3   Severability.   In the event that any portion, term or provision of this Agreement shall be decided by any court to be in conflict with the law of a state or jurisdiction, then the validity of the remaining portions, terms or provisions shall not be affected; the illegal part, term or provision shall be deemed not to be a part of this Agreement and this Agreement shall be considered as if the provision has never been a part of it.

21.4   Notice.   Whenever this Agreement requires notice, it shall be in writing and shall be sent by registered or certified mail, return receipt requested or overnight mail to the other party at the addresses set forth below, unless notice is given of a change of address.  However, Franchisee agrees that notice may be sent to him at the AAMCO transmission repair center operated pursuant to the terms hereof.

21.5   Recovery of Costs and Attorneys' Fees.   In any court or arbitration proceeding brought by either party hereto arising out of or based upon this Agreement or its performance, the prevailing party shall recover all court costs, attorneys' fees and other expenses relating to such proceeding from the non-prevailing party.

22.1   Mediation and Arbitration.

(a)   Non-binding mediation of disputes, controversies, or claims arising out of or relating to this Agreement shall be conducted in Philadelphia, Pennsylvania or in Chicago, Illinois, solely at Franchisee's option.

(b)   All disputes, controversies or claims arising out of or relating to this Agreement shall be settled by binding arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association or its successor except for termination by AAMCO which is based in whole or in part, upon the fraudulent acts of Franchisee or Franchisee's failure to deal honestly and fairly with any customer of the center or Franchisee's failure to accurately report his gross receipts to AAMCO. Arbitration shall be conducted in Philadelphia, Pennsylvania, unless otherwise agreed to by the parties.

AT-04-6(1) Resale                                                                                          9

23.1  Entire Agreement.  This Agreement consisting of ten (10) pages and attachments contains the entire agreement between the parties concerning Franchisee's AAMCO franchise; no promises, inducements or representations not contained in this Agreement shall be of any force or effect, or binding on the parties.  Modifications of this Agreement must be in writing and signed by AAMCO.

IN WITNESS WHEREOF, the parties intending to be legally bound hereby, hereto have set their hands and seals as of the day and year first above written.

ATTEST:

AAMCO TRANSMISSIONS, INC.

By:

WITNESS

FRANCHISEE — Emmanuel Otoigiaku                    (SEAL)

Address for AAMCO Transmissions, Inc.
201 Gibraltar Road
Horsham, PA 19044

Address for Franchisee:

AT-04-6(1) Resale

10

# Exhibit B



*732/596-1979*

**TOTAL CAR CARE EXPERTS**

June 2, 2011

<u>Via Overnight Mail, Certified Mail – Return Receipt Requested,</u>
<u>and Regular Mail</u>

Mr. Emmanuel Otoigiakhi
dba AAMCO Transmissions
209 New Brunswick Avenue
Perth Amboy, NJ 08861

Re:    <u>Notice of Termination of Franchise Agreement</u>
AAMCO Transmissions Center
209 New Brunswick Avenue
Perth Amboy, NJ 08861

Dear Mr. Otoigiakhi:

This letter shall serve as Formal Notice of the Termination of your AAMCO franchise for the center located at 209 New Brunswick Avenue, Perth Amboy, NJ (the "Center"), effective 60 days from your receipt of this Notice.

An audit of your Center's business records was conducted on April 5, 2011 by AAMCO Transmissions, Inc. ("ATI"). The audit revealed, among other things, that you engaged in intentional underreporting of gross receipts to ATI and failed to pay to ATI amounts owed by you to ATI pursuant to the terms of the franchise agreement. Your conduct involved an attempt to intentionally defraud ATI. Because ATI relies on each franchisee's honesty and integrity in reporting its gross receipts to ATI, your conduct was a material breach of the terms of the franchise agreement subjecting you to termination.

ATI demands that upon the effective date of termination you immediately comply with the post-termination obligations of the franchise agreement including, but not limited to, ceasing to use ATI's name and trademarks and complying with the non-competition provisions of the franchise agreement.

Until the effective date of termination, ATI demands that you fully comply with all obligations under the franchise agreement including, without limitation, reporting all gross receipts to ATI and paying to ATI all amounts due under the franchise agreement.

Sincerely,

James A. Goniea
Vice President and General Counsel

cc:  Brian O'Donnell
     Mike Sumsky
     Jack Bachinsky
     Matt Wright
     Bruce Chidsey
     Tom Scotti

---

AAMCO TRANSMISSIONS, INC.  •  201 Gibraltar Road  •  Horsham, PA 19044
Tel: 610-668-2900

# Exhibit C

| Gross Sales | Year |
|---|---|
| $ 4,229.80 | 2007 |
| $ 15,739.64 | 2007 |
| $ 7,883.05 | 2007 |
| $ 12,548.58 | 2007 |
| $ 11,129.56 | 2007 |
| $ 10,552.24 | 2007 |
| $ 7,084.72 | 2007 |
| $ 4,950.06 | 2007 |
| $ 11,142.63 | 2007 |
| $ 5,200.94 | 2007 |
| $ 8,243.81 | 2007 |
| $ 5,743.36 | 2007 |
| $ 4,902.41 | 2007 |
| $ 7,289.27 | 2007 |
| $ 7,595.39 | 2007 |
| $ 14,524.62 | 2007 |
| $ 7,021.90 | 2007 |
| $ 6,367.88 | 2007 |
| $ 5,064.24 | 2007 |
| $ 9,713.52 | 2007 |
| $ 1,222.12 | 2007 |
| $ 5,826.89 | 2007 |
| $ 16,639.65 | 2007 |
| $ 9,421.60 | 2007 |
| $ 3,183.45 | 2007 |
| $ 10,787.48 | 2007 |
| $ 6,851.84 | 2007 |
| $ 10,162.82 | 2007 |
| $ 10,216.02 | 2007 |
| $ 8,821.82 | 2007 |
| $ 8,299.81 | 2007 |
| $ 8,866.40 | 2007 |
| $ 17,471.58 | 2007 |
| $ 2,919.26 | 2007 |
| $ 7,002.34 | 2007 |
| $ 2,136.87 | 2007 |
| $ 9,278.27 | 2007 |
| $ 7,415.19 | 2007 |
| $ 8,913.40 | 2007 |
| $ 13,202.65 | 2007 |
| $ 15,562.74 | 2007 |
| $ 8,084.34 | 2007 |
| $ 8,045.14 | 2007 |
| $ 9,478.79 | 2007 |
| $ 9,259.06 | 2007 |
| $ 37,164.41 | 2007 |

| | | |
|---|---:|---|
| $ | 9,270.57 | 2007 |
| $ | 7,828.38 | 2007 |
| $ | 5,237.93 | 2007 |
| $ | 2,606.54 | 2007 |
| $ | 4,795.05 | 2007 |
| $ | 6,563.59 | 2007 |
| $ | 459,463.62 | **2007 Total** |
| $ | 4,113.91 | 2008 |
| $ | 5,378.21 | 2008 |
| $ | 6,214.00 | 2008 |
| $ | 8,430.50 | 2008 |
| $ | 7,068.87 | 2008 |
| $ | 7,744.08 | 2008 |
| $ | 4,152.30 | 2008 |
| $ | 4,847.25 | 2008 |
| $ | 4,097.82 | 2008 |
| $ | 13,479.22 | 2008 |
| $ | 9,084.45 | 2008 |
| $ | 11,970.62 | 2008 |
| $ | 11,112.11 | 2008 |
| $ | 2,763.41 | 2008 |
| $ | 9,880.87 | 2008 |
| $ | 12,166.95 | 2008 |
| $ | 9,800.40 | 2008 |
| $ | 6,418.34 | 2008 |
| $ | 12,757.39 | 2008 |
| $ | 4,910.23 | 2008 |
| $ | 7,522.13 | 2008 |
| $ | 2,775.62 | 2008 |
| $ | 4,378.40 | 2008 |
| $ | 6,224.84 | 2008 |
| $ | 7,658.11 | 2008 |
| $ | 6,064.37 | 2008 |
| $ | 6,560.52 | 2008 |
| $ | 12,732.82 | 2008 |
| $ | 4,293.74 | 2008 |
| $ | 7,226.98 | 2008 |
| $ | 9,769.38 | 2008 |
| $ | 4,344.38 | 2008 |
| $ | 5,549.75 | 2008 |
| $ | 12,274.74 | 2008 |
| $ | 9,519.70 | 2008 |
| $ | 6,784.69 | 2008 |
| $ | 5,102.27 | 2008 |
| $ | 14,316.13 | 2008 |
| $ | 7,607.48 | 2008 |
| $ | 4,289.96 | 2008 |

| | | |
|---|---:|---|
| $ | 5,815.98 | 2008 |
| $ | 8,697.68 | 2008 |
| $ | 3,696.67 | 2008 |
| $ | 6,136.79 | 2008 |
| $ | 8,366.79 | 2008 |
| $ | 9,528.21 | 2008 |
| $ | 4,101.88 | 2008 |
| $ | 961.99 | 2008 |
| $ | 1,252.89 | 2008 |
| $ | 1,015.98 | 2008 |
| $ | 5,133.60 | 2008 |
| $ | 2,691.48 | 2008 |
| $ | 358,786.88 | **2008 Total** |
| $ | 4,520.04 | 2009 |
| $ | 4,964.11 | 2009 |
| $ | 8,839.10 | 2009 |
| $ | 7,497.68 | 2009 |
| $ | 10,342.05 | 2009 |
| $ | 3,577.42 | 2009 |
| $ | 8,574.44 | 2009 |
| $ | 11,627.61 | 2009 |
| $ | 3,697.35 | 2009 |
| $ | 4,318.90 | 2009 |
| $ | 6,259.66 | 2009 |
| $ | 2,579.22 | 2009 |
| $ | 14,290.09 | 2009 |
| $ | 10,773.57 | 2009 |
| $ | 4,334.22 | 2009 |
| $ | 5,014.09 | 2009 |
| $ | 6,471.52 | 2009 |
| $ | 8,121.64 | 2009 |
| $ | 4,711.98 | 2009 |
| $ | 7,027.98 | 2009 |
| $ | 3,013.54 | 2009 |
| $ | 6,968.06 | 2009 |
| $ | 8,270.94 | 2009 |
| $ | 10,675.38 | 2009 |
| $ | 2,978.33 | 2009 |
| $ | 13,832.28 | 2009 |
| $ | 4,062.19 | 2009 |
| $ | 5,699.94 | 2009 |
| $ | 5,873.14 | 2009 |
| $ | 7,015.07 | 2009 |
| $ | 3,712.22 | 2009 |
| $ | 1,232.67 | 2009 |
| $ | 9,337.74 | 2009 |
| $ | 8,543.70 | 2009 |

| | | |
|---|---:|---|
| $ | 6,032.81 | 2009 |
| $ | 327.34 | 2009 |
| $ | 5,634.31 | 2009 |
| $ | 7,142.36 | 2009 |
| $ | 9,777.24 | 2009 |
| $ | 10,786.00 | 2009 |
| $ | 8,361.72 | 2009 |
| $ | 8,816.40 | 2009 |
| $ | 2,616.81 | 2009 |
| $ | 5,030.74 | 2009 |
| $ | 8,131.75 | 2009 |
| $ | 4,918.21 | 2009 |
| $ | 5,018.68 | 2009 |
| $ | 4,735.62 | 2009 |
| $ | 970.04 | 2009 |
| $ | 349.98 | 2009 |
| $ | 369.57 | 2009 |
| $ | 4,159.86 | 2009 |
| $ | 321,937.31 | **2009 Total** |
| $ | 4,567.00 | 2010 |
| $ | 7,068.18 | 2010 |
| $ | 11,678.66 | 2010 |
| $ | 6,738.96 | 2010 |
| $ | 8,347.33 | 2010 |
| $ | 160.00 | 2010 |
| $ | 7,353.94 | 2010 |
| $ | 10,531.26 | 2010 |
| $ | 9,367.31 | 2010 |
| $ | 6,145.09 | 2010 |
| $ | 5,528.47 | 2010 |
| $ | 3,489.01 | 2010 |
| $ | 4,285.90 | 2010 |
| $ | 10,589.79 | 2010 |
| $ | 4,999.21 | 2010 |
| $ | 4,412.57 | 2010 |
| $ | 7,266.22 | 2010 |
| $ | 2,597.59 | 2010 |
| $ | 4,940.76 | 2010 |
| $ | 4,111.59 | 2010 |
| $ | 7,181.96 | 2010 |
| $ | 10,120.74 | 2010 |
| $ | 1,646.49 | 2010 |
| $ | 2,130.43 | 2010 |
| $ | 7,537.18 | 2010 |
| $ | 3,741.92 | 2010 |
| $ | 3,312.45 | 2010 |
| $ | 8,055.97 | 2010 |

| | | |
|---|---|---|
| $ | 12,443.59 | 2010 |
| $ | 9,911.48 | 2010 |
| $ | 8,335.03 | 2010 |
| $ | 3,935.91 | 2010 |
| $ | 7,520.59 | 2010 |
| $ | 8,038.24 | 2010 |
| $ | 5,687.87 | 2010 |
| $ | 9,192.05 | 2010 |
| $ | 247.78 | 2010 |
| $ | 10,662.68 | 2010 |
| $ | 6,750.86 | 2010 |
| $ | 10,445.41 | 2010 |
| $ | 7,571.16 | 2010 |
| $ | 5,725.51 | 2010 |
| $ | 7,177.35 | 2010 |
| $ | 10,008.72 | 2010 |
| $ | 7,507.17 | 2010 |
| $ | 7,500.58 | 2010 |
| $ | 4,544.91 | 2010 |
| $ | 438.99 | 2010 |
| $ | 9,993.71 | 2010 |
| $ | 1,671.10 | 2010 |
| $ | 5,738.58 | 2010 |
| $ | 2,767.91 | 2010 |
| $ | 331,723.16 | **2010 Total** |
| $ | 5,644.73 | 2011 |
| $ | 2,737.08 | 2011 |
| $ | 4,209.27 | 2011 |
| $ | 8,154.54 | 2011 |
| $ | 3,879.62 | 2011 |
| $ | 8,974.89 | 2011 |
| $ | 7,028.98 | 2011 |
| $ | 10,333.72 | 2011 |
| $ | 9,979.56 | 2011 |
| $ | 34.03 | 2011 |
| $ | 27,366.24 | 2011 |
| $ | 12,945.00 | 2011 |
| $ | 12,222.51 | 2011 |
| $ | 5,963.00 | 2011 |
| $ | 9,055.39 | 2011 |
| $ | 6,742.23 | 2011 |
| $ | 135,270.79 | **2011 Total** |
| $ | 1,607,181.76 | **Grand Total** |

