# EXHIBIT A

# AAMCO TRANSMISSIONS, INC.
## Franchise Agreement

This Agreement has been entered into this 6th day of November, 2006 at Horsham, Pennsylvania between AAMCO Transmissions, Inc., a Pennsylvania corporation having its principal office in Horsham, Pennsylvania, referred to as "AAMCO", and

Emmanuel Otoigiakhi

referred to as "Franchisee".

AAMCO has developed methods, techniques and systems for the operation of centers devoted to transmission repair. AAMCO has built up substantial business and valuable good will by the establishment of such centers throughout the United States and in Canada.

AAMCO makes its experience and know-how available to all its franchisees in order to assist them in opening and operating a successful AAMCO center. AAMCO makes this and other means at its disposal available to aid in the management and merchandising of Franchisee's center.

Franchisee acknowledges that he does and will have full managerial responsibility and authority for the operation of his center; he recognizes that his success, and that of all AAMCO centers, depends on adherence to the highest standards of business practice and on the maintenance of prompt, efficient, courteous and satisfactory service to the public.

Franchisee acknowledges that he has conducted a thorough and independent investigation and based on that investigation, Franchisee desires to enter into the business of operating an AAMCO center, and to develop the market to its full potential in his locality.

The parties enter into this Agreement in recognition of these considerations and of the mutual agreements expressed herein.

1.1   **Franchise.** This Agreement is for the operation by Franchisee of one AAMCO transmission repair center. The location is specified at section 1.2 of this Agreement. This Agreement allows Franchisee to use the trade name and trademark "AAMCO" only upon fulfillment of the following conditions:

(a)   Franchisee must successfully complete AAMCO's training course.

(b)   Franchisee must equip and inventory the center/location according to AAMCO's standards before opening; this requirement includes the appearance of the center, all to be done in accordance with sections 8.1 and 9.2 of this Agreement.

(c)   Franchisee must secure insurance as required by section 12.1 of this Agreement.

1.2   **Location.** The center shall be located as follows:

209 New Brunswick Avenue
Perth Amboy, NJ  08861

During the term of this Agreement, Franchisee shall operate his center at no other address. Franchisee shall not move or relocate his center without the prior written consent of AAMCO.

1.3   **Market.** AAMCO expressly reserves the right to grant additional franchises in the same county or MSA/PMSA. The number of centers will be based upon then current motor vehicle registrations and the marketing program of AAMCO; the number of franchised centers shall be limited to a maximum of one center for each 100,000 motor vehicle registrations.

2.1   **Trademark.** Franchisee acknowledges that AAMCO is the owner of valid trademarks and service marks using the mark "AAMCO". Franchisee expressly agrees not to register the word "AAMCO" as part of the company name of his business entity, corporation, partnership or limited liability company.

3.1   **Franchise Fee.** Starting with the opening of his center, Franchisee agrees to pay a weekly franchise fee to AAMCO of five (5)% of the gross receipts of the preceding week. "Gross receipts" shall mean all forms of consideration received for any services or parts in the center, including supplies and accessories, regardless of whether for manual or automatic transmissions, whether from wholesale, fleet, commercial or retail business.

4.1   **Business Reports.** Starting with the opening of his center, Franchisee agrees to mail to AAMCO an accurate report of gross receipts received during the preceding week, along with copies of the repair orders for all work completed during the preceding week and such other information or reports as AAMCO may request. These should accompany a check or money order for the amount required under section 3.1, and should be mailed so as to be received no later than Tuesday of each week. Franchisee acknowledges that failure to furnish complete and accurate reports of business on a timely basis deprives AAMCO of the means to control and supervise the use of its marks, or to communicate with members of the motoring public who are customers of AAMCO's franchisees. In addition to an accurate report of gross receipts on the forms prescribed by AAMCO, business reports shall also consist of all home office copies of repair order forms used in the center during the reporting period which shall be attached to the prescribed form.

5.1  **General Policies.**  Franchisee agrees that for the term of this Agreement he shall give his personal loyalties to the goals of the AAMCO chain in order to enhance the growth of AAMCO's national identity, the reputation of AAMCO as a specialist in the transmission field, and the quality of repairs associated with the name AAMCO.

Franchisee agrees that, regarding the hiring of employees for his center, he will not initiate directly or indirectly any contact with any other person known to him to be employed by another AAMCO franchisee for the purpose of inducing such employee to work in Franchisee's center; provided, however, nothing shall prevent Franchisee from advertising generally for employees to fill vacant positions. Franchisee agrees to hire only those employees who, upon appropriate screening, demonstrate themselves to be honest and dependable. Franchisee agrees to direct any of his employees, including any customer service manager employed in his AAMCO center, to attend meetings and to meet training requirements as AAMCO may determine.

5.2  **Performance Standards.**  Except as otherwise approved in writing by AAMCO, which approval shall not be unreasonably withheld, Franchisee agrees that during the period of this Agreement he will devote his full time, energy and effort to the operation of his center, and agrees not to engage in any other business either at the location of his center or at any other location.

Franchisee agrees that he will comply with all of the policies and procedures which AAMCO establishes from time to time including those set forth in AAMCO's training manuals, as modified and/or updated from time-to-time as determined by AAMCO in its sole discretion.

Franchisee acknowledges that AAMCO has the right to visit and enter the center at reasonable times, for the purpose of inspecting the center, its equipment and inventory, and to determine the nature and quality of the service rendered there, including the manner and method of the center's operation by Franchisee. Franchisee specifically agrees that neither his physical presence in the center nor his specific consent to the inspection shall be necessary.

Franchisee acknowledges that any customer complaints cause harm to the growth of AAMCO's national identity, reputation in the marketplace and association of its name with quality repairs. Franchisee agrees that any customer complaints generated by his center, including but not limited to those in which customers allege abuse, fraud, deceptive or unfair trade practices, cause such harm individually and in the aggregate. Franchisee agrees to operate his center in such manner so as to avoid customer complaints. Franchisee agrees that he will deal fairly and honestly with AAMCO and with each customer, and that he will render prompt, workmanlike, courteous and willing service in his center. Franchisee agrees to handle all customer complaints and adjustments in the same fashion whether they arise from his center or from any other AAMCO center. Franchisee specifically agrees to conduct his center in a manner so that it will not detract from nor bring into disrepute the trademark or name "AAMCO".

All personnel whom Franchisee employs shall conform to the experience or skill standards which AAMCO may prescribe. Franchisee further agrees to attend such meetings and training sessions as AAMCO may require, and to direct any of his employees to attend such meetings and training sessions, including directing the center's technicians to obtain technical certification, as AAMCO may require, pursuant to AAMCO's technical certification program or a comparable technical certification program which complies with AAMCO's specifications.

In his operation of his center, Franchisee agrees to use only such forms as AAMCO specifically prescribes or authorizes including, without limitation, AAMCO diagnostic forms, AAMCO repair order, AAMCO warranty cards and AAMCO reporting forms.

Franchisee agrees to offer to customers of his center all services, products and/or warranties which AAMCO may prescribe. Franchisee acknowledges that AAMCO retains the exclusive right to make modifications from time-to-time to such services, products and/or warranties.

5.3  **Appearance Standards.**  Franchisee agrees to keep his center's premises in a clean, wholesome, attractive and safe condition, and to keep it in good maintenance and repair. Franchisee agrees to maintain the interior and exterior painting and décor, and furnishings of his center in such a manner and form as may be required by AAMCO. Franchisee agrees to purchase and display in or about his center only the signs, logos or other materials which are required or approved by AAMCO.

5.4  **Maintenance Standards.**  Franchisee recognizes that it is in the mutual interests of both parties to this Agreement that the AAMCO center he operates be equipped and maintained in accordance with the highest standards of quality, and Franchisee specifically agrees to follow the directions of AAMCO in this regard, subject to the observance of any applicable laws.

5.5  **Non-Disclosure.**  Franchisee agrees that he will not furnish any information concerning AAMCO's service program, training, diagnostic and technical materials, operations techniques, advertising or promotion ideas, or concerning the financial status of AAMCO to anyone; provided, that nothing in this section shall prevent the use of these materials or of this information by employees in Franchisee's AAMCO center.