**NJ, PERTH AMBOY #18824 EMMANUEL OTOIGIAKHI**
**OPENED 12-4-06 LA DATE 11-5-06 FF = 5%**
**C#908-477-3741 EMAIL: OTOIGIAKHI@VERIZON.NET**
**UNCOLLECTED CASH**

| R/O # | RO Amount Less Tax | Cash Reported on BR. | Uncollected Cash | RO Attach W/E Date | |
|---|---|---|---|---|---|
| 117508 | 727.5100 | 0.0000 | 727.5100 | 3/26/2011 | |
| 117515 | 2242.9900 | 0.0000 | 2242.9900 | 3/26/2011 | |
| 117520 | 538.0000 | 0.0000 | 538.0000 | 3/26/2011 | |
| 117523 | 19.9900 | 0.0000 | 19.9900 | 3/26/2011 | |
| 116963 | 480.4300 | 0.0000 | 480.4300 | 3/12/2011 | 3/12/11 Reported |
| 117162 | 2800.0000 | 1000.0000 | 1800.0000 | 3/12/2011 | Shana brooks |
| 117168 | 2475.0000 | 0.0000 | 2475.0000 | 3/12/2011 | |
| 117459 | 2993.8600 * | 0.0000 | 2993.8600 | 3/12/2011 | 3/12/11 |
| 117479 | 2717.5200 | 300.0000 | 2417.5200 | 3/12/2011 | wyn's warranty |
| 117489 | 1635.5100 | 0.0000 | 1635.5100 | 3/12/2011 | |
| 117491 | 1177.0000 | 0.0000 | 1177.0000 | 3/12/2011 | 3/2 - 500, 3/4 - 677 |
| 117494 | 700.0000 | 0.0000 | 700.0000 | 3/12/2011 | 3/2 - 700, 3/17 - 1200 |
| 117496 | 654.2100 | 0.0000 | 654.2100 | 3/12/2011 | 3/2 |
| 117481 | 2278.8000 | 0.0000 | 2278.8000 | 2/26/2011 | warranty - Margaret Bonin |
| 117444 | 1250.0000 | 700.0000 | 550.0000 | 2/19/2011 | 2/19 -900 - 4/6 -1637.50 |
| 117406 | 2634.2700 * | 0.0000 | 2634.2700 | 2/12/2011 | warranty Phonix Ame |
| 117434 | 2438.3200 * | 0.0000 | 2438.3200 | 2/5/2011 | warranty Bonino |
| 117418 | 120.0000 | 100.0000 | 20.0000 | 1/29/2011 | Insufficient |
| 117424 | 59.9500 | 0.0000 | 59.9500 | 1/29/2011 | |
| 117414 | 3677.1900 | 3000.0000 | 677.1900 | 1/22/2011 | |
| 117374 | 900.2400 * | 0.0000 | 900.2400 | 1/15/2011 | warranty - 800.285.2567 |
| 117400 | 85.0000 * | 0.0000 | 85.0000 | 1/15/2011 | warranty Lease plus |
| 117377 | 1962.8500 | 0.0000 | 1962.8500 | 1/8/2011 | |
| 117392 | 326.4800 | 0.0000 | 326.4800 | 1/8/2011 | |
| 117372 | 1254.9900 * | 0.0000 | 1254.9900 | 1/1/2011 | warranty - MapCard |
| 117340 | 334.0000 * | 0.0000 | 334.0000 | 12/11/2010 | warranty - Mepco |
| 117317 | 2859.5600 | 0.0000 | 2859.5600 | 12/4/2010 | |
| 117319 | 29.9900 * | 0.0000 | 29.9900 | 11/27/2010 | Cath Charity |
| 117299 | 699.9800 * | 0.0000 | 699.9800 | 11/20/2010 | warranty - Ypsi |
| 117303 | 993.4800 | 0.0000 | 993.4800 | 11/20/2010 | warranty - CARS |
| 117287 | 2300.0000 | 1800.0000 | 500.0000 | 11/13/2010 | warranty - wright x |
| 117301 | 29.9900 * | 0.0000 | 29.9900 | 11/13/2010 | Theseus - Court. |
| 117282 | 2852.0300 | 0.0000 | 2852.0300 | 11/6/2010 | |
| 117291 | 142.7600 | 0.0000 | 142.7600 | 11/6/2010 | |
| 117260 | 4295.0900 | 0.0000 | 4295.0900 | 10/30/2010 | |
| 117267 | 2142.9900 | 0.0000 | 2142.9900 | 10/30/2010 | |
| 117273 | 2597.9300 | 1700.0000 | 897.9300 | 10/30/2010 | Refused to pay bal. Magda |
| 117278 | 470.0000 | 0.0000 | 470.0000 | 10/30/2010 | |
| 117240 | 314.9000 | 0.0000 | 314.9000 | 10/16/2010 | warranty - Enter Mech Repair |
| 117246 | 115.7400 | 0.0000 | 115.7400 | 10/16/2010 | |
| 117251 | 632.4000 * | 0.0000 | 632.4000 | 10/16/2010 | warranty - Enter Mec Repair |
| 117225 | 1815.0000 | 600.0000 | 1215.0000 | 10/9/2010 | warranty |
| 117230 | 19.9900 | 0.0000 | 19.9900 | 10/9/2010 | |
| 117234 | 650.0000 | 0.0000 | 650.0000 | 10/9/2010 | |
| 117215 | 327.1100 | 0.0000 | 327.1100 | 10/2/2010 | |
| 117216 | 19.9900 | 0.0000 | 19.9900 | 10/2/2010 | |
| 117223 | 2550.0000 | 0.0000 | 2550.0000 | 10/2/2010 | |
| 117224 | 3500.0000 | 2500.0000 | 1000.0000 | 10/2/2010 | |
| 117200 | 2450.0000 * | 0.0000 | 2450.0000 | 9/25/2010 | warranty - wheels |

| | | | | | |
|---|---|---|---|---|---|
| 117210 | 850.0000 | 0.0000 | 850.0000 | 9/25/2010 | |
| 117217 | 19.9900 | 0.0000 | 19.9900 | 9/25/2010 | |
| 117218 | 19.9900 | 0.0000 | 19.9900 | 9/25/2010 | |
| 117193 | 2847.9600 * | 0.0000 | 2847.9600 | 9/18/2010 | warranty-Yasc |
| 117196 | 2733.2800 | 0.0000 | 2733.2800 | 9/18/2010 | |
| 117199 | 112.4500 | 0.0000 | 112.4500 | 9/18/2010 | |
| 117178 | 59.9500 | 0.0000 | 59.9500 | 9/11/2010 | |
| 117185 | 59.9500 | 0.0000 | 59.9500 | 9/11/2010 | |
| 117151 | 59.9500 | 0.0000 | 59.9500 | 9/4/2010 | |
| 117153 | 19.9900 | 0.0000 | 19.9900 | 9/4/2010 | |
| 117157 | 1079.7200 | 0.0000 | 1079.7200 | 9/4/2010 | |
| 117163 | 210.2800 | 0.0000 | 210.2800 | 9/4/2010 | |
| 117136 | 806.1600 * | 0.0000 | 806.1600 | 8/28/2010 | warranty |
| 117116 | 2303.1100 | 0.0000 | 2303.1100 | 8/21/2010 | |
| 117133 | 59.9500 | 0.0000 | 59.9500 | 8/21/2010 | |
| 117038 | 579.9800 | 0.0000 | 579.9800 | 8/14/2010 | |
| 117095 | 2321.7000 | 0.0000 | 2321.7000 | 8/14/2010 | Court ? |
| 116872 | 2382.5000 | 300.0000 | 2082.5000 | 8/7/2010 | |
| 117041 | 273.1300 | 0.0000 | 273.1300 | 8/7/2010 | |
| 117087 | 400.8400 | 0.0000 | 400.8400 | 8/7/2010 | |
| 117088 | 19.9900 | 0.0000 | 19.9900 | 8/7/2010 | |
| 117037 | 1900.0000 * | 0.0000 | 1900.0000 | 7/24/2010 | warranty |
| 117056 | 200.0000 | 0.0000 | 200.0000 | 7/24/2010 | |
| 117059 | 274.9900 | 0.0000 | 274.9900 | 7/24/2010 | |
| 117060 | 59.9500 | 0.0000 | 59.9500 | 7/24/2010 | |
| 117061 | 29.9900 | 0.0000 | 29.9900 | 7/24/2010 | |
| 117069 | 647.1000 | 0.0000 | 647.1000 | 7/24/2010 | |
| 117028 | 2345.0000 | 0.0000 | 2345.0000 | 7/17/2010 | |
| 117031 | 2336.4400 | 0.0000 | 2336.4400 | 7/17/2010 | Sent 7/14 |
| 117035 | 121.3700 | 0.0000 | 121.3700 | 7/17/2010 | |
| 117009 | 2320.0000 | 0.0000 | 2320.0000 | 7/10/2010 | |
| 117015 | 4318.3900 | 0.0000 | 4318.3900 | 7/10/2010 | |
| 117003 | 59.9500 | 0.0000 | 59.9500 | 7/3/2010 | |
| 117004 | 469.4300 | 0.0000 | 469.4300 | 7/3/2010 | |
| 117006 | 19.9900 | 0.0000 | 19.9900 | 7/3/2010 | |
| 117008 | 266.5400 | 0.0000 | 266.5400 | 7/3/2010 | |
| 117010 | 19.9900 | 0.0000 | 19.9900 | 7/3/2010 | |
| 116985 | 161.5000 * | 0.0000 | 161.5000 | 6/26/2010 | |
| 116957 | 1950.0000 | 0.0000 | 1950.0000 | 6/19/2010 | |
| 116962 | 259.2400 | 0.0000 | 259.2400 | 6/19/2010 | |
| 116966 | 19.9900 | 0.0000 | 19.9900 | 6/19/2010 | |
| 116968 | 19.9900 | 0.0000 | 19.9900 | 6/19/2010 | |
| 116971 | 29.9900 | 0.0000 | 29.9900 | 6/19/2010 | |
| 116973 | 550.0000 | 0.0000 | 550.0000 | 6/19/2010 | |
| 116976 | 19.9900 | 0.0000 | 19.9900 | 6/19/2010 | |
| 116977 | 248.4400 | 0.0000 | 248.4400 | 6/19/2010 | |
| 116978 | 350.2900 | 0.0000 | 350.2900 | 6/19/2010 | |
| 116979 | 59.9900 | 0.0000 | 59.9900 | 6/19/2010 | |
| 116950 | 472.0300 | 0.0000 | 472.0300 | 6/12/2010 | |
| 116952 | 19.9900 | 0.0000 | 19.9900 | 6/12/2010 | |
| 116958 | 250.0000 | 0.0000 | 250.0000 | 6/12/2010 | |
| 116959 | 59.9500 | 0.0000 | 59.9500 | 6/12/2010 | |
| 116960 | 319.9700 | 0.0000 | 319.9700 | 6/12/2010 | |
| 116943 | 350.0000 | 0.0000 | 350.0000 | 6/5/2010 | |
| 116944 | 86.2500 | 0.0000 | 86.2500 | 6/5/2010 | |

| | | | | | |
|---|---|---|---|---|---|
| 116946 | 325.0300 | 0.0000 | 325.0300 | 6/5/2010 ✓ | |
| 116922 | 2645.2400 | 0.0000 | 2645.2400 | 5/29/2010 ✓ | |
| 116933 | 1165.0900 | 0.0000 | 1165.0900 | 5/29/2010 ✓ | |
| 116934 | 1929.9000 | 0.0000 | 1929.9000 | 5/29/2010 ✓ | |
| 116937 | 2545.0000 | 0.0000 | 2545.0000 | 5/29/2010 ✓ | |
| 116911 | 1749.9900 | 0.0000 | 1749.9900 | 5/22/2010 ✓ | |
| 116924 | 2107.0000 | 0.0000 | 2107.0000 | 5/22/2010 — *Estimate* | |
| 116889 | 3089.6500 * | 0.0000 | 3089.6500 | 5/15/2010 *warranty* | |
| 116905 | 24.9900 | 0.0000 | 24.9900 | 5/15/2010 ✓ | |
| 116906 | 237.5000 | 0.0000 | 237.5000 | 5/15/2010 ✓ | |
| 116910 | 29.9900 | 0.0000 | 29.9900 | 5/15/2010 ✓ | |
| 116915 | 374.4900 | 0.0000 | 374.4900 | 5/15/2010 * *Closed S/3 - Report $200* | |
| 116917 | 19.9900 | 0.0000 | 19.9900 | 5/15/2010 ✓ | |
| 116918 | 24.9900 | 0.0000 | 24.9900 | 5/15/2010 ✓ | |
| 116920 | 24.9900 | 0.0000 | 24.9900 | 5/15/2010 ✓ | |
| 116897 | 89.9900 | 0.0000 | 89.9900 | 5/8/2010 ✓ | |
| 116898 | 19.9900 | 0.0000 | 19.9900 | 5/8/2010 ✓ | |
| 116900 | 24.9900 | 0.0000 | 24.9900 | 5/8/2010 ✓ | |
| 116901 | 19.9900 | 0.0000 | 19.9900 | 5/8/2010 ✓ | |
| 116903 | 548.0000 | 0.0000 | 548.0000 | 5/8/2010 ✓ | |
| *116863 | 2691.6600 | 0.0000 | 2691.6600 | 4/24/2010 ✓ | |
| 116864 | 120.2400 | 0.0000 | 120.2400 | 4/24/2010 ✓ | |
| 116865 | 545.2100 | 0.0000 | 545.2100 | 4/24/2010 ✓ | |
| 116866 | 19.9900 | 0.0000 | 19.9900 | 4/24/2010 ✓ | |
| 116867 | 29.9900 | 0.0000 | 29.9900 | 4/24/2010 ✓ | |
| 116868 | 29.9900 | 0.0000 | 29.9900 | 4/24/2010 ✓ | |
| 116871 | 1775.7000 | 0.0000 | 1775.7000 | 4/24/2010 ✓ | |
| 116874 | 29.9900 | 0.0000 | 29.9900 | 4/24/2010 ✓ | |
| 116875 | 467.2800 | 0.0000 | 467.2800 | 4/24/2010 ✓ | |
| 116877 | 134.9900 | 0.0000 | 134.9900 | 4/24/2010 ✓ | |
| 116878 | 56.1900 | 0.0000 | 56.1900 | 4/24/2010 ✓ | |
| 116826 | 526.8200 | 0.0000 | 526.8200 | 4/17/2010 ✓ | |
| 116847 | 479.4400 | 0.0000 | 479.4400 | 4/17/2010 * | |
| 116852 | 19.9900 | 0.0000 | 19.9900 | 4/17/2010 ✓ | |
| 116853 | 116.9200 | 0.0000 | 116.9200 | 4/17/2010 ✓ | |
| 116859 | 24.9900 | 0.0000 | 24.9900 | 4/17/2010 ✓ | |
| 116860 | 24.9900 | 0.0000 | 24.9900 | 4/17/2010 ✓ | |
| 116812 | 1495.3300 | 0.0000 | 1495.3300 | 4/10/2010 ✓ | |
| 116833 | 22.9500 | 0.0000 | 22.9500 | 4/10/2010 ✓ | |
| 116837 | 484.5400 | 0.0000 | 484.5400 | 4/10/2010 ✓ | |
| 116840 | 300.0000 | 0.0000 | 300.0000 | 4/10/2010 ✓ | |
| 116841 | 19.9900 | 0.0000 | 19.9900 | 4/10/2010 ✓ | |
| 116842 | 233.6400 | 0.0000 | 233.6400 | 4/10/2010 ✓ | |
| 116815 | 1700.0000 * | 0.0000 | 1700.0000 | 4/3/2010 — *Warranty - PH#* | |
| 116816 | 327.1100 | 0.0000 | 327.1100 | 4/3/2010 ✓ | |
| 116817 | 19.9900 | 0.0000 | 19.9900 | 4/3/2010 ✓ | |
| 116818 | 882.2300 | 0.0000 | 882.2300 | 4/3/2010 ✓ | |
| 116819 | 19.9900 | 0.0000 | 19.9900 | 4/3/2010 ✓ | |
| 116825 | 59.9500 | 0.0000 | 59.9500 | 4/3/2010 ✓ | |
| 116827 | 42.5000 | 0.0000 | 42.5000 | 4/3/2010 ✓ | |
| 116829 | 373.1300 | 0.0000 | 373.1300 | 4/3/2010 ✓ | |
| 116801 | 1898.5100 | 0.0000 | 1898.5100 | 3/27/2010 ✓ | |
| 116766 | 2500.0000 | 0.0000 | 2500.0000 | 3/20/2010 ✓ | |
| 116770 | 350.0000 | 0.0000 | 350.0000 | 3/20/2010 ✓ | |
| 116781 | 125.7400 | 0.0000 | 125.7400 | 3/20/2010 ✓ | |