Franchisee acknowledges that AAMCO is the sole owner of all rights to the AAMCO service program, and of all books, manuals or documents provided to Franchisee for the operation of his center.

Franchisee recognizes that AAMCO has expended substantial funds and effort in the development of its service program, training, diagnostic and technical materials, and operating techniques, and he specifically agrees not to engage in competition with AAMCO using any training or policy manuals, catalogues, lists, forms or aids provided by AAMCO.

6.1  **Obligations of AAMCO.**  AAMCO agrees that before AAMCO grants any additional franchise in the county or MSA/PMSA in which Franchisee is located, it will conduct a marketing study and will receive and consider input and comments from Franchisee.

AAMCO agrees to assist Franchisee by providing Technical Consulting services for use by all franchisees. These services shall include Technical Hot Line Department, Publication of Technical Advisory bulletins, Publication of Technical Bench tips, Publication of Technical Bench notes, Publication of Technical columns in the Twin Post, Production of video training films, the availability of the Rebuilders Academy and additional in-house only training seminars. AAMCO further agrees that the ratio of the Technical Department's expenditures to franchise fee revenue for the provision of said services will be the minimum ratio maintained for the provision of these services. AAMCO further agrees to assist Franchisee by providing limited operations consulting services to all franchisees.

AAMCO agrees that it will assist in the design of advertising promoting the business of AAMCO franchisees and the services they sell. AAMCO agrees to make available to Franchisee its experience, know-how, guidance, and counseling with respect to national, regional, and local advertising, and combinations thereof, including the selection of particular media and advertising content, as well as the choice of agencies for the purchase and use of these advertising techniques.

AAMCO agrees to sell to Franchisee during this Agreement the quantities of those AAMCO products mentioned in the Appendix A of this Agreement, as Franchisee wishes from time to time to order subject to AAMCO's standard credit approval; provided, however, that AAMCO may at any time in its own discretion discontinue the sale of any product or products, if in AAMCO's opinion it is unprofitable, not feasible, or otherwise undesirable to continue such products.

7.1 **National Creative Advertising.** Franchisee agrees to pay his proportionate share of "National Creative Advertising" in accordance with the formulas which will be provided by the National Creative Committee and administered by AAMCO. Payment for National Creative Advertising shall be made to AAMCO in accordance with its instructions.

7.2 **Local Advertising.** Franchisee acknowledges and agrees that all advertising must be approved by AAMCO in advance of its use and Franchisee agrees not to use any advertising unless and until its content is approved in writing by AAMCO.

Franchisee specifically agrees to participate in and pay for the national Yellow Pages program of AAMCO and agrees not to place Yellow Pages advertising in any other manner.

Franchisee acknowledges that, in addition to Yellow Pages advertising, it is mandatory to employ advertising at the local level and to participate in and pay for advertising programs and promotional activities at the local level. Franchisee specifically agrees to establish and adhere to a local advertising budget, subject to AAMCO's approval.

Franchisee further agrees to share local advertising expenses with other franchisees in the Designated Market Area (DMA) as defined by A.C. Nielsen Company which may change from time-to-time. If Franchisee's AAMCO center is not part of a DMA or is the only AAMCO center in a DMA, Franchisee agrees to share local advertising with other franchisees in related or adjoining DMAs if coverage from local advertising in the related or adjoining DMAs permeates within Franchisee's market or if directed by AAMCO.

Franchisee acknowledges that AAMCO has the right to approve an advertising agency, which approval shall not be unreasonably withheld, and Franchisee agrees to place advertising only with an agency approved by AAMCO; Franchisee agrees to pay promptly fees which become due to any such agency.

If Franchisee fails to pay promptly an amount due his advertising agency or his local advertising group or pool, then either AAMCO, or other AAMCO franchisees in the local advertising group or pool of which Franchisee is a member, or the local advertising group or pool shall be entitled to recover the amount due from Franchisee. Franchisee acknowledges that all local advertising benefits him and the other franchisees in the local advertising group or pool. Franchisee acknowledges that despite failure to contribute to his local AAMCO advertising group or pool, local advertising expenditures by such group or pool confer substantial benefits on him, and further acknowledges his responsibility for payment therefor.

AAMCO specifically reserves the right to have or allow the local AAMCO advertising group or pool seek enforcement of this obligation.

7.3 **National Advertising.** Franchisee agrees to participate in advertising programs at the national level if established or directed by AAMCO. Franchisee agrees to pay his proportionate share of "National Advertising" and publicity in accordance with reasonable formulas provided by AAMCO. Payment for National Advertising billings and costs shall be made in accordance with AAMCO's instructions.

8.1 **Signs.** Franchisee agrees to erect in and outside of his center only such signs as are approved by AAMCO. No other signs regardless of content, size or construction may be erected or used.

9.1 **Standards and Specifications for Equipment and Inventory.** AAMCO shall fix and determine all standards, specifications and requirements for the equipment, including diagnostic and technical equipment, supplies, parts, and assembly sets used by Franchisee in his AAMCO center. Franchisee may purchase these items from any source, as long as they conform to these standards and specifications. AAMCO agrees to furnish these standards and specifications to Franchisee, or to a vendor or manufacturer, without charge.

Franchisee acknowledges that AAMCO may change such standards, specifications and requirements from time-to-time, and agrees to make any additional purchases of equipment and/or supplies needed to comply with such updated requirements.

9.2 **Equipment, Supplies and Inventory.** If Franchisee requests to purchase equipment, supplies and inventory from or through AAMCO, AAMCO agrees to supply them at the price then in effect; provided, that if prior to delivery the price to AAMCO shall increase, then AAMCO may proportionately increase the price to Franchisee. If any item is not available at the time of request, then AAMCO may substitute merchandise of a similar quantity, and adjust the price, after notice to Franchisee.

9.3 **Operating Inventory.** Franchisee acknowledges that the consumer acceptance, quality, and standardization of parts and assembly sets sold by AAMCO centers, and agrees that the use exclusively of parts and assembly sets which comply with AAMCO's specifications is an essential condition of the performance of this Agreement. Franchisee agrees to purchase and sell parts and assembly sets which comply with AAMCO's specifications. At the request of AAMCO, Franchisee will submit a certification that he uses parts and assembly sets which comply with AAMCO's specifications. Further, Franchisee agrees that at the request of AAMCO he will submit information about the purchase of his parts and assembly sets, including without limitation, invoices, lists of vendors and manufacturers from whom Franchisee purchases, and actual parts and assembly sets for testing and examination. AAMCO in its discretion shall determine what information is necessary in order to perform such testing or examination.

Franchisee acknowledges and agrees that the training of his technical employees is essential to the successful operation of his Center. Franchisee, therefore, agrees to participate in and pay for the AAMCO Tech Video Library Program according to the terms and conditions as determined by AAMCO, or to participate in a comparable technical training program which complies with AAMCO's specifications. Franchisee further agrees that at the request of AAMCO he will submit information about his participation in a comparable technical training program, including without limitation, invoices, lists of vendors from which Franchisee purchases such technical training programs and actual copies of such training. AAMCO's Technical Services Department shall determine if any such technical training program is comparable.

9.4 **Product Warranties.** There are no warranties, express or implied, made by AAMCO under this Agreement for the products purchased by Franchisee, including the implied warranty of MERCHANTABILITY.

10.1 **Warranty Program.** Franchisee agrees to honor each warranty presented by an AAMCO customer in accordance with its terms, regardless of whether the service was rendered at his center or at some other authorized AAMCO center. Franchisee agrees to comply at all times with AAMCO's policies concerning the AAMCO warranty program.

10.2 **Warranty Payment Rates.** Franchisee shall be entitled under this Agreement to receive from another AAMCO center the costs of supplies, accessories and parts which Franchisee uses in honoring the warranty, plus a sum of money based on either an hourly rate for labor, or a flat fee, depending on the extent of repairs required. The payment rate used in making payments under this section will be determined by AAMCO and published to all franchisees.

Franchisee agrees to pay within ten (10) business days to any other AAMCO center the amount due to such other center for the honoring of a warranty issued to a customer of Franchisee. If Franchisee fails to pay promptly any amount due under this section, AAMCO shall be entitled to recover such amount from Franchisee for the benefit of the other AAMCO center, or to credit such other center for money which may be due and owing to Franchisee for such payments.