| | | | | | |
|---|---|---|---|---|---|
| 116782 | 297.0200 | 0.0000 | 297.0200 | 3/20/2010 | |
| 116784 | 19.9900 | 0.0000 | 19.9900 | 3/20/2010 | |
| 116761 | 2243.0100 | 0.0000 | 2243.0100 | 3/13/2010 | |
| 116762 | 2530.4800 | 0.0000 | 2530.4800 | 3/13/2010 | |
| 116763 | 85.0000 | 0.0000 | 85.0000 | 3/13/2010 | |
| 116765 | 19.9900 | 0.0000 | 19.9900 | 3/13/2010 | |
| 116767 | 280.0000 | 0.0000 | 280.0000 | 3/13/2010 | |
| 116772 | 350.0000 | 0.0000 | 350.0000 | 3/13/2010 | |
| 116585 | 2056.0700 | 0.0000 | 2056.0700 | 3/6/2010 | |
| 116735 | 950.0000 | 0.0000 | 950.0000 | 3/6/2010 — CA.R.S warranty |
| 116747 | 549.9700 | 0.0000 | 549.9700 | 3/6/2010 | |
| 116729 | 1750.0000 | 0.0000 | 1750.0000 | 2/27/2010 | |
| 116734 | 2675.1500 | 0.0000 | 2675.1500 | 2/27/2010 | |
| 116739 | 375.0000 | 0.0000 | 375.0000 | 2/27/2010 | |
| 116742 | 350.0000 | 0.0000 | 350.0000 | 2/27/2010 | |
| 116743 | 244.9900 | 0.0000 | 244.9900 | 2/27/2010 | |
| 116707 | 2300.0000 | 0.0000 | 2300.0000 | 2/20/2010 | |
| 116712 | 2699.9600 | 0.0000 | 2699.9600 | 2/20/2010 | |
| 116717 | 2300.0000 | 0.0000 | 2300.0000 | 2/20/2010 | |
| 116731 | 109.4400 | 0.0000 | 109.4400 | 2/20/2010 | |
| 116710 | 1004.2200 | 0.0000 | 1004.2200 | 2/13/2010 | |
| 116716 | 2749.7200 | 0.0000 | 2749.7200 | 2/13/2010 | |
| 116656 | 2545.0000 | 0.0000 | 2545.0000 | 1/30/2010 | |
| 116674 | 2475.0000 | 0.0000 | 2475.0000 | 1/30/2010 | |
| 116680 | 2389.2200 * | 0.0000 | 2389.2200 | 1/30/2010 — * |
| 116687 | 29.9900 | 0.0000 | 29.9900 | 1/30/2010 | |
| 116688 | 19.9900 | 0.0000 | 19.9900 | 1/30/2010 | |
| 116690 | 19.9900 | 0.0000 | 19.9900 | 1/30/2010 | |
| 116650 | 2046.0000 | 0.0000 | 2046.0000 | 1/23/2010 | |
| 116664 | 343.0300 | 0.0000 | 343.0300 | 1/23/2010 | |
| 116665 | 655.0000 | 0.0000 | 655.0000 | 1/23/2010 | |
| 116666 | 705.0000 | 0.0000 | 705.0000 | 1/23/2010 | |
| 116669 | 115.0000 | 0.0000 | 115.0000 | 1/23/2010 | |
| 116672 | 29.9900 * | 0.0000 | 29.9900 | 1/23/2010  warranty - Ballistic |
| 116673 | 29.9900 * | 0.0000 | 29.9900 | 1/23/2010 | |
| 116675 | 19.9900 | 0.0000 | 19.9900 | 1/23/2010 | |
| 116676 | 29.9900 | 0.0000 | 29.9900 | 1/23/2010 | |
| 116681 | 138.2500 | 0.0000 | 138.2500 | 1/23/2010 | |
| 116635 | 1800.0000 | 0.0000 | 1800.0000 | 1/16/2010 — * check Ro 800-384-5023 |
| 116648 | 2475.0000 | 0.0000 | 2475.0000 | 1/16/2010 | |
| 116649 | 118.9800 | 0.0000 | 118.9800 | 1/16/2010 | |
| 116651 | 104.0900 | 0.0000 | 104.0900 | 1/16/2010 | |
| 116652 | 19.9900 | 0.0000 | 19.9900 | 1/16/2010 | |
| 116653 | 19.9900 | 0.0000 | 19.9900 | 1/16/2010 | |
| 116654 | 19.9900 | 0.0000 | 19.9900 | 1/16/2010 | |
| 116658 | 234.0000 | 0.0000 | 234.0000 | 1/16/2010 | |
| 116659 | 24.9900 | 0.0000 | 24.9900 | 1/16/2010 | |
| 116660 | 19.9900 | 0.0000 | 19.9900 | 1/16/2010 | |
| 116661 | 225.0000 | 0.0000 | 225.0000 | 1/16/2010 | |
| 116624 | 2500.0000 * | 0.0000 | 2500.0000 | 1/9/2010 — warranty: Abbot Larry |
| 116634 | 478.9100 * | 0.0000 | 478.9100 | 1/9/2010 — warranty - 800 241-7507 |
| 116642 | 94.9900 | 0.0000 | 94.9900 | 1/9/2010 | |
| 116643 | 342.0000 | 0.0000 | 342.0000 | 1/9/2010 | |
| 116644 | 29.9900 * | 0.0000 | 29.9900 | 1/9/2010 — wright warranty |
| 116645 | 200.0000 | 0.0000 | 200.0000 | 1/9/2010 | |

| | | | | | |
|---|---|---|---|---|---|
| 116646 | 19.9900 | 0.0000 | 19.9900 | 1/9/2010 | |
| 116626 | 2197.1000 | 0.0000 | 2197.1000 | 12/26/2009 | |
| 116611 | 65.9500 | 0.0000 | 65.9500 | 12/19/2009 | |
| 116614 | 29.9900 | 0.0000 | 29.9900 | 12/19/2009 | |
| 116617 | 19.9900 | 0.0000 | 19.9900 | 12/19/2009 | |
| 116601 | 19.9900 | 0.0000 | 19.9900 | 12/12/2009 | |
| 116604 | 134.9900 | 0.0000 | 134.9900 | 12/12/2009 | |
| 116591 | 19.9900 | 0.0000 | 19.9900 | 12/5/2009 | |
| 116592 | 595.0800 | 0.0000 | 595.0800 | 12/5/2009 | |
| 116594 | 99.9700 | 0.0000 | 99.9700 | 12/5/2009 | |
| 116596 | 255.0000 | 0.0000 | 255.0000 | 12/5/2009 | |
| 116572 | 2056.0700 | 0.0000 | 2056.0700 | 11/28/2009 | — chaka freeman - Refused to pay |
| 116573 | 1121.5000 | 421.5000 | 700.0000 | 11/28/2009 | |
| 116577 | 149.0000 | 0.0000 | 149.0000 | 11/28/2009 | |
| 116570 | 19.9900 | 0.0000 | 19.9900 | 11/21/2009 | |
| 116571 | 1900.0000 | 0.0000 | 1900.0000 | 11/21/2009 | |
| 116575 | 388.6000 | 0.0000 | 388.6000 | 11/21/2009 | |
| 116528 | 1686.7400 | 0.0000 | 1686.7400 | 11/14/2009 | |
| 116533 | 2000.0000 | 0.0000 | 2000.0000 | 11/14/2009 | |
| 116548 | 280.0100 | 0.0000 | 280.0100 | 11/14/2009 | |
| 116549 | 144.8900 | 0.0000 | 144.8900 | 11/14/2009 | |
| 116550 | 24.9900 | 0.0000 | 24.9900 | 11/14/2009 | |
| 116551 | 1000.0000 | 0.0000 | 1000.0000 | 11/14/2009 | — 500 - 11/4, 300 - 12/5, 200 - 12/19 |
| 116555 | 83.9600 | 0.0000 | 83.9600 | 11/14/2009 | |
| 116556 | 19.9900 | 0.0000 | 19.9900 | 11/14/2009 | |
| 116557 | 24.9900 | 0.0000 | 24.9900 | 11/14/2009 | |
| 116560 | 19.9900 | 0.0000 | 19.9900 | 11/14/2009 | |
| 116563 | 19.9900 | 0.0000 | 19.9900 | 11/14/2009 | Discount 200 00 |
| 116515 | 2700.1900 | 200.0000 | 2500.1900 | 11/7/2009 | |
| 116517 | 1765.0000 | 0.0000 | 1765.0000 | 11/7/2009 | |
| 116524 | 2000.0300 | 0.0000 | 2000.0300 | 11/7/2009 | |
| 116526 | 748.0000 | 0.0000 | 748.0000 | 11/7/2009 | |
| 116531 | 24.9900 | 0.0000 | 24.9900 | 11/7/2009 | |
| 116535 | 19.9900 | 0.0000 | 19.9900 | 11/7/2009 | |
| 116537 | 19.9900 | 0.0000 | 19.9900 | 11/7/2009 | |
| 116538 | 29.9900 | 0.0000 | 29.9900 | 11/7/2009 | lease plan warranty |
| 116543 | 291.9900 * | 0.0000 | 291.9900 | 11/7/2009 | |
| 116508 | 1588.9900 | 0.0000 | 1588.9900 | 10/31/2009 | |
| 116511 | 103.0000 | 0.0000 | 103.0000 | 10/31/2009 | |
| 116518 | 200.0000 | 0.0000 | 200.0000 | 10/31/2009 | |
| 116521 | 19.9900 | 0.0000 | 19.9900 | 10/31/2009 | |
| 116522 | 149.9900 | 0.0000 | 149.9900 | 10/31/2009 | |
| 116497 | 100.0000 | 0.0000 | 100.0000 | 10/24/2009 | |
| 116509 | 237.3200 | 0.0000 | 237.3200 | 10/24/2009 | |
| 116512 | 99.5000 | 0.0000 | 99.5000 | 10/24/2009 | |
| 116514 | 29.9900 | 0.0000 | 29.9900 | 10/24/2009 | cath charity |
| 116486 | 436.5600 * | 0.0000 | 436.5600 | 10/17/2009 | warranty |
| 116489 | 2728.3500 * | 0.0000 | 2728.3500 | 10/17/2009 | |
| 116494 | 2100.0000 | 0.0000 | 2100.0000 | 10/17/2009 | |
| 116495 | 119.0000 | 0.0000 | 119.0000 | 10/17/2009 | |
| 116496 | 429.0000 | 0.0000 | 429.0000 | 10/17/2009 | |
| 116501 | 59.9500 | 0.0000 | 59.9500 | 10/17/2009 | |
| 116503 | 64.9900 | 0.0000 | 64.9900 | 10/17/2009 | |
| 106469 | 99.9900 | 0.0000 | 99.9900 | 10/10/2009 | |
| 116473 | 2100.0000 | 0.0000 | 2100.0000 | 10/10/2009 | |

**MISSING OR ALTERED REPAIR ORDERS**

| RO# | FOCUS STATUS | ACTUAL | NOTES |
|---|---|---|---|
| 115338 | 0.0000 | 1360.0000 | WBR 5/17/08 ALTERED |
| 115527 | MISSING | 659.9500 | WBR 5/10/08 ALTERED |
| NO RO | NO RO | 1000.0000 | LUIS DIAZ 12/6/08 |
| 116178 | MISSING | 306 | NOT IN FOCUS |
| 116389 | MISSING | 35 | NOT IN FOCUS |
| 116433 | MISSING | 50 | NOT IN FOCUS |
| 116470 | MISSING | 20 | NOT IN FOCUS |
| 116471 | MISSING | 25 | NOT IN FOCUS |
| 116507 | 0 | 2,200 | WBR 10/23/09 ALTERED |
| 116621 | 2,243 NDO | 2,243 | CUST SIGNED OFF |
| 116696 | 1,000 NDO | 1,000 | CUST SIGNED OFF |
| 116726 | 2,429 NDO | 2,429 | |
| 116970 | 277 NDO | 277 | |
| 117113 | 64 NDO | 64 | |
| 117269 | 96 NDO | 96 | |
| 117297 | 1,286 NDO | 1,286 | |
| 117435 | 500 NDO | 500 | |
| 117460 | 3,565 NDO | 3,565 | |
| 117469 | 0 NDO | 1,707 | CUST SIGNED OFF |
| 117483 | 450 NDO | 400 | CUST PD 400 |
| 117486 | 0 NDO | 2,056 | CUST SIGNED OFF |
| 117495 | 0 NDO | 2,307 | FULL PAID CC |
| | | 23585.9500 | |

NJ, PERTH AMBOY #18824 EMMANUEL OTOIGIAKHI
OPENED 12-4-06 LA DATE 11-5-06 FF = 5%
W#732 324 1777 F#732 826 8430
C#908-477-3741 EMAIL: OTOIGIAKHI@VERIZON.NET
UNCOLLECTED CASH

| R/O # | RO Amount Less Tax | Cash Report-ed on BR. | Uncollected Cash | RO Attach W/E Date | NOTES | |
|---|---|---|---|---|---|---|
| 117459 | 2993.8600 * | 0.0000 | 2749.1600 | 3/12/2011 | PAID 4-4-11 | FEES |
| 117479 | 2717.5200 * | 300.0000 | 2417.5200 | 3/12/2011 | PAID 4-20-11 | FEES |
| 117481 | 2278.8000 | 0.0000 | 2278.8000 | 2/26/2011 | | |
| 117406 | 2634.2700 * | 0.0000 | 1083.4800 | 2/12/2011 | PAID 3-14-11 | FEES |
| 117434 | 2438.3200 * | 0.0000 | 2133.6200 | 2/5/2011 | PAID 3-8-11 | RELEASED |
| 117374 | 900.2400 * | 0.0000 | 740.5000 | 1/15/2011 | PAID 2-7-11 | FEES |
| 117400 | 85.0000 * | 0.0000 | 76.5000 | 1/15/2011 | PAID 2-21-11 | FEES |
| 117372 | 1254.9900 * | 0.0000 | 1036.9800 | 1/1/2011 | PAID 1-19-11 | FEES |
| 117340 | 334.0000 * | 0.0000 | 38.2300 | 12/11/2010 | PAID 1-17-11 | RELEASED |
| 117319 | 29.9900 * | 0.0000 | 28.9500 | 11/27/2010 | PAID 1-5-11 | RELEASED |
| 117299 | 699.9800 * | 0.0000 | 629.9800 | 11/20/2010 | PAID 12-9-10 | FEES |
| 117303 | 993.4800 | 0.0000 | 993.4800 | 11/20/2010 | | |
| 117301 | 29.9900 * | 0.0000 | 28.9400 | 11/13/2010 | PAID 12-17-10 | RELEASED |
| 117240 | 314.9000 | 0.0000 | 314.9000 | 10/16/2010 | | |
| 117251 | 632.4000 * | 0.0000 | 616.5900 | 10/16/2010 | PAID 10-25-10 | FEES |
| 117200 | 2450.0000 * | 0.0000 | 2205.0000 | 9/25/2010 | PAID 10-12-10 | RELEASED |
| 117193 | 2847.9600 * | 0.0000 | 3214.4900 | 9/18/2010 | PAID 10-26-10 | FEES |
| 117136 | 806.1600 * | 0.0000 | 741.0000 | 8/28/2010 | PAID 9-3-10 | RELEASED |
| 117037 | 1900.0000 * | 0.0000 | 1800.0000 | 7/24/2010 | PAID 8-23-10 | FEES |
| 116985 | 161.5000 * | 0.0000 | 71.2800 | 6/26/2010 | PAID 8-5-10 | RELEASED |
| 116889 | 3089.6500 * | 0.0000 | 2534.2600 | 5/15/2010 | PAID 6-2-10 | FEES |
| 116815 | 1700.0000 * | 0.0000 | 1530.0000 | 4/3/2010 | PAID 4-30-10 | FEES |
| 116735 | 950.0000 | 0.0000 | 950.0000 | 3/6/2010 | | |
| 116680 | 2389.2200 * | 0.0000 | 2288.2200 | 1/30/2010 | PAID 2-15-10 | FEES |
| 116673 | 29.9900 * | 0.0000 | 28.9400 | 1/23/2010 | PAID 2-22-10 | FEES |
| 116672 | 29.9900 * | 0.0000 | 28.9400 | 1/23/2010 | PAID 2-22-10 | FEES |
| 116624 | 2500.0000 * | 0.0000 | 2375.0000 | 1/9/2010 | PAID 2-2-10 | FEES |
| 116634 | 478.9100 * | 0.0000 | 431.0200 | 1/9/2010 | PAID 1-25-10 | FEES |
| 116644 | 29.9900 * | 0.0000 | 28.9400 | 1/9/2010 | PAID 2-22-10 | FEES |
| 116543 | 291.9900 * | 0.0000 | 262.8000 | 11/7/2009 | PAID 11-23-09 | FEES |
| 116486 | 436.5600 * | 0.0000 | 421.2800 | 10/17/2009 | PAID 11-13-09 | RELEASED |
| 116489 | 2728.3500 * | 0.0000 | 2000.0000 | 10/29/2009 | PAID 10-29-09 | RELEASED |
| 116434 | 2269.2300 * | 0.0000 | 2053.0000 | 9/26/2009 | PAID 10-1-09 | NAT INT |
| 116395 | 160.0000 * | 0.0000 | 151.5000 | 8/29/2009 | PAID 10-2-09 | NAT INT |
| 116401 | 209.9900 * | 0.0000 | 202.6400 | 9/29/2009 | PAID 9-29-09 | NAT INT |
| 116367 | 2240.4000 * | 0.0000 | 2016.3200 | 8/15/2009 | PAID 9-29-09 | RELEASED |
| 115977 | 400.4000 * | 187.9000 | 191.2500 | 1/24/2009 | PAID 2-20-09 | RELEASED |
| | | | 40693.5100 | | | |