10.3 **Prohibition Against Other Warranties.** Franchisee agrees to make no warranties or guarantees other than those contained in the printed forms of warranty issued or approved by AAMCO, which warranty is made by Franchisee to the customer and not by AAMCO either to any customer or to Franchisee. There are no warranties expressed or implied made by AAMCO to the customer in connection with any product or service furnished by AAMCO under this Agreement.

11.1 **Accounting Forms.** Franchisee agrees to keep true and correct books and records according to directions of AAMCO, and to employ such record keeping systems as AAMCO may request. Franchisee agrees to promptly deliver to AAMCO records, reports and copies of tax returns which AAMCO may request. Franchisee agrees to use exclusively numerically certified work or repair orders provided by AAMCO. Franchisee agrees to furnish to AAMCO bank deposit slips, verification of cash receipts and any other documents or information requested by AAMCO. Franchisee agrees to keep true and correct books and records according to directions of AAMCO, and to employ such recordkeeping systems as AAMCO may request. Franchisee agrees to promptly deliver to AAMCO records, reports and copies of tax returns which AAMCO may request. Franchisee agrees to use exclusively numerically certified work or repair orders provided by AAMCO as part of standard auditing procedures. Franchisee further agrees to furnish to AAMCO bank deposit slips, verification of cash receipts and any other documents or information requested by AAMCO.

11.2 **Inspection of Records.** AAMCO's representative may enter Franchisee's center to inspect books and records to verify the accuracy of Franchisee's reports. Franchisee agrees to keep its books and records available in the center at all times, or to make them available there upon request by AAMCO.

11.3 **Damages.** If at any time Franchisee's actual gross receipts are greater than Franchisee's reported receipts by two percent (2%) or more, then Franchisee shall pay AAMCO immediately any deficiency in franchise fees together with interest pursuant to section 14.1, calculated from when such fees should have been paid. In addition, Franchisee agrees to pay AAMCO for any and all expenses connected with AAMCO's examination of Franchisee's reporting practices, including but not limited to reasonable administrative, accounting and attorneys' fees and the costs incurred in connection with the investigation of Franchisee's recordkeeping and obtaining inspection of his records.

Franchisee further acknowledges and agrees that the actual damages sustained by AAMCO in the event of underreporting of gross receipts are difficult to ascertain and that in addition to the fees, interest and expenses stated above, Franchisee shall also pay AAMCO liquidated damages in an amount equal to the franchise fees due plus interest calculated pursuant to section 14.1. These liquidated damages shall be in addition to any other remedies AAMCO may have.

11.4 **Financial Statements.** Franchisee agrees to submit to AAMCO within 60 days after the end of each year a Profit and Loss Statement for the year and a Balance Sheet as of the last day of the year. In addition, within 60 days after the end of each semi-annual period, Franchisee agrees to submit to AAMCO a Profit and Loss Statement for the previous 6-months and a Balance Sheet as of the last day of the 6-month period. All statements required by this paragraph may be unaudited but must be prepared by an accountant and, unless otherwise specified by AAMCO, shall be in accordance with generally accepted accounting principles. All references in this section to "year" of Franchisee shall mean either calendar or fiscal year, as adopted by Franchisee.

AT-04-6(1) Resale                                                                                          4

12.1  **Insurance.**  Franchisee agrees to purchase and maintain at his own expense insurance against all types of public liability, as directed by AAMCO, including but not limited to garage liability, garage keeper's legal liability, garage keeper's direct primary coverage and workers' compensation insurance, including coverage for AAMCO as an additional named insured.  Franchisee acknowledges that AAMCO reserves the right to increase the amounts of insurance coverage required by this section and agrees to comply with any such increased amounts after notice from AAMCO; AAMCO agrees to act reasonably in determining such increased amount.  In no event shall the amounts of coverage be less than $1,000,000 per occurrence, bodily injury and property damage combined.  Franchisee shall furnish AAMCO with certificates of such insurance including the insurance upon AAMCO, along with satisfactory evidence that premiums have been paid.  Each certificate shall provide that the policy may not be cancelled as to AAMCO without thirty days' prior notice to AAMCO.  Franchisee shall pay AAMCO its costs and expenses, including reasonable attorneys' fees, incurred by AAMCO in connection with any proceedings arising out of this provision.

12.2  **Indemnity Agreement.**  Franchisee agrees by this Agreement to defend and to hold harmless and indemnify AAMCO from any and all claims, demands or suits of any kind, and to pay to AAMCO all expenses and liabilities which may be associated with such claims, demands or suits, which are based on or arise out of or relate in any way to the operation or the condition of Franchisee's center.  This Agreement to indemnify AAMCO shall be given effect whether the claim arises indirectly or directly out of the center's operation, Franchisee's conduct of his business there, the ownership or possession of real or personal property there or from or by any act of negligence, omission or willful conduct by Franchisee or by any of his employees, servants or agents.  The minimum amounts of insurance outlined in section 12.1 shall not be construed to limit liability under this section of the Agreement.

Franchisee also agrees by this Agreement to pay on behalf of AAMCO any and all fees, costs, or other expenses which AAMCO reasonably incurs as a result of any investigation or defense of any such claim, including reasonable attorneys' fees.

12.3  **Independent Contractor.**  Franchisee acknowledges that under the terms of this Agreement he is not an agent, employee, or servant of AAMCO for any purpose whatsoever.  Franchisee agrees that he shall not hold himself out as an agent, employee, or servant of AAMCO under any circumstances for any reason whatsoever.  Franchisee is an independent contractor and is not in any way authorized to make a contract, agreement or promise on behalf of AAMCO, or to create any implied obligation on behalf of AAMCO.  Franchisee specifically agrees that he shall not do so.

13.1  **Security Deposit.**  Franchisee acknowledges that he has deposited with AAMCO the sum of $5,000 as security for compliance with all the provisions of this Agreement.  This deposit shall be retained by AAMCO and AAMCO shall have the right to reimburse itself or others, including customers of Franchisee's center, from this account for any damages which may be sustained by AAMCO or others, as a result of failure by Franchisee to comply with any provision of this Agreement.  AAMCO has sole and absolute discretion in determining the amount of reimbursement from this account, and agrees to act reasonably in making such determinations.

Franchisee acknowledges that the creation and use of this account is a condition of the franchise and is intended to maintain a high level of customer satisfaction and to minimize or resolve customer complaints.  It is agreed that AAMCO may use the funds to cure any default by Franchisee under this Agreement and to defray expenses, damages or attorneys' fees of AAMCO or others, reasonably necessary to cure any such default, including refunds to customers of Franchisee as AAMCO may determine.  AAMCO may send written notice to Franchisee of defaults calling for action under these provisions to Franchisee's last known address.  Franchisee hereby authorizes AAMCO to apply the money in this account for the purposes specified in this provision without prior, actual notice to Franchisee that the money has been applied.

Franchisee agrees that should the amount on deposit with AAMCO become less than $5,000 because of any reason whatsoever, then Franchisee, upon notice from AAMCO, shall pay whatever amount is needed so that the amount on deposit equals $5,000.

AAMCO agrees to pay interest on this deposit at the rate of 3% less than prime rate as established by a leading bank as determined by AAMCO averaged over the preceding twelve months to a maximum of six percent (6%) per year, provided that Franchisee is, at all times, in full compliance with the provisions of this section.

14.1  **Defaults in Payment.**  Franchisee agrees to pay all invoices from AAMCO for merchandise or other items under this Agreement in strict accordance with the payment and credit terms applicable to them when they are issued.  Any such amount not so paid when due, as well as any amount due from Franchisee under any section of this Agreement, shall bear interest at the annual rate of eighteen percent (18%), or the legally permissible rate, whichever is less, from thirty (30) days after the due date until payment.  The payment of such interest will not be deemed to allow delay in the payment of those invoices or other invoices or amounts.  Franchisee agrees further to pay when due any bills or other amounts owed to third parties, especially under sections 7.1, 7.2 and 7.3 of this Agreement, or under any other purchasing arrangement in which AAMCO may be involved; but, AAMCO shall not by virtue of such an arrangement become liable to any such third party on the account of Franchisee.