TOTAL FLEET SALES = $40,693.51

| | | | | |
|---|---|---|---|---|
| 116259 | 19.9900 | 0.0000 | 19.9900 | 6/13/2009 |
| 116222 | 2793.4900 | 0.0000 | 2793.4900 | 6/6/2009 |
| 116227 | 19.9900 | 0.0000 | 19.9900 | 6/6/2009 |
| 116229 | 2243.2100 | 0.0000 | 2243.2100 | 6/6/2009 |
| 116230 | 111.2400 | 0.0000 | 111.2400 | 6/6/2009 |
| 116234 | 14.9900 | 0.0000 | 14.9900 | 6/6/2009 |
| 116239 | 1045.0000 | 0.0000 | 1045.0000 | 6/6/2009 |
| 116240 | 19.9900 | 0.0000 | 19.9900 | 6/6/2009 |
| 116170 | 2375.6600 | 1500.0000 | 875.6600 | 5/30/2009 |
| 116207 | 350.0000 | 0.0000 | 350.0000 | 5/30/2009 |
| 116211 | 2290.0000 | 0.0000 | 2290.0000 | 5/30/2009 |
| 116215 | 3000.0000 | 0.0000 | 3000.0000 | 5/30/2009 |
| 116217 | 373.4800 | 0.0000 | 373.4800 | 5/30/2009 |
| 116218 | 19.9900 | 0.0000 | 19.9900 | 5/30/2009 |
| 116219 | 199.9900 | 0.0000 | 199.9900 | 5/30/2009 |
| 116220 | 462.1500 | 0.0000 | 462.1500 | 5/30/2009 |
| 116223 | 121.2900 | 0.0000 | 121.2900 | 5/30/2009 |
| 116224 | 19.9900 | 0.0000 | 19.9900 | 5/30/2009 |
| 116195 | 19.9900 | 0.0000 | 19.9900 | 5/23/2009 |
| 116201 | 19.9900 | 0.0000 | 19.9900 | 5/23/2009 |
| 116202 | 29.9900 | 0.0000 | 29.9900 | 5/23/2009 |
| 116203 | 553.6100 | 0.0000 | 553.6100 | 5/23/2009 |
| 116181 | 674.2500 | 0.0000 | 674.2500 | 5/16/2009 |
| 116182 | 109.0000 | 0.0000 | 109.0000 | 5/16/2009 |
| 116183 | 24.9900 | 0.0000 | 24.9900 | 5/16/2009 |
| 116187 | 370.0000 | 0.0000 | 370.0000 | 5/16/2009 |
| 116188 | 343.7400 | 0.0000 | 343.7400 | 5/16/2009 |
| 116190 | 19.9900 | 0.0000 | 19.9900 | 5/16/2009 |
| 116192 | 56.0000 | 0.0000 | 56.0000 | 5/16/2009 |
| 116194 | 1850.0000 | 0.0000 | 1850.0000 | 5/16/2009 |
| 116196 | 19.9900 | 0.0000 | 19.9900 | 5/16/2009 |
| 116198 | 19.9900 | 0.0000 | 19.9900 | 5/16/2009 |
| 116108 | 300.0000 | 0.0000 | 300.0000 | 5/9/2009 |
| 116162 | 123.9900 | 0.0000 | 123.9900 | 5/9/2009 |
| 116163 | 24.9900 | 0.0000 | 24.9900 | 5/9/2009 |
| 116164 | 19.9900 | 0.0000 | 19.9900 | 5/9/2009 |
| 116167 | 19.9900 | 0.0000 | 19.9900 | 5/9/2009 |
| 116168 | 3468.3700 | 0.0000 | 3468.3700 | 5/9/2009 |
| 116169 | 587.8100 | 0.0000 | 587.8100 | 5/9/2009 |
| 116121 | 1800.8000 | 0.0000 | 1800.8000 | 5/2/2009 |
| 116144 | 2000.0000 | 0.0000 | 2000.0000 | 5/2/2009 |
| 116147 | 24.9900 | 0.0000 | 24.9900 | 5/2/2009 |
| 116149 | 34.9900 | 0.0000 | 34.9900 | 5/2/2009 |
| 116155 | 2707.2000 | 0.0000 | 2707.2000 | 5/2/2009 |
| 116138 | 2330.0000 | 0.0000 | 2330.0000 | 4/25/2009 |
| 116140 | 19.9900 | 0.0000 | 19.9900 | 4/25/2009 |
| 116142 | 450.0000 | 200.0000 | 250.0000 | 4/25/2009 |
| 116124 | 1701.5100 | 0.0000 | 1701.5100 | 4/18/2009 |
| 116126 | 1610.0000 | 0.0000 | 1610.0000 | 4/18/2009 |
| 116127 | 19.9900 | 0.0000 | 19.9900 | 4/18/2009 |
| 116128 | 157.7600 | 0.0000 | 157.7600 | 4/18/2009 |
| 116130 | 24.9900 | 0.0000 | 24.9900 | 4/18/2009 |
| 116131 | 116.8700 | 0.0000 | 116.8700 | 4/18/2009 |
| 116132 | 2151.0400 | 1300.0000 | 851.0400 | 4/18/2009 |
| 116133 | 19.9900 | 0.0000 | 19.9900 | 4/18/2009 |

| | | |
|---|---|---|
| 117150 | 0 | |
| 117269 NDO | | 96 |
| 117297 NDO | | 1,286 |
| 117298 | 0 | |
| 117307 | 0 | |
| 117356 | 0 | |
| 117382 | 0 | |
| 117386 | 0 | |
| 117420 | 0 | |
| 117433 | 0 | |
| 117435 NDO | | 500 |
| 117440 | 0 | |
| 117451 | 0 | |
| 117457 | 0 | |
| 117460 NDO | | 3,565 |
| 117463 | 0 | |
| 117464 | 0 | |
| 117466 | 0 | |
| 117469 | 0 | |
| 117470 | 0 | |
| 117486 | 0 | |
| 117495 | 0 | |
| 117499 MISSING | | |
| 117501 MISSING | | |
| 117502 MISSING | | |
| 117503 MISSING | | |
| 117504 MISSING | | |
| 117505 MISSING | | |
| 117506 MISSING | | |
| 117509 MISSING | | |
| 117510 MISSING | | |
| 117511 MISSING | | |
| 117512 MISSING | | |
| 117514 MISSING | | |
| 117518 MISSING | | |
| 117519 MISSING | | |
| 117521 MISSING | | |

**MISSING REPAIR ORDERS = 103**

| | | | | | |
|---|---|---|---|---|---|
| 116474 | 2243.0200 | 0.0000 | 2243.0200 | 10/10/2009 | |
| 116475 | 19.9900 | 0.0000 | 19.9900 | 10/10/2009 | |
| 116478 | 305.0000 | 0.0000 | 305.0000 | 10/10/2009 | |
| 116480 | 242.4900 | 0.0000 | 242.4900 | 10/10/2009 | |
| 116481 | 19.9900 | 0.0000 | 19.9900 | 10/10/2009 | |
| 116483 | 290.7200 | 0.0000 | 290.7200 | 10/10/2009 | |
| 116490 | 19.9900 | 0.0000 | 19.9900 | 10/10/2009 | |
| 116491 | 23.5500 | 0.0000 | 23.5500 | 10/10/2009 | |
| 116434 | 2269.2300 * | 0.0000 | 2269.2300 | 9/26/2009 | — *warranty* |
| 116448 | 354.6900 | 0.0000 | 354.6900 | 9/26/2009 | |
| 116451 | 19.9900 | 0.0000 | 19.9900 | 9/26/2009 | |
| 116452 | 103.9900 | 0.0000 | 103.9900 | 9/26/2009 | |
| 116454 | 105.4900 | 0.0000 | 105.4900 | 9/26/2009 | |
| 116455 | 2475.0000 | 0.0000 | 2475.0000 | 9/26/2009 | |
| 116468 | 59.9500 | 0.0000 | 59.9500 | 9/26/2009 | |
| 116420 | 2500.6900 | 0.0000 | 2500.6900 | 9/19/2009 | |
| 116423 | 1588.7900 | 0.0000 | 1588.7900 | 9/19/2009 | |
| 116436 | 24.9900 | 0.0000 | 24.9900 | 9/19/2009 | |
| 116439 | 1250.0000 | 0.0000 | 1250.0000 | 9/19/2009 | |
| 116441 | 116.9200 | 0.0000 | 116.9200 | 9/19/2009 | |
| 116414 | 2149.5300 | 0.0000 | 2149.5300 | 9/12/2009 | |
| 116418 | 497.3000 | 0.0000 | 497.3000 | 9/12/2009 | |
| 116425 | 195.0000 | 0.0000 | 195.0000 | 9/12/2009 | |
| 116427 | 106.2500 | 0.0000 | 106.2500 | 9/12/2009 | |
| 116430 | 141.2500 | 0.0000 | 141.2500 | 9/12/2009 | |
| 116431 | 19.9900 | 0.0000 | 19.9900 | 9/12/2009 | |
| 116432 | 24.9900 | 0.0000 | 24.9900 | 9/12/2009 | |
| 116415 | 19.9900 | 0.0000 | 19.9900 | 9/5/2009 | |
| 116417 | 154.9900 | 0.0000 | 154.9900 | 9/5/2009 | |
| 116419 | 107.3800 | 0.0000 | 107.3800 | 9/5/2009 | |
| 116421 | 24.9900 | 0.0000 | 24.9900 | 9/5/2009 | |
| 116422 | 19.9900 | 0.0000 | 19.9900 | 9/5/2009 | |
| 116395 | 160.0000 * | 0.0000 | 160.0000 | 8/29/2009 | — *warranty* |
| 116399 | 105.7500 | 0.0000 | 105.7500 | 8/29/2009 | |
| 116400 | 440.0000 | 0.0000 | 440.0000 | 8/29/2009 | |
| 116401 | 209.9900 * | 0.0000 | 209.9900 | 8/29/2009 | |
| 116402 | 1650.0000 | 0.0000 | 1650.0000 | 8/29/2009 | |
| 116405 | 24.9900 | 0.0000 | 24.9900 | 8/29/2009 | |
| 116407 | 24.9900 | 0.0000 | 24.9900 | 8/29/2009 | |
| 116408 | 24.9900 | 0.0000 | 24.9900 | 8/29/2009 | |
| 116409 | 291.6700 | 0.0000 | 291.6700 | 8/29/2009 | |
| 116411 | 37.0000 | 0.0000 | 37.0000 | 8/29/2009 | |
| 116377 | 2477.2700 | 0.0000 | 2477.2700 | 8/22/2009 | |
| 116383 | 2056.8300 | 0.0000 | 2056.8300 | 8/22/2009 | |
| 116385 | 85.0000 | 0.0000 | 85.0000 | 8/22/2009 | |
| 116387 | 2939.6500 | 0.0000 | 2939.6500 | 8/22/2009 | |
| 116388 | 19.9900 | 0.0000 | 19.9900 | 8/22/2009 | |
| 116390 | 467.0000 | 0.0000 | 467.0000 | 8/22/2009 | |
| 116392 | 24.9900 | 0.0000 | 24.9900 | 8/22/2009 | |
| 116393 | 19.9900 | 0.0000 | 19.9900 | 8/22/2009 | |
| 116394 | 419.9900 | 0.0000 | 419.9900 | 8/22/2009 | |
| 116397 | 32.9900 | 0.0000 | 32.9900 | 8/22/2009 | |
| 116358 | 644.5000 | 0.0000 | 644.5000 | 8/15/2009 | |
| 116367 | 2240.4000 * | 0.0000 | 2240.4000 | 8/15/2009 | |
| 116372 | 2290.5200 | 0.0000 | 2290.5200 | 8/15/2009 | |