In the event that Franchisee is in default in the payment of any franchise fee, invoice for parts, invoice for advertising, or for any other amount due to AAMCO under the terms of this Agreement, including an amount which may be due to an advertising association, pool, or agency under sections 7.1, 7.2 and 7.3 of this Agreement, then in any and all actions which may be brought for the amount in default, AAMCO or the party bringing such action shall be entitled to recover the amount in default, with any interest thereon at the rate set forth above, and costs of the action, together with reasonable attorneys' fees.  In the event that a local advertising group or pool becomes entitled to recover, by virtue of such an action pursuant to section 7.2 of this Agreement, then Franchisee acknowledges that such group or pool shall also be entitled to recover, in addition to any judgment, an amount equal to the costs and reasonable attorneys' fees therefor.  Franchisee specifically agrees that AAMCO may bring an action on behalf of National Creative Committee to collect amounts due pursuant to section 7.1.

AT-04-6(1) Resale               5

In the event that Franchisee fails to pay for National Creative Advertising and/or Yellow Pages advertising, then Franchisee acknowledges and agrees that AAMCO has the right (1) to direct any publisher of a Yellow Pages advertising directory to omit Franchisee's listing from such directory and (2) to withhold all television and radio tapes from Franchisee, until all sums owed plus interest and any costs of collection, including attorneys' fees, have been paid in full.

15.1   **Assignment.**  This Agreement is a personal obligation of Franchisee and his rights to the use of AAMCO's service marks and trademarks are not assignable nor transferable under any circumstances except in strict compliance with the provisions herein.

(a)   In the event of Franchisee's death, his rights shall pass to his heirs or next of kin on the condition that such heirs or next of kin must immediately attend and successfully complete AAMCO's training course as provided for in this Agreement. Such person or persons must attend the AAMCO Operator's Training Course by the third class offered after the date of the death of Franchisee. Failure to do so will result in the termination of all rights conferred under this Agreement.

(b)   If Franchisee, as an individual, desires to form a corporation, partnership or a limited liability company for the operation of the AAMCO center and to have rights under this Agreement, he may do so only upon the following terms and conditions:

(1)   Franchisee's name remains on the Agreement and the entity is added as a co-franchisee on the Agreement.

(2)   The entity is newly organized and its activities are confined exclusively to acting as an AAMCO franchisee under this Agreement.

(3)   Franchisee is the owner of the majority of the stock, partnership interests or membership units of the entity, is the principal executive officer of the entity and has full and complete authority to act for the entity. In the event of the death of Franchisee who is the majority shareholder, partner or member of such entity, then the provisions of section 15.1(a) above will apply, except that such heir or next of kin must hold a majority interest in the entity, be a principal executive officer of the entity and must have full and complete authority to act for the entity.

(4)   All money obligations of Franchisee under this Agreement must be satisfied.

(5)   The entity must sign an agreement with AAMCO assuming jointly and severally all obligations of Franchisee under this Agreement. It is expressly understood that the assumption of Franchisee's obligation by any entity does not limit Franchisee's personal obligations under this Agreement and Franchisee and the entity shall be jointly and severally liable.

(6)   The entity shall disclose in writing the names and addresses of all of its officers and directors, partners or members and, whenever there is a change in any such officer, director, partner or member, shall immediately notify AAMCO of such change. Franchisee acknowledges that AAMCO has the right to approve the officers, directors, partners and members, which approval shall not be unreasonably withheld, and agrees that any such individual not approved by AAMCO will be immediately removed from such position and shall not be permitted to have any involvement in the operation of the entity or the AAMCO center.

(c)   If Franchisee organizes or has organized a corporation, partnership or limited liability company in connection with the operation of the center, the capital stock, partnership interests or membership units shall not be sold, assigned, pledged, mortgaged or transferred without the prior written consent of AAMCO. There may be a sale of all of the capital stock, partnership interests or membership units of the entity subject to the same conditions listed in subparagraph (b) above to a purchaser, as though the person acquiring were a purchaser under section 15.2 of this Agreement. All ownership certificates shall have endorsed upon them the following:

The transfer of this stock (or membership unit) is subject to the terms and conditions of a Franchise Agreement dated **November 6, 2006**, between AAMCO Transmissions, Inc. and **Emmanuel Otoigiakhi**

(d)   Franchisee agrees that this Agreement may not be transferred by a corporation, partnership or limited liability company by transfer of stock, partnership interests, membership units or by any other means.

15.2   **Sale.**   If Franchisee desires to sell his AAMCO center, he may do so provided that the purchaser is first approved by AAMCO, and provided that the purchaser executes AAMCO's then current form of franchise agreement at the fee structure provided below. AAMCO agrees to approve such prospective purchaser if his credit ratings are satisfactory, he has good moral character and has a reputation and business qualifications satisfactory to AAMCO, and provided further that any and all financial obligations of Franchisee are fully paid and satisfied. The accounts which must be satisfied include sums owed for local, national or national creative advertising, Yellow Pages advertising, sums owed to any advertising agency, sums due AAMCO pursuant to the terms of this Agreement, including any amounts due because of a default of any provision of this Agreement, and any sums due other AAMCO dealers. Franchisee and other person or persons having control of the affairs of a corporate or other similar business entity franchisee shall execute a general release of all claims against AAMCO and a termination of franchise, and Franchisee shall pay AAMCO the sum of $2,000 for expenses in connection with the administration and approval of this sale. Ownership of Franchisee's AAMCO center may not be transferred until a purchaser has successfully completed any training course which may be provided for in the then current form of franchise agreement.

(a)   If Franchisee sells his AAMCO center without the aid or assistance of AAMCO then the purchaser must sign a current form of franchise agreement. The purchaser has the option of signing an agreement for only the balance of Franchisee's term at the franchise fee being paid by Franchisee; or, of signing an agreement for a fifteen (15) year term, the first portion of the term will be for the balance of Franchisee's term at the franchise fee being paid by Franchisee, and the second portion of the term will be for the remainder of the fifteen (15) year term at the franchise fee being charged by AAMCO for new franchises as of the time of the purchase.

(b) If Franchisee has listed his center with AAMCO or the purchaser has received a presentation from AAMCO's franchise sales department within the past 12 months, then the purchaser must sign a current form of franchise agreement for a fifteen (15) year term at the franchise fee being charged by AAMCO for new franchises as of the time of the purchase.

15.3  **Attempted Sale, Assignment or Transfer.** If Franchisee attempts to sell, assign or transfer his AAMCO center without following the procedures required by this Agreement, then any such attempted sale, assignment or transfer is void. In the event that such attempted assignment or transfer is to a corporation wholly or partially owned or controlled by Franchisee, then, at AAMCO's option, Franchisee agrees on behalf of the corporation that the attempted assignment or transfer shall subject the corporation to all the terms and conditions of this Agreement. Franchisee shall remain jointly and severally liable for all obligations and responsibilities of this Agreement, including money owed, despite any such attempted and/or unauthorized sale, assignment or transfer of Franchisee's AAMCO center.

15.4  **Notification of Resale.** Franchisee agrees to submit to AAMCO a copy of any written offer or a statement from Franchisee of all the terms of the proposed sale and the identity of any proposed purchaser before consummation of an agreement of sale.

16.1  **Duration of the Franchise.** This Agreement shall begin as of the date set forth above, and shall continue for a term of fifteen (15) years. Unless either party gives written notice of its intention not to renew at least one (1) year prior to the expiration of the fifteen (15) year term, then this franchise shall be renewed for fifteen (15) years. Failure to renew by AAMCO will be based on good cause; the parties agree that "good cause" shall be defined to include the following:

(a) Any default set forth in section 18.1 of this Agreement notwithstanding compliance with paragraph 18.1(b); or

(b) Any cause that in AAMCO's reasonable estimation brings discredit upon its trademarks and trade name, or seriously interferes with AAMCO's business interests.

In connection with any renewal, Franchisee agrees to execute a franchise agreement of the type then currently being used by AAMCO. AAMCO expressly reserves the right to increase the franchise fee upon renewal in accordance with its then current policy.

17.1  **No Waiver by AAMCO.** AAMCO's failure to insist upon strict compliance with all provisions of this Agreement, except section 21.1 shall not be a waiver of its right to do so; delay or omission by AAMCO respecting any default shall not affect its rights respecting any subsequent defaults.