| | | | | |
|---|---|---|---|---|
| 116374 | 19.9900 | 0.0000 | 19.9900 | 8/15/2009 |
| 116375 | 19.9900 | 0.0000 | 19.9900 | 8/15/2009 |
| 116376 | 19.9900 | 0.0000 | 19.9900 | 8/15/2009 |
| 116379 | 100.0000 | 0.0000 | 100.0000 | 8/15/2009 |
| 116384 | 19.9900 | 0.0000 | 19.9900 | 8/15/2009 |
| 116353 | 19.9900 | 0.0000 | 19.9900 | 8/8/2009 |
| 116354 | 203.4700 | 0.0000 | 203.4700 | 8/8/2009 |
| 116355 | 110.4900 | 0.0000 | 110.4900 | 8/8/2009 |
| 116365 | 277.4900 | 100.0000 | 177.4900 | 8/8/2009 |
| 116369 | 253.7400 | 0.0000 | 253.7400 | 8/8/2009 |
| 116341 | 28.0000 | 0.0000 | 28.0000 | 8/1/2009 |
| 116343 | 134.2500 | 0.0000 | 134.2500 | 8/1/2009 |
| 116346 | 29.9900 | 0.0000 | 29.9900 | 8/1/2009 |
| 116347 | 1750.0000 | 0.0000 | 1750.0000 | 8/1/2009 |
| 116348 | 24.9900 | 0.0000 | 24.9900 | 8/1/2009 |
| 116351 | 344.9900 | 0.0000 | 344.9900 | 8/1/2009 |
| 116318 | 1849.9900 | 0.0000 | 1849.9900 | 7/25/2009 |
| 116325 | 1497.9700 | 0.0000 | 1497.9700 | 7/25/2009 |
| 116326 | 19.9900 | 0.0000 | 19.9900 | 7/25/2009 |
| 116301 | 1500.0000 | 0.0000 | 1500.0000 | 7/18/2009 |
| 116309 | 1589.0000 | 0.0000 | 1589.0000 | 7/18/2009 |
| 116311 | 14.9900 | 0.0000 | 14.9900 | 7/18/2009 |
| 116312 | 623.6700 | 0.0000 | 623.6700 | 7/18/2009 |
| 116314 | 24.9900 | 0.0000 | 24.9900 | 7/18/2009 |
| 116315 | 751.3700 | 0.0000 | 751.3700 | 7/18/2009 |
| 116316 | 24.9900 | 0.0000 | 24.9900 | 7/18/2009 |
| 116281 | 2265.8800 | 0.0000 | 2265.8800 | 7/11/2009 |
| 116290 | 3013.1400 | 0.0000 | 3013.1400 | 7/11/2009 |
| 116299 | 24.9900 | 0.0000 | 24.9900 | 7/11/2009 |
| 116300 | 24.9900 | 0.0000 | 24.9900 | 7/11/2009 |
| 116302 | 19.9900 | 0.0000 | 19.9900 | 7/11/2009 |
| 116303 | 169.9600 | 0.0000 | 169.9600 | 7/11/2009 |
| 116304 | 19.9900 | 0.0000 | 19.9900 | 7/11/2009 |
| 116279 | 1502.0000 | 0.0000 | 1502.0000 | 7/4/2009 |
| 116280 | 1820.4900 | 0.0000 | 1820.4900 | 7/4/2009 |
| 116286 | 19.9900 | 0.0000 | 19.9900 | 7/4/2009 |
| 116291 | 24.9900 | 0.0000 | 24.9900 | 7/4/2009 |
| 116292 | 170.0000 | 0.0000 | 170.0000 | 7/4/2009 |
| 116297 | 130.1600 | 0.0000 | 130.1600 | 7/4/2009 |
| 116242 | 2523.7000 | 0.0000 | 2523.7000 | 6/27/2009 |
| 116252 | 876.1800 | 0.0000 | 876.1800 | 6/27/2009 |
| 116260 | 2494.4700 | 0.0000 | 2494.4700 | 6/27/2009 |
| 116274 | 55.0000 | 0.0000 | 55.0000 | 6/27/2009 |
| 116275 | 2339.3900 | 0.0000 | 2339.3900 | 6/27/2009 |
| 116276 | 98.9900 | 0.0000 | 98.9900 | 6/27/2009 |
| 116277 | 24.9900 | 0.0000 | 24.9900 | 6/27/2009 |
| 116278 | 24.9900 | 0.0000 | 24.9900 | 6/27/2009 |
| 116282 | 170.5700 | 0.0000 | 170.5700 | 6/27/2009 |
| 116284 | 374.0000 | 0.0000 | 374.0000 | 6/27/2009 |
| 116246 | 2618.1500 | 0.0000 | 2618.1500 | 6/20/2009 |
| 116262 | 19.9900 | 0.0000 | 19.9900 | 6/20/2009 |
| 116263 | 19.9900 | 0.0000 | 19.9900 | 6/20/2009 |
| 116233 | 2569.6100 | 0.0000 | 2569.6100 | 6/13/2009 |
| 116235 | 2028.0000 | 0.0000 | 2028.0000 | 6/13/2009 |
| 116244 | 2571.3500 | 0.0000 | 2571.3500 | 6/13/2009 |

| | | |
|---|---|---|
| 116285 | 0 | CALL RE:$3,678.36 — _Hector Lopez - Jaguar - abandoned_ |
| 116287 | 0 | |
| 116294 | 0 | |
| 116298 | 0 | |
| 116317 MISSING | | |
| 116324 | 0 | |
| 116337 MISSING | | |
| 116350 | 0 | |
| 116352 MISSING | | |
| 116356 MISSING | | |
| 116359 | 0 | |
| 116360 MISSING | | |
| 116362 MISSING | | |
| 116364 MISSING | | |
| 116368 MISSING | | |
| 116371 MISSING | | |
| 116389 MISSING | | |
| 116396 MISSING | | |
| 116403 MISSING | | |
| 116404 MISSING | | |
| 116406 MISSING | | |
| 116412 MISSING | | |
| 116413 MISSING ✓ | | |
| 116416 MISSING | | |
| 116424 MISSING | | |
| 116433 MISSING | | |
| 116435 MISSING | | |
| 116437 MISSING | | |
| 116438 MISSING | | |
| 116444 MISSING | | |
| 116450 | 0 | |
| 116453 MISSING | | |
| 116462 | 0 | |
| 116466 MISSING | | |
| 116469 MISSING | | |
| 116470 MISSING | | |
| 116471 MISSING | | |
| 116472 MISSING | | |
| 116595 | 12/5/2009 | 2,200 — _Guardian warranty_ |
| 116600 | 0 | |
| 116619 | 0 | 2,243 — _minloto Construction_ |
| 116621 NDO | | 1,000 — _Reported — 1/30/10_ |
| 116696 NDO | | |
| 116706 | 0 | |
| 116711 | 0 | |
| 116713 | 0 | |
| 116714 | 0 | |
| 116721 | 0 | 2,429 — _Edwin onnog_ ✓ |
| 116726 NDO | | |
| 116774 | 0 | 277 — _Jarlyn - warranty - Magic_ |
| 116970 NDO | | |
| 117024 | 0 | |
| 117046 | 0 | |
| 117071 | 0 | |
| 117113 NDO | | 64 |

| | | | | |
|---|---|---|---|---|
| 116016 | 420.5000 | 0.0000 | 420.5000 | 2/14/2009 |
| 116018 | 89.9900 | 0.0000 | 89.9900 | 2/14/2009 |
| 116019 | 29.9900 | 0.0000 | 29.9900 | 2/14/2009 |
| 116023 | 448.1100 | 200.0000 | 248.1100 | 2/14/2009 |
| 116024 | 59.9900 | 0.0000 | 59.9900 | 2/14/2009 |
| 116027 | 101.7500 | 0.0000 | 101.7500 | 2/14/2009 |
| 116030 | 251.4300 | 0.0000 | 251.4300 | 2/14/2009 |
| 116033 | 214.0000 | 0.0000 | 214.0000 | 2/14/2009 |
| 116035 | 300.0000 | 0.0000 | 300.0000 | 2/14/2009 |
| 116002 | 187.2400 | 0.0000 | 187.2400 | 2/7/2009 |
| 116004 | 234.9900 | 0.0000 | 234.9900 | 2/7/2009 |
| 116007 | 197.0000 | 0.0000 | 197.0000 | 2/7/2009 |
| 116008 | 600.0000 | 0.0000 | 600.0000 | 2/7/2009 |
| 116009 | 225.0000 | 0.0000 | 225.0000 | 2/7/2009 |
| 116011 | 59.9500 | 0.0000 | 59.9500 | 2/7/2009 |
| 115996 | 427.0500 | 0.0000 | 427.0500 | 1/31/2009 |
| 115977 | 400.4000 * | 187.9000 | 212.5000 | 1/24/2009 |
| 115978 | 29.9900 | 0.0000 | 29.9900 | 1/24/2009 |
| 115979 | 59.9500 | 0.0000 | 59.9500 | 1/24/2009 |
| 115980 | 29.9900 | 0.0000 | 29.9900 | 1/24/2009 |
| 115984 | 29.9900 | 0.0000 | 29.9900 | 1/24/2009 |
| 115988 | 29.9900 | 0.0000 | 29.9900 | 1/24/2009 |
| 115961 | 2666.0800 | 0.0000 | 2666.0800 | 1/17/2009 |
| 115962 | 1869.8300 | 0.0000 | 1869.8300 | 1/17/2009 |
| 115966 | 63.0000 | 0.0000 | 63.0000 | 1/17/2009 |
| 115968 | 1900.0000 | 0.0000 | 1900.0000 | 1/17/2009 |
| 115970 | 322.4900 | 0.0000 | 322.4900 | 1/17/2009 |
| 115975 | 177.7000 | 0.0000 | 177.7000 | 1/17/2009 |
| 115951 | 2025.0000 | 0.0000 | 2025.0000 | 1/10/2009 |
| 115958 | 2799.1900 | 0.0000 | 2799.1900 | 1/10/2009 |
| 115960 | 59.9500 | 0.0000 | 59.9500 | 1/10/2009 |
| 115964 | 49.9800 | 0.0000 | 49.9800 | 1/10/2009 |
| 115952 | 2354.1500 | 0.0000 | 2354.1500 | 1/3/2009 |
| 115954 | 59.9500 | 0.0000 | 59.9500 | 1/3/2009 |
| 115956 | 195.9900 | 0.0000 | 195.9900 | 1/3/2009 |
| 115677 | 1850.0000 | 50.0000 | 1800.0000 | 7/26/2008 |
| 115594 | 2200.0000 | 0.0000 | 2200.0000 | 6/21/2008 |
| 115587 | 212.8200 | 119.9800 | 92.8400 | 6/14/2008 |
| 115274 | 1760.8000 | 1200.0000 | 560.8000 | 2/2/2008 |
| 115204 | 1216.7800 | 608.3900 | 608.3900 | 1/12/2008 |
| | | | 390736.0800 | |

**TOTAL UNCOLLECTED CASH = $390,736.08**
**MISSING REPAIR ORDERS**

| RO# | STATUS | |
|---|---|---|
| 116178 | MISSING | |
| 116199 | MISSING | |
| 116209 | | 0 |
| 116228 | | 0 |
| 116231 | MISSING | |
| 116232 | MISSING | |
| 116249 | MISSING | |
| 116251 | | 0 |
| 116261 | | 0 |
| 116265 | | 0 |
| 116283 | | 0 |

*Closed - Ro# 117168*
*4/30/11*

| | | | | |
|---|---|---|---|---|
| 116102 | 2350.0000 | 0.0000 | 2350.0000 | 4/11/2009 |
| 116116 | 1250.6300 | 0.0000 | 1250.6300 | 4/11/2009 |
| 116120 | 96.7400 | 0.0000 | 96.7400 | 4/11/2009 |
| 116090 | 2200.7600 | 1154.0000 | 1046.7600 | 4/4/2009 |
| 116094 | 2093.5200 | 0.0000 | 2093.5200 | 4/4/2009 |
| 116099 | 2370.9900 | 0.0000 | 2370.9900 | 4/4/2009 |
| 116104 | 19.9900 | 0.0000 | 19.9900 | 4/4/2009 |
| 116105 | 524.8100 | 0.0000 | 524.8100 | 4/4/2009 |
| 116109 | 331.1200 | 0.0000 | 331.1200 | 4/4/2009 |
| 116110 | 107.0100 | 0.0000 | 107.0100 | 4/4/2009 |
| 116112 | 656.6000 | 0.0000 | 656.6000 | 4/4/2009 |
| 116113 | 442.4000 | 0.0000 | 442.4000 | 4/4/2009 |
| 116114 | 19.9900 | 0.0000 | 19.9900 | 4/4/2009 |
| 115566 | 561.4900 | 0.0000 | 561.4900 | 3/28/2009 |
| 115716 | 29.9900 | 0.0000 | 29.9900 | 3/28/2009 |
| 115729 | 24.9900 | 0.0000 | 24.9900 | 3/28/2009 |
| 115909 | 21.9900 | 0.0000 | 21.9900 | 3/28/2009 |
| 116025 | 770.9200 | 0.0000 | 770.9200 | 3/28/2009 |
| 116036 | 2613.2600 | 0.0000 | 2613.2600 | 3/28/2009 |
| 116052 | 2143.8400 | 0.0000 | 2143.8400 | 3/28/2009 |
| 116055 | 940.9600 | 0.0000 | 940.9600 | 3/28/2009 |
| 116070 | 993.4900 | 0.0000 | 993.4900 | 3/28/2009 |
| 116084 | 24.9900 | 0.0000 | 24.9900 | 3/28/2009 |
| 116087 | 223.9900 | 0.0000 | 223.9900 | 3/28/2009 |
| 116088 | 19.9900 | 0.0000 | 19.9900 | 3/28/2009 |
| 116091 | 886.5600 | 750.0000 | 136.5600 | 3/28/2009 |
| 116093 | 374.0800 | 0.0000 | 374.0800 | 3/28/2009 |
| 116095 | 140.0000 | 0.0000 | 140.0000 | 3/28/2009 |
| 116096 | 24.9900 | 0.0000 | 24.9900 | 3/28/2009 |
| 116097 | 19.9900 | 0.0000 | 19.9900 | 3/28/2009 |
| 116101 | 19.9900 | 0.0000 | 19.9900 | 3/28/2009 |
| 116072 | 403.7600 | 0.0000 | 403.7600 | 3/21/2009 |
| 116073 | 34.9900 | 0.0000 | 34.9900 | 3/21/2009 |
| 116074 | 29.9900 | 0.0000 | 29.9900 | 3/21/2009 |
| 116075 | 1801.0000 | 0.0000 | 1801.0000 | 3/21/2009 |
| 116081 | 19.9900 | 0.0000 | 19.9900 | 3/21/2009 |
| 116056 | 1850.0000 | 0.0000 | 1850.0000 | 3/14/2009 |
| 116059 | 1850.0000 | 0.0000 | 1850.0000 | 3/14/2009 |
| 116063 | 116.9200 | 0.0000 | 116.9200 | 3/14/2009 |
| 116071 | 29.9900 | 0.0000 | 29.9900 | 3/14/2009 |
| 116053 | 2335.8200 | 0.0000 | 2335.8200 | 3/7/2009 |
| 116054 | 134.7200 | 0.0000 | 134.7200 | 3/7/2009 |
| 116057 | 228.0000 | 0.0000 | 228.0000 | 3/7/2009 |
| 116060 | 349.8300 | 0.0000 | 349.8300 | 3/7/2009 |
| 116037 | 2001.0200 | 0.0000 | 2001.0200 | 2/28/2009 |
| 116017 | 1700.0000 | 0.0000 | 1700.0000 | 2/21/2009 |
| 116021 | 2498.8600 | 0.0000 | 2498.8600 | 2/21/2009 |
| 116028 | 2750.0000 | 0.0000 | 2750.0000 | 2/21/2009 |
| 116038 | 3956.3200 | 0.0000 | 3956.3200 | 2/21/2009 |
| 116039 | 29.9900 | 0.0000 | 29.9900 | 2/21/2009 |
| 116040 | 692.4400 | 0.0000 | 692.4400 | 2/21/2009 |
| 116006 | 2350.0000 | 0.0000 | 2350.0000 | 2/14/2009 |
| 116010 | 2127.0200 | 0.0000 | 2127.0200 | 2/14/2009 |
| 116013 | 1681.6600 | 0.0000 | 1681.6600 | 2/14/2009 |
| 116014 | 500.0000 | 0.0000 | 500.0000 | 2/14/2009 |