18.1  **Termination**

(a) AAMCO may terminate this Agreement by giving written notice to Franchisee upon the occurrence of any of the following:

(1) A breach by Franchisee of sections 5.2 or 20.2 of this Agreement.

(2) If Franchisee unreasonably delays in opening his center. In no event shall a period of less than eight (8) months be considered an unreasonable delay. In the event that this Agreement is terminated pursuant to this subsection, then AAMCO may elect to retain as liquidated damages the deposit paid by Franchisee pursuant to section 3.1.

(3) If Franchisee terminates or attempts to terminate this Agreement for any reason. If this Agreement is terminated under this subsection, then AAMCO may elect to retain the deposit made by Franchisee as liquidated damages or as against compensatory and punitive damages which may be sought under this Agreement.

(4) In the event that Franchisee is declared insolvent or bankrupt by any court, or makes an assignment for the benefit of creditors, or in the event that a receiver is appointed for Franchisee's business, or Franchisee is unable to continue in business, or in the event of the sale, insolvency or termination of the business operated pursuant to this Agreement, or in the event that any proceedings demanded by Franchisee under a provision of the Federal Bankruptcy Act or any other laws for the relief of debtors are commenced, or in the event Franchisee becomes the involuntary subject of any such proceeding, which proceeding continues undismissed for a period of thirty (30) days.

(5) Failure to make any payments to an advertising agency and/or local advertising group or pool, or to make any other advertising payments required pursuant to section 7 of this Agreement.

(6) Failure to make any payments required under any provision of this Agreement.

(7) If Franchisee closes his center for any reason and fails to reopen within ten (10) days from the date of such closing.

(8) If Franchisee sells or attempts to sell, transfer or assign his rights under this Agreement without the approval of AAMCO as required by this Agreement.

(9) If Franchisee shall commit a violation of any provision of this Agreement.

(b) Upon receipt of notice pursuant to section 18.1(a), Franchisee shall have ten (10) days within which to cure completely any default based on a failure to make any payment required under any provision of this Agreement. For any other default, except as set forth below in section 18.1(c), Franchisee shall have thirty (30) days within which to cure completely any such default. Failure of Franchisee to effect such cure within the cure period shall result in the immediate termination of this Agreement. It shall be Franchisee's responsibility to advise AAMCO of his attempt to cure any default.

(c) Any notice of termination which is based, in whole or in part, upon the fraudulent acts of Franchisee or on Franchisee's failure to deal honestly and fairly with AAMCO or with any customer of the center, shall be effective upon receipt by Franchisee, and the provisions of section 18.1(b) shall not be applicable thereto.

19.1  **Procedures after Termination.**

(a) Upon the termination of this Agreement for any reason, including, without limitation, termination upon the expiration of the current term by virtue of Franchisee's failure to renew as provided in section 16.1 (sometimes herein called "Expiration"), Franchisee shall cease to be an authorized AAMCO franchisee and shall:

(1) Promptly pay AAMCO all sums due and owing.

(2) Promptly pay AAMCO the sum of $6,000 to be held by AAMCO to cover the costs of warranty work for customers of Franchisee's former center. If there is any amount remaining unused two (2) years after the date of termination and Franchisee has complied fully with the provisions of section 19, then any such amount shall be returned to Franchisee.

(3) Immediately and permanently discontinue the use of the mark AAMCO and all similar names or marks, and any other designation tending to indicate that Franchisee is or was an authorized AAMCO franchisee.

(4) Promptly surrender to AAMCO all signs, training materials, manuals, videos, stationery, letterheads, forms, repair orders, printed matter and advertising material containing the mark AAMCO, all similar names or marks or any other designation tending to indicate that Franchisee is or was an authorized franchisee of AAMCO.

(5) Immediately and permanently discontinue all advertising as an authorized AAMCO dealer.

(6) Promptly transfer to AAMCO or AAMCO's designee each telephone number listed under the designation AAMCO or any similar designation, and execute such instruments and take such steps as AAMCO may require to accomplish the transfer of each such telephone number.

(7) At AAMCO's discretion, sell all inventories on hand to AAMCO at the price then being charged by AAMCO to authorized AAMCO dealers, less freight and handling costs.

(b) Upon termination of Expiration, AAMCO shall have the option to purchase all of Franchisee's right, title and interest in the center and all equipment contained therein. If AAMCO intends to exercise its option, AAMCO shall notify Franchisee of such intention at the time of termination or, in the case of Expiration, within ten (10) days prior to the Expiration of the current term of this Agreement. The full purchase price of the center shall be:

(1) In the case of Expiration, the fair market value of the equipment and parts then located at the center, less all outstanding liabilities of the center.

(2) In the case of all other terminations, the lesser of the fair market value of the equipment and parts then located at the center or Franchisee's cost, less depreciation on the equipment computed on a fifteen (15) year straight-line basis, less all outstanding liabilities of the center. AAMCO shall have the right to withhold from the purchase price funds sufficient to pay all outstanding debts and liabilities of the center and to pay such debts and liabilities from such funds. If such liabilities exceed the purchase price of the equipment and parts, AAMCO shall apply the purchase price in such manner as AAMCO, in its sole discretion, shall determine. In no event, however, shall AAMCO become liable for any of the debts and liabilities of Franchisee or of the center and Franchisee shall remain responsible for all outstanding debts and liabilities of the center which remain unsatisfied subsequent to the distribution by AAMCO of the purchase price funds.

(c) If, within five (5) days after termination or Expiration, Franchisee fails to remove all displays of the AAMCO name and trademark and any other materials of any kind from the center which are identified or associated with AAMCO, AAMCO may enter the center or premises to effect such removal. In such event, AAMCO shall not have any liability to Franchisee therefor, nor shall AAMCO be accountable or required to pay for such displays or materials.

(d) If, within three (3) days after termination or Expiration, Franchisee has not taken all steps necessary to amend, transfer or terminate all telephone listings or service and any registration or filing of any fictitious name, Franchisee hereby irrevocably nominates, constitutes and appoints AAMCO or any prothonotary, clerk of court or attorney of any court of record as its true and lawful attorney for him and in his name, and on his behalf to take all such action as may be necessary or appropriate to amend, transfer or terminate all such telephone listings and service and registrations and filings of such fictitious name, without liability to Franchisee for doing so. In the event that any action is required to be taken by or on behalf of AAMCO pursuant to this subsection 19(d), the telephone company, Yellow Pages publishers and all listing agencies, without liability to Franchisee, may accept this Agreement and the directions by or on behalf of AAMCO as conclusive proof of AAMCO's exclusive rights in such telephone numbers and directory listings and its authority to direct their amendment, termination or transfer and Franchisee hereby releases and waives any claim of any kind that he may have against any telephone company and/or yellow or white page directory publisher as a result of their implementing the transfer, amendment or termination set forth herein.

(e) The termination of this Agreement shall not affect, modify or discharge any claim, rights or causes of action which AAMCO may have against Franchisee, under this Agreement or otherwise, for any reason whatsoever, whether such claims or rights arise before or after termination.

19.2  **Covenant Not-To-Compete.** Franchisee acknowledges that as a franchisee of AAMCO he will receive confidential information and materials and trade secrets and have access to unique procedures and systems developed by AAMCO. Franchisee further acknowledges that the development of the marketplace in which his center is located is solely as a result of the AAMCO name and trademark. Therefore, to protect the AAMCO name and trademark and to induce AAMCO to enter into this Agreement, Franchisee represents and warrants:

(a) During the term of this Agreement and any renewal thereof, Franchisee shall not directly or indirectly engage in any business the same as, similar to or in competition with AAMCO or any other AAMCO Franchisee, except for the business contemplated by this Agreement.

(b) For a period of two (2) years after the termination of this Agreement, Franchisee shall not directly or indirectly engage in the transmission repair business within a radius of ten (10) miles of the former center or any other AAMCO center. The two (2) year period shall not begin to run until Franchisee commences to comply with all obligations stated in this section 19.2(b).