| Center# | Year | Month | Invoice # | Invoice Date | AMOUNT |
|---|---|---|---|---|---|
| 18824 | 7 | 1 | 1393911 | 1/25/2007 | -351.86 |
| 18824 | 7 | 1 | 1393912 | 1/25/2007 | -361.97 |
| 18824 | 7 | 1 | 1393913 | 1/25/2007 | -9.23 |
| 18824 | 7 | 1 | 1393914 | 1/25/2007 | -120.47 |
| 18824 | 7 | 1 | 1393915 | 1/25/2007 | -211.49 |
| 18824 | 7 | 1 | 1393916 | 1/25/2007 | -394.15 |
| 18824 | 7 | 2 | 1399487 | 2/9/2007 | -622.43 |
| 18824 | 7 | 2 | 1399488 | 2/9/2007 | -551.48 |
| 18824 | 7 | 3 | 1407133 | 2/26/2007 | -445.19 |
| 18824 | 7 | 3 | 1405055 | 2/22/2007 | -425.84 |
| 18824 | 7 | 3 | 1408045 | 3/2/2007 | -256.10 |
| 18824 | 7 | 3 | 1396615 | 1/31/2007 | -548.54 |
| 18824 | 7 | 3 | 1399627 | 2/12/2007 | -407.93 |
| 18824 | 7 | 5 | 1399627 | 2/12/2007 | -71.92 |
| 18824 | 7 | 5 | 1407291 | 2/26/2007 | -445.19 |
| 18824 | 7 | 5 | 1423687 | 4/10/2007 | -166.32 |
| 18824 | 7 | 5 | 1424046 | 4/11/2007 | -212.33 |
| 18824 | 7 | 5 | 1427259 | 4/23/2007 | -254.03 |
| 18824 | 7 | 5 | 1432884 | 5/1/2007 | -50.21 |
| 18824 | 7 | 6 | 1432884 | 5/1/2007 | -256.00 |
| 18824 | 7 | 6 | 1433106 | 5/2/2007 | -3.89 |
| 18824 | 7 | 6 | 1435852 | 5/10/2007 | -194.70 |
| 18824 | 7 | 6 | 1438394 | 5/17/2007 | -1.70 |
| 18824 | 7 | 6 | 1444071 | 5/29/2007 | -163.64 |
| 18824 | 7 | 6 | 1444679 | 6/1/2007 | -639.74 |
| 18824 | 7 | 6 | 1444680 | 6/1/2007 | -384.51 |
| 18824 | 7 | 6 | 1444681 | 6/1/2007 | -437.32 |
| 18824 | 7 | 7 | 1444071 | 5/29/2007 | -151.90 |
| 18824 | 7 | 7 | 1447401 | 6/7/2007 | -31.75 |
| 18824 | 7 | 7 | 1447403 | 6/7/2007 | -15.87 |
| 18824 | 7 | 9 | 1487390 | 8/28/2007 | -599.13 |
| 18824 | 7 | 9 | 1487391 | 8/28/2007 | -388.86 |
| 18824 | 7 | 9 | 1487684 | 8/29/2007 | -96.25 |
| 18824 | 7 | 9 | 1447403 | 6/7/2007 | -128.73 |
| 18824 | 7 | 9 | 1449918 | 6/12/2007 | -118.10 |
| 18824 | 7 | 9 | 1461940 | 7/10/2007 | -39.45 |
| 18824 | 7 | 9 | 1464475 | 7/17/2007 | -270.37 |
| 18824 | 7 | 9 | 1477479 | 8/7/2007 | -173.64 |
| 18824 | 7 | 9 | 1480171 | 8/14/2007 | -654.57 |
| 18824 | 7 | 9 | 1483552 | 8/21/2007 | -557.90 |
| 18824 | 7 | 11 | 1483552 | 8/21/2007 | -201.11 |
| 18824 | 7 | 11 | 1487392 | 8/28/2007 | -88.85 |
| 18824 | 7 | 11 | 1490596 | 9/7/2007 | -436.46 |
| 18824 | 7 | 11 | 1499084 | 9/25/2007 | -262.43 |
| 18824 | 7 | 11 | 1503390 | 10/3/2007 | -499.72 |
| 18824 | 7 | 11 | 1505946 | 10/9/2007 | -133.00 |

# Exhibit D

**No. 116621**

AAMCO FOCUS

| EMMANUEL | CONSTRUCTION | | MINHOTO | | 12/21/0910:12 |
|---|---|---|---|---|---|
| 33 RICHARDS ST | | NEWARK | NJ   07105 | 72161 | 4L60E |
| 2004  CHEVROLET   EXPRESS 2500  GRAY | | 1GCFG15X741111601 | | XK738J | |
| | | | | 4.3L | 973/687-2823 |

# 18824
**Isi, Llc**
**209 New Brunswick Ave**
**Perth Amboy, NJ 08861**
**732-324-1777**

| | | |
|---|---|---|
| AAMCO EXTERNAL DIAGNOSTIC SERVICE | | 59.95 |
| AUTHORIZATION FROM: CUSTOMER PHONE: _____ DATE: 12/21/2009 TIME: 10:12:22 BY: EMMANUEL VERIFICATION: | | |

DESCRIPTION OF PROBLEM-- TRANS SLIPS

COMPUTER DIAGNOSTIC SERVICE

SERVICE RECOMMENDATION
AAMCO MAY OPERATE THIS VEHICLE FOR THE PURPOSE OF TESTING AND DELIVERY AT MY OWN RISK.  I UNDERSTAND THAT IF A TORQUE CONVERTER AND/OR HARD PARTS ARE REQUIRED, THE COST WILL BE IN ADDITION TO THE BASE PRICE OF $1742.74. I HAVE THE RIGHT TO AUTHORIZE THE ADDITIONAL COST, OR TO REQUEST REASSEMBLY AND REINSTALLATION OF THE UNSERVICED TRANSMISSION FOR A LABOR CHARGE OF $450 WHICH INCLUDES THE COST OF DISASSEMBLY AND EXAMINATION.

AUTHORIZATION FROM: MC PHONE: _____ DATE: 12/23/2009 TIME: 12:53:41 BY: EMMANUEL VERIFICATION: MIN

RECONDITIONED SERVICE $1742.74    HARD PARTS AND OTHER COMPONENTS ADDITIONAL COST (AS NEEDED)
TORQUE CONVERTER (ADDITIONAL COST IF REQUIRED) $299

**B**

TRANSMISSION SERVICE

AAMCO RECONDITIONED TRANSMISSION  WITH AN EXCHANGED REBUILT TORQUE CONVERTER  WITH AAMCO 12 MONTH /12,000 MILE LIMITED WARRANTY

| | |
|---|---|
| 1 - NEW - ASSEMBLY KIT  TRANSTAR #K6100E-LS (B) | 410.67 |
| 1 - NEW - FILTER - LATEST DESIGN(B) | 38.51 |
| 1 - NEW - BAND - INTERMEDIATE(B) | 22.56 |
| 11 - NEW - DEXRON / MERCON TRANS FLUID (B) | 38.50 |
| 6 - - LABOR (RR) (B) | 510.00 |
| 8.5 - - LABOR (R) (B) | 722.50 |
| 1 - - SHIFT KIT | 73.89 |
| 1 - - EPC SOLENIODE | 49.99 |
| 1 - - HARD SHELL | 89.99 |
| 1 - RECONDITIONED - TORQUE CONVERTER | 299.00 |
| 1 - - VALVE BODY PLATE | 39.99 |
| 1 - - DISCOUNT | -52.49 |
| 1 - - CREDIT - E. D. S. | -59.95 |

AUTHORIZATION FROM: MC PHONE: _____ DATE: 12/23/2009 TIME: 12:53:41 BY: EMMANUEL VERIFICATION: MIN
RECONDITIONED SERVICE $1742.74  /  HARD PARTS & OTHER COMPONENTS $253.86  /  TORQUE CONVERTER $299

**1**

I HAVE BEEN OFFERED A 36 MONTH/36,000 MILE EXTENDED WARRANTY ($403.76) AND CHOSEN TO DECLINE_____(INITIALS)
I HAVE BEEN OFFERED A LIFETIME EXTENDED WARRANTY ($807.52) AND CHOSEN TO DECLINE_____(INITIALS)

PARTS SHOWN AS EXCHANGE ARE NOT RETURNABLE

| TRANSMISSION | | SERVICE PLUS | | | | |
|---|---|---|---|---|---|---|
| PARTS: 1,010.61  LABOR: 1,232.50  SUBTOTAL: 2,243.11 | | PARTS: 0.00 | LABOR: 0.00 | SUBTOTAL: 0.00 | | |

| | |
|---|---|
| TOTAL LABOR | 1,232.50 |
| TOTAL PARTS | 1,010.61 |
| SERVICE AGREEMENT | |
| SUBTOTAL | 2,243.11 |
| TAX | 157.02 |
| TOTAL | 2,400.13 |

**CERTIFICATION**
This certifies that the automotive components described above have been properly repaired and restored to sound working condition.

Authorized Signature

**COMPLETION CERTIFICATE**
I acknowledge receipt of the vehicle and a copy of this Repair Order.

Authorized Signature          Delivery Date

**No. 116696**

AAMCO FOCUS

EMMANUEL   CYMBALISTY                    KENETH              1/29/10 15:16

149 FOURTH ST           EDISON        NJ   08837      93964      N4AEL

1991   MAZDA      929       BLACK      JM1HC2243M0406480          MRJ24Z

               116650      93870    1/22/2010          3.0L      732/225-9098

# 18824
**Isi, Llc**
209 New Brunswick Ave
Perth Amboy, NJ 08861
732-324-1777

SP | SEPARATE WARRANTY TERMS & CONDITIONS APPLY TO EACH SERVICE.  ASK THIS INDEPENDENTLY OWNED & OPERATED AAMCO CENTER FOR A COPY OF THE WARRANTY TERMS THAT APPLY TO THE FOLLOWING SERVICE(S) AT THIS CENTER ONLY

AUTHORIZATION FROM: CUSTOMER PHONE: _____ DATE: 1/29/2010 TIME: 15:16:22 BY: EMMANUEL VERIFICATION:

9

1 EGR VALVE                                                              391.42
1 EGR GASKET                                                               7.80
1 LABOR                                                                  299.78
1 ELECTRICAL- HOLD BOTTOM WAS  FLASHING FIXED                            301.00

AUTHORIZATION FROM: KEN PHONE: _____ DATE: 1/29/10 TIME: 15:21 BY: EMM VERIFICATION: KEN

PARTS SHOWN AS EXCHANGE ARE NOT RETURNABLE

TOTAL LABOR    299.78
TOTAL PARTS    700.22

| TRANSMISSION | | | | SERVICE PLUS | | | | |
|---|---|---|---|---|---|---|---|---|
| PARTS: 0.00 | LABOR: 0.00 | SUBTOTAL: 0.00 | | PARTS: 700.22 | LABOR: 299.78 | SUBTOTAL: 1,000.00 | | |

SUBTOTAL    1,000.00
TAX            70.00
TOTAL       1,070.00

**CERTIFICATION**
This certifies that the automotive components described above have been properly repaired and restored to sound working condition.

Authorized Signature

**COMPLETION CERTIFICATE**
I acknowledge receipt of the vehicle and a copy of this Repair Order.

Authorized Signature          Delivery Date

No. 117486

EMMANUEL   P. PATEL                    MAYURBHAI              3/4/11   9:15

22 HOPKINSON AVE          PISCATAWAY         NJ   08854       153285      BAXA

2001  HONDA      ACCORD        WHITE     1HGCC56641A022923              E64AMX

2.3L           908/315-6553

# 18824
Isi, Llc
209 New Brunswick Ave
Perth Amboy, NJ 08861
732-324-1777

AAMCO EXTERNAL DIAGNOSTIC SERVICE                                                    59.95
AUTHORIZATION FROM: CUSTOMER  PHONE: _____  DATE: 3/4/2011  TIME: 9:15:03  BY:  EMMANUEL  VERIFICATION:

DESCRIPTION OF PROBLEM-- TRANS SLIPS

COMPUTER DIAGNOSTIC SERVICE

SERVICE RECOMMENDATION
AAMCO MAY OPERATE THIS VEHICLE FOR THE PURPOSE OF TESTING AND DELIVERY AT MY OWN RISK.  I UNDERSTAND
THAT IF A TORQUE CONVERTER AND/OR HARD PARTS ARE REQUIRED, THE COST WILL BE IN ADDITION TO THE
BASE PRICE OF  $1841.05.  I HAVE THE RIGHT TO AUTHORIZE THE ADDITIONAL COST, OR TO REQUEST REASSEMBLY AND
REINSTALLATION OF THE UNSERVICED TRANSMISSION FOR A LABOR CHARGE OF  $450 WHICH INCLUDES THE COST OF
DISASSEMBLY AND EXAMINATION.

AUTHORIZATION FROM: MP  PHONE: _____  DATE: 3/14/2011  TIME: 13:41:12  BY:  EMMANUEL  VERIFICATION: S

RECONDITIONED SERVICE $1841.05       HARD PARTS AND OTHER COMPONENTS ADDITIONAL COST (AS NEEDED)
TORQUE CONVERTER (ADDITIONAL COST IF REQUIRED) $379

B
TRANSMISSION SERVICE

AAMCO RECONDITIONED TRANSMISSION  WITH AN EXCHANGED REBUILT TORQUE CONVERTER  WITH AAMCO 12
MONTH /12,000 MILE LIMITED WARRANTY

1 - NEW - ASSEMBLY KIT  TRANSTAR #K5000M-LS (B)                                      540.79
1 - NEW - FILTER - LEGEND SEDAN(B)                                                    47.81
5.7 - NEW - DEXRON / MERCON TRANS FLUID (B)                                           19.95
5.6 - - LABOR (RR) (B)                                                               476.00
8.9 - - LABOR (R) (B)                                                                756.50
1 - RECONDITIONED - FORWARD DRUM                                                     149.99
1 - RECONDITIONED - TORQUE CONVERTER                                                 379.00
1 - - DISCOUNT                                                                      -313.97
1 - - CREDIT - E. D. S.                                                              -59.95

AUTHORIZATION FROM: MP  PHONE: _____  DATE: 3/14/2011  TIME: 13:41:12  BY:  EMM  VERIFICATION: S
RECONDITIONED SERVICE  $1841.05   /   HARD PARTS & OTHER COMPONENTS $149.99   /   TORQUE CONVERTER  $379

1   I HAVE BEEN OFFERED A 36 MONTH/36,000 MILE EXTENDED WARRANTY ($370.09) AND CHOSEN TO DECLINE_____(INITIALS)
    I HAVE BEEN OFFERED A LIFETIME EXTENDED WARRANTY ($740.19) AND CHOSEN TO DECLINE_____(INITIALS)

PARTS SHOWN AS EXCHANGE ARE NOT RETURNABLE

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| TRANSMISSION | | | SERVICE PLUS | | | | TOTAL LABOR | 1,232.50 |

TRANSMISSION
PARTS: 823.57    LABOR: 1,232.50  SUBTOTAL: 2,056.07    SERVICE PLUS  PARTS: 0.00    LABOR: 0.00    SUBTOTAL: 0.00

TOTAL LABOR        1,232.50
TOTAL PARTS          823.57
SERVICE
AGREEMENT
SUBTOTAL           2,056.07
TAX                  143.93
TOTAL              2,200.00

CERTIFICATION
This certifies that the automotive components described above have been properly
repaired and restored to sound working condition.

_____
Authorized Signature

COMPLETION CERTIFICATE
I acknowledge receipt of the vehicle and a copy of this Repair Order.

_____          _____
Authorized Signature                  Delivery Date

**No.** 117495

| EMMANUEL   CORPORATION | | HESS | | 3/9/11  9:03 | |
|---|---|---|---|---|---|
| 1 HESS PLAZA | WOODBRIDGE | NJ  07095 | 133839 | 4R70W | |
| 2001  FORD | F150 | WHITE | 1FTZF17291KB02311 | XB268W | |
| | | | 4.2L | | 732/750-6066 |

# 18824
**Isi, Llc**
209 New Brunswick Ave
Perth Amboy, NJ 08861
732-324-1777

AAMCO EXTERNAL DIAGNOSTIC SERVICE
AUTHORIZATION FROM: CUSTOMER  PHONE: _____  DATE: 3/9/2011  TIME: 9:03:23  BY:  EMMANUEL  VERIFICATION:            59.95

DESCRIPTION OF PROBLEM-- TRANS LEAKS, NO FORWARD/ REVERSE

COMPUTER DIAGNOSTIC SERVICE

SERVICE RECOMMENDATION
AAMCO MAY OPERATE THIS VEHICLE FOR THE PURPOSE OF TESTING AND DELIVERY AT MY OWN RISK. I UNDERSTAND
THAT IF A TORQUE CONVERTER AND/OR HARD PARTS ARE REQUIRED, THE COST WILL BE IN ADDITION TO THE
BASE PRICE OF $1674.85. I HAVE THE RIGHT TO AUTHORIZE THE ADDITIONAL COST, OR TO REQUEST REASSEMBLY AND
REINSTALLATION OF THE UNSERVICED TRANSMISSION FOR A LABOR CHARGE OF $450 WHICH INCLUDES THE COST OF
DISASSEMBLY AND EXAMINATION.