(c) Franchisee acknowledges that because of the business of AAMCO and the strength of the AAMCO name and trademark, the restrictions contained in this section 19.2 are reasonable and necessary to protect the legitimate interests of AAMCO and that any violation of these restrictions will result in irreparable injury to AAMCO. Therefore, Franchisee acknowledges that, in the event of such violation, AAMCO shall be entitled to preliminary and permanent injunctive relief and damages, as well as an equitable accounting of all earnings, profits and other benefits, arising from such violation, which remedies shall be cumulative and in addition to any other rights and remedies to which AAMCO shall be entitled. If Franchisee violates any restriction contained in this section 19.2 and it is necessary for AAMCO to seek equitable relief, the restrictions contained herein shall remain in effect for two (2) years after such relief is granted.

(d) Franchisee agrees that the provisions of this covenant not-to-compete are reasonable. If, however, any court should hold that the duration or geographical limits of any restrictions contained in this section 19.2 are unreasonable, the parties agree that such determination shall not render the restriction invalid or unenforceable, but that such restriction shall remain in full force and effect for such duration and within such geographical limits as the court shall consider reasonable.

20.1  **Applicable Laws.** Franchisee agrees to comply with all federal, state, county and municipal laws and regulations which may be applicable to Franchisee's business.

20.2  **Federal Trade Commission Orders.** Franchisee acknowledges receipt of a copy of FTC Order No. 8816 and Franchisee agrees to adhere to the provisions of this Order in his dealings with the public and with AAMCO.

21.1  **Jurisdiction.** This Agreement shall be deemed to have been made within the Commonwealth of Pennsylvania, shall be interpreted according to the laws of Pennsylvania and Pennsylvania law shall apply to any claims arising out of, connected to or relating to this Agreement or its performance.

Franchisee hereby agrees that mailing to his last known address by certified or registered mail or by any overnight carrier service which provides a receipt of any process shall constitute lawful and valid process. Franchisee agrees to the jurisdiction and venue of the United States District Court for the Eastern District of Pennsylvania or to the Court of Common Pleas of Philadelphia or Montgomery County, Pennsylvania in any action, proceeding or counterclaim, whether at law or at equity, in any manner whatsoever which arises out of or is connected in any way with this Agreement or its performance, and Franchisee specifically agrees not to bring suit against AAMCO in any other jurisdiction or venue.

21.2  **Jury Trial Waived.** Franchisee and AAMCO hereby agree that they shall and hereby do waive trial by jury in any action, proceeding or counterclaim, whether at law or at equity, brought by either of them, or in any matter whatsoever which arises out of or is connected in any way with this Agreement or its performance.

21.3  **Severability.** In the event that any portion, term or provision of this Agreement shall be decided by any court to be in conflict with the law of a state or jurisdiction, then the validity of the remaining portions, terms or provisions shall not be affected; the illegal part, term or provision shall be deemed not to be a part of this Agreement and this Agreement shall be considered as if the provision has never been a part of it.

21.4  **Notice.** Whenever this Agreement requires notice, it shall be in writing and shall be sent by registered or certified mail, return receipt requested or overnight mail to the other party at the addresses set forth below, unless notice is given of a change of address. However, Franchisee agrees that notice may be sent to him at the AAMCO transmission repair center operated pursuant to the terms hereof.

21.5  **Recovery of Costs and Attorneys' Fees.** In any court or arbitration proceeding brought by either party hereto arising out of or based upon this Agreement or its performance, the prevailing party shall recover all court costs, attorneys' fees and other expenses relating to such proceeding from the non-prevailing party.

22.1  **Mediation and Arbitration.**

(a) Non-binding mediation of disputes, controversies, or claims arising out of or relating to this Agreement shall be conducted in Philadelphia, Pennsylvania or in Chicago, Illinois, solely at Franchisee's option.

(b) All disputes, controversies or claims arising out of or relating to this Agreement shall be settled by binding arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association or its successor except for termination by AAMCO which is based in whole or in part, upon the fraudulent acts of Franchisee or Franchisee's failure to deal honestly and fairly with any customer of the center or Franchisee's failure to accurately report his gross receipts to AAMCO. Arbitration shall be conducted in Philadelphia, Pennsylvania, unless otherwise agreed to by the parties.

AT-04-6(1) Resale                                              9

23.1 **Entire Agreement.** This Agreement consisting of ten (10) pages and attachments contains the entire agreement between the parties concerning Franchisee's AAMCO franchise; no promises, inducements or representations not contained in this Agreement shall be of any force or effect, or binding on the parties. Modifications of this Agreement must be in writing and signed by AAMCO.

IN WITNESS WHEREOF, the parties intending to be legally bound hereby, hereto have set their hands and seals as of the day and year first above written.

ATTEST:                              AAMCO TRANSMISSIONS, INC.

                                     By: _____

_____              _____ (SEAL)
WITNESS                              FRANCHISEE – Emmanuel Otoigiakhi


Address for AAMCO Transmissions, Inc.        Address for Franchisee:
201 Gibraltar Road
Horsham, PA 19044


AT-04-6(1) Resale                                    10



KWIKTEST-PLUS HARNESS SUBSCRIPTION PROGRAM

# ENROLLMENT FORM

I would like to enroll in AAMCO's Kwiktest-Plus Harness™ Subscription Program. I understand that by enrolling in the program, any new harness will be shipped directly to my center. I also agree to pay for each harness I keep within 30 days of delivery. The charge will appear on my parts statement.

In the event that I do not want to keep a certain harness, I may return the unused harness within 30 days for a full refund on my parts statement. If a harness is priced above $150, I will be notified in advance and this will be shipped to me only after I have given my approval.

This subscription agreement will remain in effect for as long as I keep my franchise, unless I choose to purchase harnesses from another vendor. Should I choose to do so, the harnesses will need to meet AAMCO's specifications. This contract will then be terminated.

Center Location:  209 New Brunswick Avenue, Perth Amboy, NJ 08861     Center Number: 18824

Dealer Signature: _____   Date: November 6, 2006
                    Emmanuel Otoigiakhi

TO:   AAMCO Transmissions, Inc.
      201 Gibraltar Road
      Horsham, PA  19044

      I hereby subscribe to the AAMCO Tech Video Library. I agree to purchase all tapes/DVD's in the current library. Furthermore, I agree to purchase new tapes/DVD's as they are made available and to pay for them at approximately $45.00 per tape/DVD. I also agree to continue this subscription for the duration of my franchise unless I decide to participate in a comparable technical training program which meets AAMCO's specifications, at which time this subscription shall be ended.

*[signature]*

Franchisee – Emmanuel Otoigiakhi

Dated:  November 6, 2006

## AAMCO DirecTech® USER LICENSE AGREEMENT

THIS LICENSE AGREEMENT (the "Agreement") is entered into as of the Effective Date (as defined on the signature page hereto) by and between AAMCO TRANSMISSIONS, INC. ("ATI"), and:

| | | | |
|---|---|---|---|
| Franchisee: | Emmanuel Otoigiakhi | Center #: | #18824 |
| Address: | 209 New Brunswick Avenue | City/State/Zip: | Perth Amboy, NJ 08861 |

WHEREAS, Franchisee desires delivery of an AAMCO DirecTech® System (the "System") consisting of textual works and computer programs recorded on one DVD. The System will permit Franchisee access to service and repair procedures, specifications, schematics and illustrations for the repair of automotive transmissions under the conditions set forth in this Agreement.

NOW, THEREFORE, for valuable consideration, receipt of which is hereby acknowledged, the parties agree as follows:

  1.  **Term.** The term of this Agreement shall commence upon the effective date and shall remain in full force and effect indefinitely unless terminatd in accordance with this Agreement. Termination of this Agreement shall not terminate Franchisee's obligations under the provisions of this Agreement.

  2.  **License.** Subject to the terms and conditions of this Agreement, ATI grants to Franchisee a nonexclusive and nontransferable license to use the System to access mechanical service and repair for mechanical repairs. ATI, and its vendor, Mitchell Repair Information Company, LLC ("MRIC") shall retain title at all times to the System, and Franchisee shall have no rights therein except to use the System as set forth herein. The System may be used solely (i) by Franchisee, (ii) for the purpose of accessing mechanical service and repair data on the System (iii) at the location listed above.