AUTHORIZATION FROM: HC  PHONE: _____  DATE: 3/15/2011  TIME: 11:31:08  BY:  EMMANUEL  VERIFICATION: R

RECONDITIONED SERVICE $1674.85      HARD PARTS AND OTHER COMPONENTS ADDITIONAL COST (AS NEEDED)
TORQUE CONVERTER (ADDITIONAL COST IF REQUIRED) $379

**B**

TRANSMISSION SERVICE

AAMCO RECONDITIONED TRANSMISSION  WITH AN EXCHANGED REBUILT TORQUE CONVERTER  WITH AAMCO 12
MONTH /12,000 MILE LIMITED WARRANTY

| | |
|---|---:|
| 1 - NEW - ASSEMBLY KIT  TRANSTAR #K5300E-LS (B) | 299.99 |
| 1 - NEW - FILTER - W/TUBE(B) | 27.97 |
| 1 - NEW - BAND - OVERDRIVE(B) | 14.39 |
| 12 - NEW - DEXRON / MERCON TRANS FLUID (B) | 66.00 |
| 6 - - LABOR (RR) (B) | 510.00 |
| 8.9 - - LABOR (R) (B) | 756.50 |
| 1 - - FORWARD DRUM | 130.00 |
| 1 - - PUMP | 49.99 |
| 1 - - EPC SOLENIODE | 73.50 |
| 1 - RECONDITIONED - TORQUE CONVERTER | 379.00 |
| 1 - - CREDIT - E. D. S. | -59.95 |

AUTHORIZATION FROM: HC  PHONE: _____  DATE: 3/15/2011  TIME: 11:31:08  BY: EMM  VERIFICATION: R
RECONDITIONED SERVICE $1674.85   /   HARD PARTS & OTHER COMPONENTS $253.49   /   TORQUE CONVERTER $379

**1**

I HAVE BEEN OFFERED A 36 MONTH/36,000 MILE EXTENDED WARRANTY ($415.32) AND CHOSEN TO DECLINE_____(INITIALS)
I HAVE BEEN OFFERED A LIFETIME EXTENDED WARRANTY ($830.64) AND CHOSEN TO DECLINE_____(INITIALS)

PARTS SHOWN AS EXCHANGE ARE NOT RETURNABLE

| TRANSMISSION | | SERVICE PLUS | | | |
|---|---|---|---|---|---|
| PARTS: 1,040.84  LABOR: 1,266.50  SUBTOTAL: 2,307.34 | | PARTS: 0.00 | LABOR: 0.00 | SUBTOTAL: 0.00 | |

| | |
|---|---:|
| TOTAL LABOR | 1,266.50 |
| TOTAL PARTS | 1,040.84 |
| SERVICE AGREEMENT | |
| SUBTOTAL | 2,307.34 |
| TAX | 161.52 |
| TOTAL | 2,468.86 |

**CERTIFICATION**
This certifies that the automotive components described above have been properly
repaired and restored to sound working condition.

_____
Authorized Signature

**COMPLETION CERTIFICATE**
I acknowledge receipt of the vehicle and a copy of this Repair Order.

_____        _____
Authorized Signature                    Delivery Date

No. 117486

AAMCO FOCUS

EMMANUEL  P. PATEL          MAYURBHAI          3/4/11  9:15

22 HOPKINSON AVE          PISCATAWAY      NJ  08854      153285      BAXA

2001  HONDA    ACCORD    WHITE    1HGCG56641A022923          E64AMX

2.3L          908/315-6553

# 18824
**Isi, Llc**
**209 New Brunswick Ave**
**Perth Amboy, NJ 08861**
**732-324-1777**

---

AAMCO EXTERNAL DIAGNOSTIC SERVICE                                                59.95
AUTHORIZATION FROM: CUSTOMER  PHONE: _____  DATE: 3/4/2011  TIME: 9:15:03  BY: EMMANUEL  VERIFICATION:

DESCRIPTION OF PROBLEM-- TRANS SLIPS

COMPUTER DIAGNOSTIC SERVICE

SERVICE RECOMMENDATION
AAMCO MAY OPERATE THIS VEHICLE FOR THE PURPOSE OF TESTING AND DELIVERY AT MY OWN RISK. I UNDERSTAND
THAT IF A TORQUE CONVERTER AND/OR HARD PARTS ARE REQUIRED, THE COST WILL BE IN ADDITION TO THE
BASE PRICE OF $1841.05. I HAVE THE RIGHT TO AUTHORIZE THE ADDITIONAL COST, OR TO REQUEST REASSEMBLY AND
REINSTALLATION OF THE UNSERVICED TRANSMISSION FOR A LABOR CHARGE OF $450 WHICH INCLUDES THE COST OF
DISASSEMBLY AND EXAMINATION.

AUTHORIZATION FROM: MP PHONE: _____  DATE: 3/14/2011  TIME: 13:41:12  BY: EMMANUEL  VERIFICATION: S

RECONDITIONED SERVICE $1841.05      HARD PARTS AND OTHER COMPONENTS ADDITIONAL COST (AS NEEDED)
TORQUE CONVERTER (ADDITIONAL COST IF REQUIRED) $379

B    TRANSMISSION SERVICE

AAMCO RECONDITIONED TRANSMISSION  WITH AN EXCHANGED REBUILT TORQUE CONVERTER  WITH AAMCO 12
MONTH /12,000 MILE LIMITED WARRANTY

1 - NEW - ASSEMBLY KIT  TRANSTAR #K5000M-LS (B)                                  540.79
1 - NEW - FILTER - LEGEND SEDAN(B)                                                47.81
5.7 - NEW - DEXRON / MERCON TRANS FLUID (B)                                       19.95
5.6 - - LABOR (RR) (B)                                                           476.00
8.9 - - LABOR (R) (B)                                                            756.50
1 - RECONDITIONED - FORWARD DRUM                                                 149.99
1 - RECONDITIONED - TORQUE CONVERTER                                            379.00
1 - - DISCOUNT                                                                  -313.97
1 - - CREDIT - E. D. S.                                                          -59.95

AUTHORIZATION FROM: MP PHONE: _____  DATE: 3/14/2011  TIME: 13:41:12  BY: EMM  VERIFICATION: S
RECONDITIONED SERVICE $1841.05   /   HARD PARTS & OTHER COMPONENTS $149.99   /   TORQUE CONVERTER $379

1    I HAVE BEEN OFFERED A 36 MONTH/36,000 MILE EXTENDED WARRANTY ($370.09) AND CHOSEN TO DECLINE_____(INITIALS)
I HAVE BEEN OFFERED A LIFETIME EXTENDED WARRANTY ($740.19) AND CHOSEN TO DECLINE _____(INITIALS)

---

PARTS SHOWN AS EXCHANGE ARE NOT RETURNABLE                TOTAL LABOR    1,232.50
**TRANSMISSION**                          **SERVICE PLUS**              TOTAL PARTS      823.57
**PARTS:** 823.57  **LABOR:** 1,232.50  **SUBTOTAL:** 2,056.07   **PARTS:** 0.00  **LABOR:** 0.00  **SUBTOTAL:** 0.00    SERVICE AGREEMENT
                                                                        SUBTOTAL    2,056.07
                                                                        TAX           143.93
                                                                        TOTAL      **2,200.00**

**CERTIFICATION**                           **COMPLETION CERTIFICATE**
This certifies that the automotive components described above have been properly    I acknowledge receipt of the vehicle and a copy of this Repair Order.
repaired and restored to sound working condition.

_____                     _____
Authorized Signature                         Authorized Signature      Delivery Date

No. 117460

AAMCO FOCUS

EMMANUEL   A/C MATOS                    LAURO                    2/17/11   9:49

84 HARRISSON PL              PERTH AMBOY     NJ   08861     128331    RE5RO5A

2005  NISSAN    PATHFINDER   RED   5N1AR18W65C783318                 SXG95X

                                                        4.0L        201/994-9413

# 18824
Isi, Llc
209 New Brunswick Ave
Perth Amboy, NJ 08861
732-324-1777

AAMCO EXTERNAL DIAGNOSTIC SERVICE                                              59.95
AUTHORIZATION FROM: CUSTOMER  PHONE: _____  DATE: 2/17/2011  TIME: 9:49:21  BY: EMMANUEL  VERIFICATION:

DESCRIPTION OF PROBLEM-- TRANS SLIPS

COMPUTER DIAGNOSTIC SERVICE

SERVICE RECOMMENDATION
AAMCO MAY OPERATE THIS VEHICLE FOR THE PURPOSE OF TESTING AND DELIVERY AT MY OWN RISK.  I UNDERSTAND
THAT IF A TORQUE CONVERTER AND/OR HARD PARTS ARE REQUIRED, THE COST WILL BE IN ADDITION TO THE
BASE PRICE OF  $1582.37.  I HAVE THE RIGHT TO AUTHORIZE THE ADDITIONAL COST, OR TO REQUEST REASSEMBLY AND
REINSTALLATION OF THE UNSERVICED TRANSMISSION FOR A LABOR CHARGE OF  $450 WHICH INCLUDES THE COST OF
DISASSEMBLY AND EXAMINATION.

AUTHORIZATION FROM: LA  PHONE: _____  DATE: 2/18/2011  TIME: 16:08:41  BY: EMMANUEL  VERIFICATION: L

RECONDITIONED SERVICE  $1582.37      HARD PARTS AND OTHER COMPONENTS ADDITIONAL COST (AS NEEDED)
TORQUE CONVERTER (ADDITIONAL COST IF REQUIRED) $

B

TRANSMISSION SERVICE

AAMCO RECONDITIONED TRANSMISSION  WITH AN EXCHANGED REBUILT TORQUE CONVERTER  WITH AAMCO 12
MONTH /12,000 MILE LIMITED WARRANTY

1 - NEW - ASSEMBLY KIT  PRICE-GUIDE #GETBNR (B)                                399.99
1 - NEW - FILTER (B)                                                            29.99
1 - NEW - BAND (B)                                                              69.99
10.5 - NEW - DEXRON / MERCON TRANS FLUID (B)                                   104.90
5 - - LABOR (RR) (B)                                                           425.00
6.5 - - LABOR (R) (B)                                                          552.50
1 - - FRONT SEAL                                                                 6.99
1 - - VALVEBODY                                                               990.00
1 - - TORQUE CONVERTER                                                        349.99
1 - - CREDIT - E. D. S.                                                        -59.95

AUTHORIZATION FROM: LA  PHONE: _____  DATE: 2/18/2011  TIME: 16:08:41  BY: EMM  VERIFICATION: L
RECONDITIONED SERVICE  $1582.37   /   HARD PARTS & OTHER COMPONENTS  $996.99   /   TORQUE CONVERTER  $349.99

1   I HAVE BEEN OFFERED A 36 MONTH/36,000 MILE EXTENDED WARRANTY ($$27.28) AND CHOSEN TO DECLINE ____(INITIALS)
    I HAVE BEEN OFFERED A LIFETIME EXTENDED WARRANTY ($1054.57) AND CHOSEN TO DECLINE ____(INITIALS)

SP  SEPARATE WARRANTY TERMS & CONDITIONS APPLY TO EACH SERVICE.  ASK THIS INDEPENDENTLY OWNED & OPERATED
    AAMCO CENTER FOR A COPY OF THE WARRANTY TERMS THAT APPLY TO THE FOLLOWING SERVICE(S) AT THIS CENTER ONLY

9                                                                              59.95

    1 RADIATOR                                                                289.00
    1.5 LABOR                                                                 127.50
    1 TRANS COOLER                                                            200.00
    1 ANTIFREEZE                                                               20.00

    AUTHORIZATION FROM: LA  PHONE: _____  DATE: 2/18/11  TIME: 16:3  BY: EMM  VERIFICATION: LA

PAGE 1 OF 2

NO.117460

AAMCO FOCUS

EMMANUEL   A/C MATOS          LAURO              2/17/2011

84 HARRISSON PL        PERTH AMBOY    NJ  08861    128331   RE5R05A

20 NISSAN    PATHFINDER   RED    5N1AR18W65C783318         SXG95X

                                                    4.0L        201/994-9413

# 18824
**Isi, Llc**
209 New Brunswick Ave
Perth Amboy, NJ 08861
732-324-1777

This Page Blank
Intentionally

PARTS SHOWN AS EXCHANGE ARE NOT RETURNABLE

| TRANSMISSION | | | SERVICE PLUS | | |
|---|---|---|---|---|---|
| PARTS: 1,951.85 | LABOR: 977.50 | SUBTOTAL: 2,929.35 | PARTS: 509.00 | LABOR: 127.50 | SUBTOTAL: 636.50 |

TOTAL LABOR         1,105.00
TOTAL PARTS         2,460.85
SERVICE AGREEMENT
SUBTOTAL            3,565.85
TAX                  249.62
TOTAL              3,815.47

| CERTIFICATION | COMPLETION CERTIFICATE |
|---|---|
| This certifies that the automotive components described above have been properly repaired and restored to sound working condition. | I acknowledge receipt of the vehicle and a copy of this Repair Order. |
| _____ Authorized Signature | _____ Authorized Signature     _____ Delivery Date |

Appendix XII-B1



# CIVIL CASE INFORMATION STATEMENT
## (CIS)

Use for initial Law Division
Civil Part pleadings (not motions) under *Rule* 4:5-1
**Pleading will be rejected for filing, under *Rule* 1:5-6(c),
if information above the black bar is not completed
or attorney's signature is not affixed**

| FOR USE BY CLERK'S OFFICE ONLY | |
|---|---|
| PAYMENT TYPE: ☐CK ☐CG ☐CA | |
| CHG/CK NO. | |
| AMOUNT: | |
| OVERPAYMENT: | |
| BATCH NUMBER: | |

| ATTORNEY / PRO SE NAME <br> Michael R. Speck, Esq. | TELEPHONE NUMBER <br> (732) 596-1999 | COUNTY OF VENUE <br> Middlesex |
|---|---|---|

| FIRM NAME (if applicable) <br> Burns & Speck | DOCKET NUMBER (when available) <br> L-5090-11 |
|---|---|

| OFFICE ADDRESS <br> 120 Wood Avenue South <br> Suite 609 <br> Iselin, NJ 08830 | DOCUMENT TYPE <br> Verified Complaint |
|---|---|
| | JURY DEMAND  ☐ YES  ■ NO |

| NAME OF PARTY (e.g., John Doe, Plaintiff) <br> Emmanuel Otiogiakhi, Plaintiff | CAPTION <br> Emmanuel Otiogiakhi v. Aamco Transmissions, Inc. |
|---|---|

| CASE TYPE NUMBER (See reverse side for listing) <br> 618 | IS THIS A PROFESSIONAL MALPRACTICE CASE?  ☐ YES  ■ NO |
|---|---|
| | IF YOU HAVE CHECKED "YES," SEE *N.J.S.A.* 2A:53 A -27 AND APPLICABLE CASE LAW REGARDING YOUR OBLIGATION TO FILE AN AFFIDAVIT OF MERIT. |

| RELATED CASES PENDING? <br> ☐ Yes  ■ No | IF YES, LIST DOCKET NUMBERS |
|---|---|

| DO YOU ANTICIPATE ADDING ANY PARTIES <br> (arising out of same transaction or occurrence)? <br> ☐ Yes  ■ No | NAME OF DEFENDANT'S PRIMARY INSURANCE COMPANY (if known)  ☐ NONE  ■ UNKNOWN |
|---|---|