  3.  **Sole User.** Franchisee may not sell, market or in any other manner distribute to any third party, or to any location, the System or any information contained in or derived from the System except in connection with an approved AAMCO Center resale; provided, however, the purchaser of such resale shall be required to pay in full the Annual Support Fee in order for such transfer of the System to be effective. Franchisee may not download the System, in whole or in part, to another computer, or transmit the System, in whole or in part, electronically to another computer or terminal, without written authorization from ATI.

  4.  **Updates.** ATI intends to update all AAMCO content and portions of the MRIC content of the System data ("Data Updates") annually, based upon the reasonable availability of MRIC data. Unless Franchisee declines an Update in writing within 30 days of notice of Data Update Release, ATI will automatically ship each Data Update to Franchisee and bill the Update Fee to his Parts Account. Should Franchisee seek to update the System after missing any Data Update, Franchisee will pay the full price for the most recent update plus 50% of the price for the first missed update and 25% of the price of previous sequentially missed updates. Upon receipt of replacement DVD, Franchisee agrees to return all previous discs, or, upon request, destroy them.

  5.  **Price and Payment Terms.** In consideration of the license granted herein, Franchisee shall pay to ATI the License Fee, Annual Support Fee and Data Update Price set forth on the User Price Schedule below. The prices do not include sales, use, excise, or other similar taxes, all of which are the obligation of Franchisee.

The Annual Support Fee and the Data Update Price are subject to a change by up to 15% annually. Major base system enhancements may be priced separately.

### USER PRICE SCHEDULE:

| Payment Options | | Select One |
|---|---|---|
| 1: One Payment - License and Annual Fees | | ☐ |
| * License Fee Base Price | $1,695.00 | |
| (includes 1st year Annual Support) | | |
| * Annual Support Fee | $ 98.00 | |
| * Annual Data Update | $ 177.00 | |
| 2: Monthly Payments - $142/month for 1 year | | ☐ |
| *Plus Annual Support Fee $98 and Annual Data Update Fee $177 in years 2 and 3 | | |
| 3: Monthly Payments - $63/month for 3 years | | ☐ |
| * Includes License Fee and two years Annual Fee and Annual Data Update Fee | | |

Note: Options 2 and 3 are subject to credit approval, option 1 applies if none is checked.

  6.  **Maintenance of Equipment and Software.** Franchisee, and not ATI or MRIC, shall bear sole responsibility to obtain, maintain and operate, or cause to be obtained, maintained and operated at its own expense, all equipment and non-AAMCO software that may be used in conjunction with the System.

THE UNDERSIGNED AGREE TO THE TERMS AND CONDITIONS SET FORTH HERE AND ON THE REVERSE OF THIS PAGE. IN WITNESS WHEREOF, the parties hereto have executed this Agreement on the respective dates indicated below.

Franchisee Signature: _[signature]_

Franchisee Signature: _____

Franchisee Signature: _____

Printed Name: Emmanuel Otoigiakhi    Date: 11-6-06

Accepted by: AAMCO Transmissions, Inc.

By: _[signature]_

Title: _____  Date: _____

7.  **Confidentiality.** Franchisee acknowledges that the System comprises information which constitutes a trade secret of ATI and MRIC in which ATI and MRIC has a proprietary interest. Franchisee therefore agrees that no portion of the information constituting the System may be disclosed to others, copied, reproduced, compiled or used for any purpose or purposes other than as specifically contemplated by this Agreement in paragraph "2" above. Franchisee shall exercise its best efforts to protect the System and to prevent its dissemination to unauthorized persons. Furthermore, Franchisee shall not assign, pledge, sublicense or permit any other use of the System without obtaining the prior written consent of ATI which consent may be withheld at the sole discretion of ATI. Franchisee shall immediately return to ATI all System discs and other information together with all copies and derivatives thereof immediately upon the termination of this Agreement.

8.  **AAMCO System Modification.** For all presently foreseeable future updates and enhancements, the System will operate effectively on a Pentium 233 MHz computer. However, ATI reserves the right to make changes in rules of operation, security measures, accessibility, procedures, types of terminal equipment, types of system equipment, system programming languages and any other matters relating to the System and its use, without prior notice.

9.  **Warranty.** THE SYSTEM IS DELIVERED "AS IS" AND NEITHER ATI NOR MRIC MAKE ANY REPRESENTATIONS OR WARRANTIES, EITHER EXPRESS OR IMPLIED, INCLUDING BUT NOT LIMITED TO WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE WITH RESPECT TO THE SYSTEM OR THE DATA UPDATES, THE COMPUTER PROGRAM ALLOWING USE OF THE SYSTEM, OR ANY SERVICES PERFORMED BY ANY THIRD PARTY. Franchisee acknowledges and agrees that (i) ATI is not the manufacturer of any automotive repair parts referenced in the System, (ii) ATI hereby makes no representations or warranties with respect to the quality or availability of such parts or the accuracy of the prices of such parts and (iii) if Franchisee utilizes any non-ATI-supplied interface program to interface with the System, Franchisee shall look solely to the vendor of such interface program with respect to any losses or damages caused by such interface program. Neither ATI nor MRIC is responsible for obsolescence of the System and Data Updates and neither is responsible for suspended, outdated or uncorrected versions of the System and Data Updates.

10. **Limitation of Liability.** Franchisee agrees that neither ATI nor MRIC shall be liable to Franchisee for any direct, indirect, special, incidental or consequential damages, including but not limited to loss of anticipated profits, in connection with or arising out of the use of the System and Data Updates. Franchisee's sole remedy upon breach of this Agreement by ATI shall be termination of the Agreement and refund of unearned portions of the License Fee. Franchisee agrees to indemnify ATI and MRIC and hold them harmless against all claims and damages, including without limitation, reasonable attorney's fees arising out of Franchisee's use of the System and the Data Updates, unless such claims or damages result from, or unless Franchisee's authorized use of the System has given rise to, claims or damages based on the infringement of any copyright or other proprietary right of any third party.

11. **Termination.** Immediately upon the effective date of termination of this Agreement or the Franchise Agreement, Franchisee shall cease using the System, shall return the System, Data Updates, and all ATI documents and information pertaining thereto, and shall certify to ATI in writing that the System and all ATI documents and information pertaining thereto have been returned. The following actions shall constitute a breach of the Agreement and shall allow ATI to terminate the Agreement: any use or dissemination of the System or Data Updates which is not expressly permitted herein; the appointment of a receiver to take possession of Franchisee's assets or the institution of liquidation or bankruptcy by or against Franchisee; dissolution or discontinuance of business operations of Franchisee; or failure to make timely payment to ATI of the License Fee. Upon termination of this Agreement by ATI for any such cause, Franchisee shall not be entitled to any refund of the License Fee.

12. **General Provisions.**

    12.1 **Entire Agreement.** This Agreement sets forth the entire agreement and understanding between the parties as to the subject matter hereof and supersedes all prior discussions between them.

    12.2 **Attorneys' Fees.** If any action or proceeding is brought in connection with this agreement, the prevailing party shall be entitled to its attorneys' fees and other costs and expenses incurred in such action or proceeding, including any appeals or petitions therefor.

    12.3 **Assignment.** Except in connection with an approved AAMCO Center resale, Franchisee may not assign its rights or delegate its duties hereunder without first securing written permission to do so from ATI, which permission may be withheld at the sole discretion of ATI. Any such attempted conveyance shall be void and shall constitute a default entitling ATI to terminate this Agreement. ATI may freely assign its rights without securing Franchisee's permission to do so.

    12.4 **ARBITRATION.** All disputes, controversies or claims arising out of or relating to this Agreement shall be settled by binding arbitration in accordance with the commercial arbitration rules of the American Arbitration Association, or its successor. Arbitration shall be conducted in Philadelphia, Pennsylvania, unless otherwise agreed to by the parties. A judgment upon the award may be entered in any Court having jurisdiction thereof.

    12.5 **Choice of Law and Forum.** This Agreement has been entered into under the laws of the Commonwealth of Pennsylvania, the parties hereto agree that it shall be interpreted, and all disputes arising hereunder shall be resolved, in accordance with its laws, and consent to jurisdiction in its courts.

    12.6 **Waiver.** Failure of either party hereto to enforce at any time any term of this Agreement shall not be a waiver of that party's right thereafter to enforce each and every term of this Agreement.