**THE INFORMATION PROVIDED ON THIS FORM CANNOT BE INTRODUCED INTO EVIDENCE.**

CASE CHARACTERISTICS FOR PURPOSES OF DETERMINING IF CASE IS APPROPRIATE FOR MEDIATION

| DO PARTIES HAVE A CURRENT, PAST OR RECURRENT RELATIONSHIP? <br> ■ YES  ☐ NO | IF YES, IS THAT RELATIONSHIP: <br> ☐ EMPLOYER/EMPLOYEE <br> ☐ FAMILIAL | ☐ FRIEND/NEIGHBOR <br> ■ BUSINESS | ☐ OTHER (explain) |
|---|---|---|---|

| DOES THE STATUTE GOVERNING THIS CASE PROVIDE FOR PAYMENT OF FEES BY THE LOSING PARTY?  ☐ YES  ■ No |
|---|

USE THIS SPACE TO ALERT THE COURT TO ANY SPECIAL CASE CHARACTERISTICS THAT MAY WARRANT INDIVIDUAL MANAGEMENT OR
ACCELERATED DISPOSITION

| ♿ | DO YOU OR YOUR CLIENT NEED ANY DISABILITY ACCOMMODATIONS? <br> ☐ YES  ■ No | IF YES, PLEASE IDENTIFY THE REQUESTED ACCOMMODATION |
|---|---|---|
| | WILL AN INTERPRETER BE NEEDED? <br> ☐ YES  ■ No | IF YES, FOR WHAT LANGUAGE? |

**I certify that confidential personal identifiers have been redacted from documents now submitted to the court, and will be
redacted from all documents submitted in the future in accordance with *Rule* 1:38-7(b).**

ATTORNEY SIGNATURE:  *Michael R. Speck /11*

**Side 2**

# CIVIL CASE INFORMATION STATEMENT
## (CIS)
Use for initial pleadings (not motions) under *Rule* 4:5-1

**CASE TYPES** (Choose one and enter number of case type in appropriate space on the reverse side.)

### Track I - 150 days' discovery
- 151   NAME CHANGE
- 175   FORFEITURE
- 302   TENANCY
- 399   REAL PROPERTY (other than Tenancy, Contract, Condemnation, Complex Commercial or Construction)
- 502   BOOK ACCOUNT (debt collection matters only)
- 505   OTHER INSURANCE CLAIM (including declaratory judgment actions)
- 506   PIP COVERAGE
- 510   UM or UIM CLAIM (coverage issues only)
- 511   ACTION ON NEGOTIABLE INSTRUMENT
- 512   LEMON LAW
- 801   SUMMARY ACTION
- 802   OPEN PUBLIC RECORDS ACT (summary action)
- 999   OTHER (briefly describe nature of action)

### Track II - 300 days' discovery
- 305   CONSTRUCTION
- 509   EMPLOYMENT (other than CEPA or LAD)
- 599   CONTRACT/COMMERCIAL TRANSACTION
- 603N  AUTO NEGLIGENCE – PERSONAL INJURY (non-verbal threshold)
- 603Y  AUTO NEGLIGENCE – PERSONAL INJURY (verbal threshold)
- 605   PERSONAL INJURY
- 610   AUTO NEGLIGENCE – PROPERTY DAMAGE
- 621   UM or UIM CLAIM (includes bodily injury)
- 699   TORT – OTHER

### Track III - 450 days' discovery
- 005   CIVIL RIGHTS
- 301   CONDEMNATION
- 602   ASSAULT AND BATTERY
- 604   MEDICAL MALPRACTICE
- 606   PRODUCT LIABILITY
- 607   PROFESSIONAL MALPRACTICE
- 608   TOXIC TORT
- 609   DEFAMATION
- 616   WHISTLEBLOWER / CONSCIENTIOUS EMPLOYEE PROTECTION ACT (CEPA) CASES
- 617   INVERSE CONDEMNATION
- 618   LAW AGAINST DISCRIMINATION (LAD) CASES

### Track IV - Active Case Management by Individual Judge / 450 days' discovery
- 156   ENVIRONMENTAL/ENVIRONMENTAL COVERAGE LITIGATION
- 303   MT. LAUREL
- 508   COMPLEX COMMERCIAL
- 513   COMPLEX CONSTRUCTION
- 514   INSURANCE FRAUD
- 620   FALSE CLAIMS ACT
- 701   ACTIONS IN LIEU OF PREROGATIVE WRITS

### Centrally Managed Litigation (Track IV)
| | |
|---|---|
| 280   ZELNORM | 290   POMPTON LAKES ENVIRONMENTAL LITIGATION |
| 285   STRYKER TRIDENT HIP IMPLANTS | 291   PELVIC MESH/GYNECARE |
| 288   PRUDENTIAL TORT LITIGATION | 292   PELVIC MESH/BARD |
| 289   REGLAN | 293   DEPUY ASR HIP IMPLANT LITIGATION |

### Mass Tort (Track IV)
| | |
|---|---|
| 248   CIBA GEIGY | 281   BRISTOL-MYERS SQUIBB ENVIRONMENTAL |
| 266   HORMONE REPLACEMENT THERAPY (HRT) | 282   FOSAMAX |
| 271   ACCUTANE/ISOTRETINOIN | 284   NUVARING |
| 274   RISPERDAL/SEROQUEL/ZYPREXA | 286   LEVAQUIN |
| 278   ZOMETA/AREDIA | 287   YAZ/YASMIN/OCELLA |
| 279   GADOLINIUM | 601   ASBESTOS |

If you believe this case requires a track other than that provided above, please indicate the reason on Side 1,
in the space under "Case Characteristics.

**Please check off each applicable category**   ☐ **Putative Class Action**   ☐ **Title 59**

| Attorney(s) | Michael R. Speck, Esq |
|---|---|
| Office Address | Burns & Speck |
| | 120 Wood Avenue South, Suite 609 |
| Town, State, Zip Code | Iselin, NJ 08830 |
| Telephone Number | (732) 596-1999 |
| Attorney(s) for Plaintiff | Emmanuel Otoigiakhi |

Emmanuel Otoigiakhi

Plaintiff(s)

Vs.

Aamco Transmissions, Inc.

Defendant(s)

**Superior Court of
New Jersey**

Middlesex          COUNTY

Law                DIVISION

Docket No: L-005090-11

**CIVIL ACTION
SUMMONS**

From The State of New Jersey To The Defendant(s) Named Above:

The plaintiff, named above, has filed a lawsuit against you in the Superior Court of New Jersey. The complaint attached to this summons states the basis for this lawsuit. If you dispute this complaint, you or your attorney must file a written answer or motion and proof of service with the deputy clerk of the Superior Court in the county listed above within 35 days from the date you received this summons, not counting the date you received it. (The address of each deputy clerk of the Superior Court is provided.) If the complaint is one in foreclosure, then you must file your written answer or motion and proof of service with the Clerk of the Superior Court, Hughes Justice Complex, P.O. Box 971, Trenton, NJ 08625-0971. A filing fee payable to the Treasurer, State of New Jersey and a completed Case Information Statement (available from the deputy clerk of the Superior Court) must accompany your answer or motion when it is filed. You must also send a copy of your answer or motion to plaintiff's attorney whose name and address appear above, or to plaintiff, if no attorney is named above. A telephone call will not protect your rights; you must file and serve a written answer or motion (with fee of $135.00 and completed Case Information Statement) if you want the court to hear your defense.

If you do not file and serve a written answer or motion within 35 days, the court may enter a judgment against you for the relief plaintiff demands, plus interest and costs of suit. If judgment is entered against you, the Sheriff may seize your money, wages or property to pay all or part of the judgment.

If you cannot afford an attorney, you may call the Legal Services office in the county where you live or the Legal Services of New Jersey Statewide Hotline at 1-888-LSNJ-LAW (1-888-576-5529). A list of these offices is provided. If you do not have an attorney and are not eligible for free legal assistance, you may obtain a referral to an attorney by calling one of the Lawyer Referral Services. A list of these numbers is also provided.

Jennifer M. Perez,
Acting Clerk of the Superior Court

DATED:      07/20/2011

Name of Defendant to Be Served:      Aamco Transmissions, Inc.

Address of Defendant to Be Served:   c/o Robert C. Brady, Esq., Gibbons P.C., One Gateway Ctr., Newark, NJ

NOTE: The Case Information Statement is available at www.njcourts.com.

Revised 09/01/2010, CN 10792-English (Appendix XII-A)                page 1 of 4

## Directory of Superior Court Deputy Clerk's Offices
## County Lawyer Referral and Legal Services Offices

**ATLANTIC COUNTY:**
Deputy Clerk of the Superior Court
Civil Division, Direct Filing
1201 Bacharach Blvd., First Fl.
Atlantic City, NJ 08401

LAWYER REFERRAL
(609) 345-3444
LEGAL SERVICES
(609) 348-4200

**BERGEN COUNTY:**
Deputy Clerk of the Superior Court
Civil Division, Room 115
Justice Center, 10 Main St.
Hackensack, NJ 07601

LAWYER REFERRAL
(201) 488-0044
LEGAL SERVICES
(201) 487-2166

**BURLINGTON COUNTY:**
Deputy Clerk of the Superior Court
Central Processing Office
Attn: Judicial Intake
First Fl., Courts Facility
49 Rancocas Rd.
Mt. Holly, NJ 08060

LAWYER REFERRAL
(609) 261-4862
LEGAL SERVICES
(800) 496-4570

**CAMDEN COUNTY:**
Deputy Clerk of the Superior Court
Civil Processing Office
Hall of Justice
1st Fl.,  Suite 150
101 South 5th Street
Camden, NJ 08103

LAWYER REFERRAL
(856) 964-4520
LEGAL SERVICES
(856) 964-2010

**CAPE MAY COUNTY:**
Deputy Clerk of the Superior Court
9 N. Main Street
Cape May Court House, NJ 08210

LAWYER REFERRAL
(609) 463-0313
LEGAL SERVICES
(609) 465-3001

**CUMBERLAND COUNTY:**
Deputy Clerk of the Superior Court
Civil Case Management Office
60 West Broad Street
P.O. Box 10
Bridgeton, NJ 08302

LAWYER REFERRAL
(856) 696-5550
LEGAL SERVICES
(856) 691-0494

**ESSEX COUNTY:**
Deputy Clerk of the Superior Court
Civil Customer Service
Hall of Records,  Room 201
465 Dr. Martin Luther King Jr. Blvd.
Newark, NJ 07102

LAWYER REFERRAL
(973) 622-6204
LEGAL SERVICES
(973) 624-4500

**GLOUCESTER COUNTY:**
Deputy Clerk of the Superior Court
Civil Case Management Office
Attn: Intake
First Fl., Court House
1 North Broad Street
Woodbury, NJ 08096

LAWYER REFERRAL
(856) 848-4589
LEGAL SERVICES
(856) 848-5360

**HUDSON COUNTY:**
Deputy Clerk of the Superior Court
Superior Court, Civil Records Dept.
Brennan Court House--1st Floor
583 Newark Ave.
Jersey City, NJ 07306

LAWYER REFERRAL
(201) 798-2727
LEGAL SERVICES
(201) 792-6363

**HUNTERDON COUNTY:**
Deputy Clerk of the Superior Court
Civil Division
65 Park Avenue
Flemington, NJ 08822

LAWYER REFERRAL
(908) 735-2611
LEGAL SERVICES
(908) 782-7979

**MERCER COUNTY:**
Deputy Clerk of the Superior Court
Local Filing Office, Courthouse
175 S. Broad Street, P.O. Box 8068
Trenton, NJ 08650

LAWYER REFERRAL
(609) 585-6200
LEGAL SERVICES
(609) 695-6249

**MIDDLESEX COUNTY:**
Deputy Clerk of the Superior Court,
Middlesex Vicinage
2nd Floor - Tower
56 Paterson Street, P.O. Box 2633
New Brunswick, NJ 08903-2633

LAWYER REFERRAL
(732) 828-0053
LEGAL SERVICES
(732) 249-7600

**MONMOUTH COUNTY:**
Deputy Clerk of the Superior Court
Court House
P.O. Box 1269
Freehold, NJ 07728-1269

LAWYER REFERRAL
(732) 431-5544
LEGAL SERVICES
(732) 866-0020

**MORRIS COUNTY:**
Morris County Courthouse
Civil Division
Washington and Court Streets
P. O. Box 910
Morristown, NJ 07963-0910

LAWYER REFERRAL
(973) 267-5882
LEGAL SERVICES
(973) 285-6911

**OCEAN COUNTY:**
Deputy Clerk of the Superior Court
118 Washington Street,  Room 121
P.O. Box 2191
Toms River, NJ 08754-2191

LAWYER REFERRAL
(732) 240-3666
LEGAL SERVICES
(732) 341-2727

**PASSAIC COUNTY:**
Deputy Clerk of the Superior Court
Civil Division
Court House
77 Hamilton Street
Paterson, NJ 07505

LAWYER REFERRAL
(973) 278-9223
LEGAL SERVICES
(973) 523-2900

**SALEM COUNTY:**
Deputy Clerk of the Superior Court
Attn:  Civil Case Management Office
92 Market Street
Salem, NJ 08079

LAWYER REFERRAL
(856) 935-5629
LEGAL SERVICES
(856) 451-0003

**SOMERSET COUNTY:**
Deputy Clerk of the Superior Court
Civil Division
P.O. Box 3000
40 North Bridge Street
Somerville, N.J. 08876

LAWYER REFERRAL
(908) 685-2323
LEGAL SERVICES
(908) 231-0840

**SUSSEX COUNTY:**
Deputy Clerk of the Superior Court
Sussex County Judicial Center
43-47 High Street
Newton, NJ 07860

LAWYER REFERRAL
(973) 267-5882
LEGAL SERVICES
(973) 383-7400

**UNION COUNTY:**
Deputy Clerk of the Superior Court
1st Fl., Court House
2 Broad Street
Elizabeth, NJ 07207-6073

LAWYER REFERRAL
(908) 353-4715
LEGAL SERVICES
(908) 354-4340

**WARREN COUNTY:**
Deputy Clerk of the Superior Court
Civil Division Office
Court House
413 Second Street
Belvidere, NJ 07823-1500

LAWYER REFERRAL
(973) 267-5882
LEGAL SERVICES
(908) 475-2010

MIDDLESEX VICINAGE CIVIL DIVISION
56 PATERSON STREET
NEW BRUNSWICK    NJ 08903-2633

                                    TRACK ASSIGNMENT NOTICE

COURT TELEPHONE NO. (732) 519-3728
COURT HOURS

                    DATE:    JULY 14, 2011
                    RE:      OTIOGIAKHI EMMANUEL VS AAMCO TRANSMISSIONS INC
                    DOCKET: MID L -005090 11

     THE ABOVE CASE HAS BEEN ASSIGNED TO:  TRACK 3.

     DISCOVERY IS    450 DAYS AND RUNS FROM THE FIRST ANSWER OR 90 DAYS
FROM SERVICE ON THE FIRST DEFENDANT, WHICHEVER COMES FIRST.

     THE PRETRIAL JUDGE ASSIGNED IS:  HON VINCENT LEBLON

      IF YOU HAVE ANY QUESTIONS, CONTACT TEAM      003
AT:  (732) 519-3745 EXT 3745.

      IF YOU BELIEVE THAT THE TRACK IS INAPPROPRIATE YOU MUST FILE A
 CERTIFICATION OF GOOD CAUSE WITHIN 30 DAYS OF THE FILING OF YOUR PLEADING.
      PLAINTIFF MUST SERVE COPIES OF THIS FORM ON ALL OTHER PARTIES IN ACCORDANCE
WITH  R.4:5A-2.
                    ATTENTION:

                              ATT: MICHAEL R. SPECK
                              BURNS & SPECK
                              120 WOOD AVE SOUTH  STE 609
                              ISELIN          NJ 08830-2709

JUMSHA1