Rev. 02-03

## AAMCO FOCUS™ USER LICENSE AGREEMENT

THIS LICENSE AGREEMENT (the "Agreement") is entered into as of the Effective Date (as defined on the signature page hereto) by and between AAMCO TRANSMISSIONS, INC. ("ATI"), and:

Franchisee: _Emmanuel Otoigiakhi_    Center #/City & State: _#18824/Perth Amboy, NJ_

WHEREAS, Franchisee desires delivery of an AAMCO FOCUS™ System (the "System") consisting of textual works and computer programs recorded on one or more CD-ROM discs. The System will, among other things, permit Franchisee to print repair orders, calculate, print and transmit weekly business reports, market to customers and prepare reports analyzing the operation of his business under the conditions set forth in this Agreement.

NOW, THEREFORE, for valuable consideration, receipt of which is hereby acknowledged, the parties agree as follows:

**1. Term.** The term of this Agreement shall commence upon the Effective Date and shall remain in full force and effect indefinitely unless terminated in accordance with this Agreement. Termination of this Agreement shall not terminate Franchisee's obligations under the provisions of this Agreement.

**2. License.** Subject to the terms and conditions of this Agreement, ATI grants to Franchisee a nonexclusive and nontransferable license to use the System. ATI shall retain title at all times to the System, and Franchisee shall have no rights therein except to use the System as set forth herein. The System may be used solely (i) by Franchisee, (ii) for the operation of his AAMCO center (iii) at the location listed above.

**3. Sole User.** Franchisee may not sell, market or in any other manner distribute System to any third party, or to any location, except in connection with an approved AAMCO Center Resale.

**4. Updates.** ATI may update the content of the System data ("Data Updates") from time to time during each year and may also release major base system enhancements. Franchisee shall not be charged any amount for the Data Updates or major base system enhancements over and above the Maintenance and Support Subscription Fee.

**5. Price and Payment Terms.** In consideration of the license granted herein, Franchisee shall pay to ATI the License Fee and the annual Maintenance and Support Subscription Fee set forth on the User Price Schedule below. The prices do not include shipping, sales, use, excise, or other similar taxes, all of which are the obligation of Franchisee. The Maintenance and Support Subscription Fees may be changed annually, but will not change by more than 10% in any 2 year period.

### USER PRICE SCHEDULE (US$)

License Fee Base Price............................................. $1,995.00

\* Annual Subscription Support and Maintenance Fee .................................... $ 495.00

Franchisee agrees that he will continue to mail ATI the weekly business report data until instructed otherwise.

**6. Maintenance of Equipment and Software.** Franchisee, and not ATI, shall bear sole responsibility to obtain, maintain and operate, or cause to be obtained, maintain and operated at its own expense, all equipment and non-AAMCO software that may be used in conjunction with the System.

**7. Confidentiality.** Franchisee acknowledges that the System comprises information which constitutes a trade secret of ATI in which ATI has a proprietary interest. Franchisee therefore agrees that no portion of the information constituting the System may be disclosed to others, copied, reproduced, compiled or used for any purpose or purposes other than as specifically contemplated by this Agreement in paragraph 2 above. Franchisee shall exercise its best efforts to protect the System and to prevent its dissemination to unauthorized persons. Furthermore, Franchisee shall not assign, pledge, sublicense or permit any other use of the System except in connection with an approved AAMCO Center resale.

**8. AAMCO System Modification.** For all presently foreseeable future updates and enhancements, the System will operate effectively on a Pentium 166 MHz or better PC with 32MB or more memory. However, ATI reserves the right to make changes in rules of operation, security measures, accessibility, procedures, types of terminal equipment, types of system equipment, system programming languages and any other matters relating to the System and its use, without prior notice.

THE UNDERSIGNED AGREE TO THE TERMS AND CONDITIONS SET FORTH HERE AND ON THE REVERSE OF THIS PAGE. IN WITNESS WHEREOF, the parties hereto have executed this Agreement on the respective dates indicated below.

Franchisee Signature: _[signature]_

Franchisee Signature: _____

Printed Name: _Emmanuel Otoigiakhi_ Date: _11-6-06_

Accepted by: AAMCO Transmissions, Inc.

By: _[signature]_

Title: _____ Date: _____

9. **Warranty.** THE SYSTEM IS DELIVERED "AS IS" AND ATI MAKES NO REPRESENTATIONS OR WARRANTIES, EITHER EXPRESS OR IMPLIED, INCLUDING BUT NOT LIMITED TO WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE WITH RESPECT TO THE SYSTEM OR THE DATA UPDATES, THE COMPUTER PROGRAM ALLOWING USE OF THE SYSTEM, OR ANY SERVICES PERFORMED BY ANY THIRD PARTY. Franchisee acknowledges and agrees that (i) ATI is not the manufacturer or vendor of any automotive repair parts referenced in the System, and that it makes no representations or warranties with respect to the quality or availability of such parts or the accuracy of the prices of such parts. ATI is not responsible for obsolescence of the System and Data Updates, and further is not responsible for suspended, outdated or uncorrected versions of the System and Data Updates.

10. **Limitation of Liability.** Franchisee agrees that ATI shall not be liable to Franchisee for any direct, indirect, special, incidental or consequential damages, including but not limited to loss of data or anticipated profits, in connection with or arising out of the use of the System and Data Updates. Franchisee's sole remedy upon breach of this Agreement by ATI shall be termination of the Agreement and refund of unearned portions of the License Fee. Franchisee agrees to indemnify ATI and hold it harmless against all claims and damages, including without limitation, reasonable attorney's fees arising out of Franchisee's use of the System and the Data Updates, unless such claims or damages result from, or unless Franchisee's authorized use of the System has given rise to, claims or damages based on the infringement of any copyright or other proprietary right of any third party.

11. **Termination.** Immediately upon the termination of this Agreement or the Franchise Agreement, Franchisee shall cease using the System, shall return the System, Data Updates, and all ATI documents and information pertaining thereto, and shall certify to ATI in writing that the System and all ATI documents and information pertaining thereto have been returned. The following actions shall constitute a breach of the Agreement and shall allow ATI to terminate the Agreement: any use or dissemination of the System or Data Updates which is not expressly permitted herein; dissolution or discontinuance of business operations of Franchisee; or failure to make timely payment to ATI of the required fees. Upon termination of this Agreement by ATI for any such cause, Franchisee shall not be entitled to any refund of the License Fee.

12. **General Provisions.**
12.1 **Entire Agreement.** This Agreement sets forth the entire agreement and understanding between the parties as to the subject matter hereof and supersedes all prior discussions between them.
12.2 **Attorneys' Fees.** If any action or proceeding is brought in connection with this agreement, the prevailing party shall be entitled to its attorneys' fees and other costs and expenses incurred in such action or proceeding, including any appeals or petitions therefor.
12.3 **Assignment.** Except in connection with an approved AAMCO Center Resale, Franchisee may not assign its rights or delegate its duties hereunder. In the event of such Resale, so long as the outgoing Franchisee is current in his annual Support and Maintenance Subscription, the incoming Franchisee shall merely execute a new license agreement and pay the 1st year maintenance subscription fee. He shall not be required to pay any new License Fee. Any other attempted conveyance shall be void and shall constitute a default entitling ATI to terminate this Agreement. ATI may freely assign its rights without securing Franchisee's permission to do so.
12.4 **ARBITRATION.** All disputes, controversies or claims arising out of or relating to this Agreement shall be settled by binding arbitration in accordance with the commercial arbitration rules of the American Arbitration Association, or its successor. Arbitration shall be conducted in Philadelphia, Pennsylvania, unless otherwise agreed to by the parties. A judgment upon the award may be entered in any Court having jurisdiction thereof.
12.5 **Choice of Law and Forum.** This Agreement has been entered into under the laws of the Commonwealth of Pennsylvania, the parties hereto agree that it shall be interpreted, and all disputes arising hereunder shall be resolved, in accordance with its laws, and consent to jurisdiction in its courts.
12.6 **Waiver.** Failure of either party hereto to enforce at any time any term of this Agreement shall not be a waiver of that party's right thereafter to enforce each and every term of this Agreement.