Patrick C. Dunican, Jr.
Robert C. Brady
Timothy J. Duva
**GIBBONS P.C.**
One Gateway Center
Newark, New Jersey  07102-5310
(973) 596-4500

pdunican@gibbonslaw.com
rbrady@gibbonslaw.com
tduva@gibbonslaw.com

*Attorneys for Defendant/Counterclaimant*
*AAMCO Transmissions, Inc.*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| EMMANUEL OTIOGIAKHI, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>AAMCO TRANSMISSIONS, INC.,<br><br>Defendant/Counterclaimant. | ***Document Electronically Filed***<br><br>Civil Action No.: 11-04620 (DMC) (JAD) |

### MEMORANDUM OF LAW IN SUPPORT OF AAMCO TRANSMISSIONS, INC.'S MOTION FOR A PRELIMINARY INJUNCTION AGAINST PLAINTIFF EMMANUEL OTIOGIAKHI

Patrick C. Dunican, Jr.
Robert C. Brady
Timothy J. Duva
**GIBBONS P.C.**
One Gateway Center
Newark, New Jersey  07102-5310
(973) 596-4617
pdunican@gibbonslaw.com
rbrady@gibbonslaw.com
tduva@gibbonslaw.com

*Attorneys for Defendant/Counterclaimant*
*AAMCO Transmissions, Inc.*

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ..................................................................................................ii

PRELIMINARY STATEMENT ............................................................................................ 1

FACTUAL HISTORY .......................................................................................................... 1

PROCEDURAL HISTORY ................................................................................................. 6

LEGAL ARGUMENT ......................................................................................................... 7

    I.     ATI Is Entitled to Preliminary Injunctive Relief Against Otiogiakhi ...................... 7

          a.     General Standard – Preliminary Injunction ................................................. 7

          b.     ATI is Likely to Prevail on the Merits of Its Claims ................................... 7

                 i.     ATI is likely to prevail on its claim for trademark infringement because Otiogiakhi continues to operate the Center using the AAMCO mark without ATI's authorization to do so................................................................................... 7

                 ii.    ATI is likely to prevail on its application to enforce the non-compete covenant because the covenant protects ATI's valid business interests................................................. 8

          c.     Otiogiakhi is Causing ATI to Suffer Irreparable Harm ............................ 12

                 i.     Trademark Infringement ................................................ 12

                 ii.    Non-Compete Covenant ............................................... 13

          d.     Otiogiakhi Will Not Suffer Undue Harm ................................................... 14

                 i.     Trademark Infringement ................................................ 14

                 ii.    Non-Compete Covenant ............................................... 14

          e.     The Requested Relief will Serve the Public Interest ................................ 15

                 i.     Trademark Infringement ................................................ 15

                 ii.    Non-Compete Covenant ............................................... 15

CONCLUSION ................................................................................................................ 15

## <u>TABLE OF AUTHORITIES</u>

### <u>CASES</u>

<u>Armstrong v. Taco Time Int'l, Inc.,</u>
    635 P.2d 1114 (Wash. App. 1981) ........................................................................... 10

<u>ATL Int'l, Inc. v. Barader,</u>
    97-CV-3642, Bus. Franchise Guide (CCH) ¶11,345 (D. MD. 1997) ......................... 11

<u>Boulanger v. Dunkin' Donuts Inc.,</u>
    815 N.E.2d 572 (Mass. 2004) .................................................................................. 10

<u>Casey's General Stores, Inc. v. Campbell Oil, Inc.,</u>
    441 N.W.2d 758 (Iowa 1989) ................................................................................... 10

<u>Domino's Pizza, Inc. v. El-Tan, Inc.,</u>
    Nos. 95-C-180-B, 95-C-181-B, 95-C-182-BU, 1995 WL 367893 (N.D. Okla.
    April 28, 1995)............................................................................................... 9, 11

<u>Dunkin' Donuts Inc. v. Shivem, Inc.,</u>
    No. 94-CV-5627, Bus. Franchise Guide (CCH) ¶ 10,681 (D.N.J. 1995) ................... 9

<u>Giampapa v. Carvel Corp.,</u>
    No. 96-CV-4758, Bus. Franchise Guide (CCH) ¶ 11,442 (D.N.J. 1998) .............. 8, 10

<u>Jiffy Lube Int'l, Inc. v. Weiss Brothers, Inc.,</u>
    834 F.Supp. 683 (D.N.J. 1993) ...................................................................... 8, 9, 13, 14

<u>Maaco Enterprises, Inc. v. Bremner,</u>
    No. 98-CV-2727, 1998 WL 669936 (E.D.Pa. Sept. 29, 1998) ................................. 14

<u>McCart v. H&R Block, Inc.,</u>
    470 N.E.2d 756 (Ind. App. 1984)............................................................................... 9

<u>Meineke Discount Muffler v. Jaynes,</u>
    999 F.2d 120 (5th Cir. 1993) .................................................................................... 10

<u>Minuteman Press Int'l, Inc. v. ANBAM, LLC,</u>
    No. 03-CV-2140, Bus. Franchise Guide (CCH) ¶12,576 (E.D.N.Y. 2003) .............. 10

<u>Novus Franchising, Inc. v. Taylor,</u>
    795 F. Supp. 122 (M.D. Pa. 1992) .................................................................. 9, 13, 15

<u>Pappan Enterprises, Inc. v. Hardee's Food Systems, Inc.,</u>
    143 F.3d 800 (3rd Cir. 1998) ..................................................................................... 7

<u>Piercing Pagoda, Inc. v. Hoffner,</u>
    351 A.2d 207 (Pa. 1976) ..................................................................................... 9, 11

Principe v. McDonald's Corp.,
     631 F.2d 303 (4th Cir. 1980), cert. denied,
     451 U.S. 970 (1981) ......................................................................................... 12

Rita's Water Ice Franchise Corp. v. DBI Investment Corp.,
     No. 96-306, 1996 WL 165518 (E.D.Pa. April 18, 1996) ......................................... 9

Rodeo Collection, Ltd. v. West Seventh,
     812 F.2d 1215 (9th Cir. 1987) ............................................................................ 13

S & R Corp. v. Jiffy Lube Int'l,
     968 F.2d 371 (3d Cir. 1992) ..................................................................... 8, 13, 14

Sparks Tune-Up, Inc. v. White,
     No. 89-664, 1989 WL 41321 (E.D.Pa. April 18, 1989).......................................... 14

Specialty Bakeries, Inc. v. City Bagels, Inc.,
     No. 95-1615, 1995 WL 141188 (E.D. Pa. Mar. 31, 1995) ....................................... 9

Susser v. Carvel Corp.,
     206 F.Supp. 636 (S.D.N.Y. 1962), aff'd,
     332 F.2d 505 (2d Cir. 1964), cert. denied,
     381 U.S. 125 (1965) ......................................................................................... 12

United Lab, Inc. v. Kuykendall,
     370 S.E.2d 375 (N.C. 1988) ................................................................................. 9

Vision Sports, Inc. v. Mellville Corp.,
     888 F.2d 609 (9th Cir. 1989) ............................................................................. 13

Watson v. Wafflehouse, Inc.,
     324 S.E.2d 175 (Ga. 1985)................................................................................. 10

Yale Electric Corp. v. Robertson,
     26 F.2d 972 (2nd Cir. 1928) .............................................................................. 12

## OTHER AUTHORITIES

Ted P. Pearce, et al.,
     The Enforcement of Post-Termination Remedies in the Franchise Contract,
     24 Okla. City U. L. Rev. 81, 95 (1999) ................................................................ 11

Defendant / Counterclaimant AAMCO Transmissions, Inc. ("ATI"), by and through its undersigned counsel, submits this Memorandum of Law in support of its Motion for a Preliminary Injunction against Plaintiff Emmanuel Otiogiakhi ("Otiogiakhi").  For the reasons described below, ATI respectfully requests that its motion be granted and that the Court issue injunctive relief, in favor of ATI and against Otiogiakhi, in the form set forth in the proposed Order submitted herewith.

## PRELIMINARY STATEMENT

This case arises from a franchise relationship between ATI, as franchisor, and Otiogiakhi, a former franchisee.  Though ATI has terminated Otiogiakhi's franchise agreement, Otiogiakhi continues to operate a transmission repair business under the name "AAMCO Transmission" from site of the former AAMCO franchise location -- i.e., 209 New Brunswick Avenue, Perth Amboy, New Jersey  08861 (the "Center").  ATI now seeks injunctive relief enjoining Otiogiakhi from infringing on ATI's marks and continuing to violate his post termination obligations under the Franchise Agreement, including the non-compete covenant.

## FACTUAL HISTORY

Since at least 1963, ATI has continually used the name "AAMCO" as its trade name, trademark and service mark in connection with the operation of a network of transmission repair centers.  See Affidavit of Brian O'Donnell ("O'Donnell Aff.") at ¶ 3.  It is the exclusive owner of its marks and maintains current registrations of the marks with the United States Patent and Trademark Office.  Id. at ¶ 4.

ATI is engaged in interstate commerce in, inter alia, the business of franchising or licensing others to use the mark and name "AAMCO" in the operation of transmission and general automotive repair centers throughout the United States and Canada.  Id. at ¶ 5.  There are approximately 800 AAMCO locations licensed or franchised by ATI to operate transmission repair centers under the "AAMCO" trade name and trademark.  Id. at ¶ 6.

The "AAMCO" trade name and trademark have become universally associated with the repair of motor vehicle transmissions and the operation of transmission and general automotive repair centers. Id. at ¶ 7. As a result, ATI owns common-law trade name and trademark rights in the name "AAMCO" and other associated marks. Id. at ¶ 8. By virtue of the long use and promotion, and the resulting fine public reputation of the trade name "AAMCO", there exists a secondary meaning in the name "AAMCO". Id. at ¶ 9.

Large sums of money have been spent in advertising and promoting the services sold under ATI's trade name and trademarks, and today ATI has a substantial business and a long-established goodwill associated with the name and the above marks in connection with the services provided under its trade name and trademarks. Id. at ¶ 10. ATI has a vital interest in protecting its trade name and trademarks and the preservation and protection thereof are essential to the maintenance of ATI's quality transmission and general automotive repair centers and the goodwill and reputation associated therewith. Id. at ¶ 11.

To supervise and control use of its trade name and trademarks, ATI has established standards and policies governing the quality of service to be provided to the public and has established procedures calling for the inspection of franchisees' centers to determine that the standards and policies are being followed. Id. at ¶ 12.

On November 6, 2006, ATI and Otiogiakhi entered into a franchise agreement, pursuant to which Otiogiakhi was authorized to use the name and mark "AAMCO" in connection with the operation of the Center (the "Franchise Agreement"). Id. at ¶ 13. A true and correct copy of the Franchise Agreement is attached to the O'Donnell Aff. as Exhibit A  Otiogiakhi purchased the Center business from a former franchisee. Id. at ¶ 14. The Center at issue has operated as an AAMCO franchise location since February of 1967. Id. at ¶ 15.

As part of the franchising process, Otiogiakhi was provided access to ATI's proprietary system of doing business, including its trade secrets. Id. at ¶ 16. On October 30, 2006, Otiogiakhi attended ATI's comprehensive training class wherein Otiogiakhi was given in-depth

2

instruction on how to operate an AAMCO Transmission Center.  Id. at ¶ 17.  As such, Otiogiakhi has been schooled in ATI's trade secrets and proprietary business procedures.  Id. at ¶ 18.  Otiogiakhi has additionally been given access to, and benefited from, ATI's proprietary business management software, technical assistance hot line, periodicals, technical bulletins, and special ATI programs.  Id. at ¶ 19.

On April 5, 2011, ATI sent one of its field auditors, Edward Boyle ("Auditor"), to the Center to perform an onsite inspection of Otiogiakhi's books and records.  During that visit, the Auditor discovered:

(a)     documentation that numerous transactions reported to ATI as not collected or only partially collected had, in truth been paid;

(b)     documentation of numerous transactions that were reported to ATI as non-collectable, that were, in truth, bona fide sales on which Otiogiakhi received payment; and

(c)     numerous repair orders documenting customer sales that had never been reported to ATI.  See Affidavit of Ed Boyle, submitted herewith, at ¶¶ 3-4.  ATI's Auditor confronted Otiogiakhi at the Center after discovering many of the incriminating documents, and Otiogiakhi admitted to  intentionally concealing sales so that he would not have to pay the corresponding franchise fees to ATI.  Id. at ¶ 5.

On May 25, 2011, Otiogiakhi attended a meeting at AAMCO's headquarters in Horsham, Pennsylvania to discuss the Auditor's findings.  Id. at ¶ 6.  In addition to Otiogiakhi, the meeting was attended by AAMCO's Auditor, General Counsel, Senior Vice President of Operations, and Regional Vice President of Operations.  Id. at ¶ 7.  During the meeting, Otiogiakhi again admitted to intentionally concealing sales so that he would not have to pay the corresponding franchise fees to AAMCO.  Id. at ¶ 8; see also O'Donnell Aff. at ¶¶ 20-22.

In a letter dated June 2, 2011, ATI issued written notice to Otiogiakhi that, because he had intentionally underreported sales to AAMCO, his Franchise Agreement would terminate sixty (60) days thereafter.  See June 2, 2011 letter, a true and correct copy of which is attached

to the O'Donnell Aff. as Exhibit B; see also O'Donnell Aff. at ¶ 23.  In accordance with the written notice provided in AAMCO's June 2, 2011 letter, the Franchise Agreement terminated on August 1, 2011.  Id. at ¶ 24.

Section 19.1 of the Franchise Agreement, entitled "Procedures after Termination," provides that upon termination of the franchise, Otiogiakhi shall, among other things:

(3)     Immediately and permanently discontinue the use of the mark AAMCO and all similar names or marks, and any other designation tending to indicate that Franchisee is or was an authorized AAMCO franchisee.

(4)     Promptly surrender to AAMCO all signs, training materials, manuals, videos, stationery, letterheads, forms, repair orders, printed matter and advertising material containing the mark AAMCO, all similar names or marks or any other designation tending to indicate that Franchisee is or was an authorized franchisee of AAMCO.

(5)     Immediately and permanently discontinue all advertising as an authorized AAMCO dealer.

(6)     Promptly transfer to AAMCO or AAMCO's designee each telephone number listed under the designation AAMCO or any similar designation, and execute such instruments and take such steps as AAMCO may require to accomplish the transfer of each such telephone number.

See id. at Exhibit A, §19.1(a).

Section 19.2 of the Franchise Agreement, entitled "Covenant Not-To-Compete," provides that "[f]or a period of two (2) years after termination of this Agreement, Franchisee shall not directly or indirectly engage in the transmission repair business within a radius of ten (10) miles of the former center or any other AAMCO center."   Id. at Ex. A, §19.2(b).  The Franchise Agreement expressly sets forth the agreed upon basis for the covenant:

Franchisee acknowledges that as a franchisee of AAMCO he will receive confidential information and materials and trade secrets and have access to unique procedures and systems developed by AAMCO.  Franchisee further acknowledges that the development of the marketplace in which his center is located is solely as a result of the AAMCO name and trademark.

4

Id. at Ex. A, §19.2.  Section 19.2(c) of the Franchise Agreement further acknowledges ATI's legitimate business interests in the covenant and states, in pertinent part:

> Franchisee acknowledges that because of the business of AAMCO and the strength of the AAMCO name and trademark, the restrictions contained in this section 19.2 are reasonable and necessary to protect the legitimate interests of AAMCO and that any violation of these restrictions will result in irreparable injury to AAMCO.  Therefore, Franchisee acknowledges that, in the event of such violation, AAMCO shall be entitled to preliminary and permanent injunctive relief and damages, as well as an equitable accounting of all earnings, profits and other benefits, arising from such violation, which remedies shall be cumulative and in addition to any other rights and remedies to which AAMCO shall be entitled.

Id. at Ex. A, §19.2(c).

Despite the termination of his franchise and, in turn, his authorization to continue doing business under the AAMCO name, Otiogiakhi has refused to abide by the post termination covenants of the Franchise Agreement.  Id. at ¶ 25.  Specifically, Otiogiakhi refuses to remove the AAMCO name and trademark from the Center and continues to operate a competing transmission repair business at the former Center location under the name and style "AAMCO Transmissions", to hold himself out to be an authorized ATI franchisee, and to use the AAMCO trade name and trademark, without any license or right whatsoever.  Id. at ¶ 26.

In addition, Otiogiakhi continues to refuse to turn over to ATI the telephone numbers, (including but not limited to (732) 324-1777) that link to either current or former advertising for "AAMCO Transmission".  Id. at ¶ 27.  For instance, the former Center location has been and continues to be advertised in local Yellow Pages as "AAMCO."  A true and correct copy of advertisements placed in the Edison/Metuchen Yellowbook, which was published in May 2011, are attached to the O'Donnell Aff. as Exhibit C.  Customers who consult their local Yellow Pages and/or other forms of advertising hoping to find the telephone number of the nearest AAMCO Transmission Center may unknowingly call Otiogiakhi's now-unaffiliated, competing business.  Id. at ¶ 28.

## PROCEDURAL HISTORY

On July 14, 2011, Otiogiakhi commenced this action by filing a Verified Complaint in the New Jersey Superior Court, alleging counts against ATI for breach of contract, violation of the New Jersey Law Against Discrimination and seeking an accounting.  Simultaneous with filing the Verified Complaint, Otiogiakhi filed an application for an Order to Show Cause with Temporary Restraints seeking to temporarily enjoin ATI from enforcing its termination of the Franchise Agreement.  Otiogiakhi's application for a temporary restraining order, however, was never acted upon.

On August 10, 2011, ATI removed this matter to the United States District Court for the District of New Jersey.  (ECF No. 1).  On August 31, 2011, ATI filed an Answer, Affirmative Defenses and Counterclaim against Otiogiakhi.  (ECF No. 5).  In its Counterclaim, ATI describes how it terminated the Franchise Agreement because Otiogiakhi knowingly submitted artificially low weekly business reports to ATI and, in turn, intentionally underpaid franchise fees due and owing to ATI.  Otiogiakhi did so with the hope and intent that ATI would rely on the understated business reports as being accurate and would thus accept a significantly reduced sum as full payment of fees due under the Franchise Agreement.  Based on Otiogiakhi's representations, ATI did, in fact, initially believe that Otiogiakhi had paid the fees owed under the Franchise Agreement.  In its Counterclaim, ATI seeks to enforce the termination of the Franchise Agreement against Otiogiakhi and, amongst other things, alleges causes of action for trademark infringement under the Lanham Act and breach of contract seeking specific performance of the Franchise Agreement's post termination provisions.

## LEGAL ARGUMENT

**I.      ATI Is Entitled to Preliminary Injunctive Relief Against Otiogiakhi.**

**a.      General Standard – Preliminary Injunction.**

The standard for a preliminary injunction under Federal law is clear:

> When ruling on a motion for preliminary injunctive relief, a district court must consider four factors: (1) the likelihood that plaintiff will prevail on the merits at final hearing; (2) the extent to which plaintiff is being irreparably harmed by the conduct complained of; (3) the extent to which defendant will suffer irreparable harm if the preliminary injunction is issued; and (4) the public interest.

Pappan Enterprises, Inc. v. Hardee's Food Systems, Inc., 143 F.3d 800, 803 (3rd Cir. 1998).  As set forth in detail below, each of these requirements is satisfied here.  ATI will address each in turn.

**b.      ATI is Likely to Prevail on the Merits of Its Claims.**

**i.      ATI is likely to prevail on its claim for trademark infringement because Otiogiakhi continues to operate the Center using the AAMCO mark without ATI's authorization to do so.**

ATI is the exclusive owner of the AAMCO marks and Otiogiakhi's use of these marks is permitted only through the Franchise Agreement.  See O'Donnell Aff. at ¶ 29.  Section 19.1(a) of the Franchise Agreement provides that, upon termination of the Franchise Agreement for any reason, Otiogiakhi shall, among other things:

> (3)      Immediately and permanently discontinue the use of the mark AAMCO and all similar names or marks, and any other designation tending to indicate that Franchisee is or was an authorized AAMCO franchisee.

> (4)      Promptly surrender to AAMCO all signs, training materials, manuals, videos, stationery, letterheads, forms, repair orders, printed matter and advertising material containing the mark AAMCO, all similar names or marks or any other designation tending to indicate that Franchisee is or was an authorized franchisee of AAMCO.

> (5)      Immediately and permanently discontinue all advertising as an authorized AAMCO dealer.

     (6)    Promptly transfer to AAMCO or AAMCO's designee each telephone number listed under the designation AAMCO or any similar designation, and execute such instruments and take such steps as AAMCO may require to accomplish the transfer of each such telephone number.

Id. at Ex. A, §19.1(a).   Notwithstanding ATI's demand that Otiogiakhi comply with his post termination obligations, Otiogiakhi continues to operate the Center using the AAMCO mark. Once a franchise is terminated, the franchisor has a right to enjoin unauthorized use of its trademark under the Lanham Act.  S & R Corp. v. Jiffy Lube Int'l, 968 F.2d 371, 375 (3d Cir. 1992).  That an immediate termination of the franchise may work forfeiture of the franchisee's interest does not alter the franchisor's right to terminate.  Jiffy Lube Int'l, Inc. v. Weiss Brothers, Inc., 834 F.Supp. 683, 693 (D.N.J. 1993).

     ATI is likely to prevail on its trademark infringement, unfair competition and breach of contract claims because Otiogiakhi has ignored the termination of his Franchise Agreement and continues to operate under ATI's registered marks without any authorization to do so.

> ii.    **ATI is likely to prevail on its application to enforce the non-compete covenant because the covenant protects ATI's valid business interests.**

     By conducting a competing business from the former Center location, Otiogiakhi has undeniably breached the non-compete covenant of his Franchise Agreement with ATI. Specifically, Section 19.2 of the Franchise Agreement, entitled "Covenant Not-To-Compete," provides that "[f]or a period of two (2) years after termination of this Agreement, Franchisee shall not directly or indirectly engage in the transmission repair business within a radius of ten (10) miles of the former center or any other AAMCO center."  O'Donnell Aff., Ex. A, §19.2(b). Under New Jersey law, the federal courts have recognized the enforceability of non-compete covenants in franchise agreements insofar as they protect the legitimate interest of the franchisor, do not impose undue hardship on the franchisee, and do not impair the public interest.  Weiss Bros., 834 F.Supp. at 691.  See also Giampapa v. Carvel Corp., No. 96-CV-4758, Bus. Franchise Guide (CCH) ¶ 11,442 (D.N.J. 1998); Specialty Bakeries, Inc. v. City

Bagels, Inc., No. 95-1615, 1995 WL 141188, *4 (E.D. Pa. Mar. 31, 1995); Dunkin' Donuts Inc. v. Shivem, Inc., No. 94-CV-5627, Bus. Franchise Guide (CCH) ¶ 10,681 (D.N.J. 1995).

In this case, there can be no doubt that the covenant not to compete embodied in the Franchise Agreement protects ATI's legitimate business interests. See O'Donnell Aff. at ¶ 30. Business interests of franchisors that have been found to support the enforceability of a non-competition clause include: (a) the goodwill of the franchise; (b) the confidential and proprietary information associated with the franchise system; (c) the protection of other franchisees from unfair competition; and (d) the ability to secure another franchisee in or near the former franchisee's territory. See, e.g., Weiss Bros., Inc., 834 F.Supp. at 691-93; Piercing Pagoda, Inc. v. Hoffner, 351 A.2d 207, 211-12 (Pa. 1976).

Goodwill.  A franchisor has a protectable interest in the goodwill associated with its service mark, and a franchisor may suffer irreparable harm, for purposes of preliminary injunction, if the franchise agreement's non compete covenant is not enforced. Weiss Bros., 834 F.Supp. at 692. See also Novus Franchising, Inc. v. Taylor, 795 F. Supp. 122, 130 (M.D. Pa. 1992); Rita's Water Ice Franchise Corp. v. DBI Investment Corp., No. 96-306, 1996 WL 165518, *4-5 (E.D.Pa. April 18, 1996); McCart v. H&R Block, Inc., 470 N.E.2d 756, 763-64 (Ind. App. 1984).  Grounds for irreparable injury include loss of control of reputation and loss of good will.  Weiss Bros., 834 F.Supp. at 692.  Likewise, the interest of a business in protecting its established client base has been found to be a valid business interest subject to protection by a covenant not to compete. See United Lab, Inc. v. Kuykendall, 370 S.E.2d 375 (N.C. 1988); see also Domino's Pizza, Inc. v. El-Tan, Inc., Nos. 95-C-180-B, 95-C-181-B, 95-C-182-BU, 1995 WL 367893, *3 (N.D. Okla. April 28, 1995) (franchisor would suffer irreparable harm absent enforcement of covenant not to compete because customer confusion would result from the operation of a similar business by a former franchisee in the same area).

In this case, customers have come to know the now-former Center location as AAMCO. See O'Donnell Aff. at ¶ 31.  Indeed, the former Center location has operated as an AAMCO

franchise since February of 1967.  Id. at ¶ 32.  The former Center location has been and continues to be advertised in local Yellow Pages ads as "AAMCO."  Id. at ¶ 33.  ATI has a legitimate interest in protecting its good will in the Perth Amboy market area.

Confidential and Proprietary Information.  A franchisor also has a legitimate business interest in protecting itself from unfair competition by a former franchisee who has special, intimate knowledge of the franchisor's confidential operating methods.  See Giampapa, Bus. Franchise Guide (CCH) ¶11,442 (D.N.J. 1998); Boulanger v. Dunkin' Donuts Inc., 815 N.E.2d 572, 578-79 (Mass. 2004); Watson v. Wafflehouse, Inc., 324 S.E.2d 175, 177-78 (Ga. 1985); see also Meineke Discount Muffler v. Jaynes, 999 F.2d 120, 123 (5th Cir. 1993) ("Examples of legitimate, protectable interests include . . . trade secrets, and other confidential and proprietary information."); Minuteman Press Int'l, Inc. v. ANBAM, LLC, 03-CV-2140, Bus. Franchise Guide (CCH) ¶12,576 (E.D.N.Y. 2003).

In this case, Otiogiakhi has been trained in ATI's proprietary systems and has been provided with its confidential information and materials, trade secrets, and other unique methods, procedures and techniques developed by ATI.  See O'Donnell Aff. at ¶ 34.  Further, Otiogiakhi has retained, and may be using ATI's proprietary software, manuals and other materials containing ATI's marks, proprietary knowledge and trade secrets.  Id. at ¶ 35.  Otiogiakhi may be using his knowledge of ATI, its unique system of doing business and other confidential information in his competing business.  Id. at ¶ 36.  ATI has a legitimate interest in enforcing the non-compete covenant in order to protect its confidential and proprietary information from being used against it.

Protecting Franchisees From Unfair Competition.  A franchisor has a legitimate interest in protecting its remaining franchisees from unfair competition.  Casey's General Stores, Inc. v. Campbell Oil, Inc., 441 N.W.2d 758, 761-62 (Iowa 1989); Armstrong v. Taco Time Int'l, Inc., 635 P.2d 1114, 1119 (Wash. App. 1981).  A former franchisee that operates a business in contravention of a covenant not to compete has  an unfair advantage in that it can take

advantage of the knowledge and experience gained from the franchise relationship in its new business, without having to pay franchise fees for that information. See Ted P. Pearce, et al., The Enforcement of Post-Termination Remedies in the Franchise Contract, 24 Okla. City U. L. Rev. 81, 95 (1999). Moreover, failing to issue a preliminary injunction where a former franchisee is unfairly competing in breach of a non-compete covenant could be a clear signal to other franchisees that they can do the same, which could threaten the entire franchise system. ATL Int'l, Inc. v. Barader, 97-CV-3642, Bus. Franchise Guide (CCH) ¶11,345 (D. MD. 1997).

In this case, Otiogiakhi continues to operate from an established AAMCO Center location armed with AAMCO signage, materials, advertised telephone number, trade secrets and proprietary information. See O'Donnell Aff. at ¶ 37. At the same time, Otiogiakhi is no longer burdened with paying franchise fees or honoring AAMCO warranties. Id. at ¶ 38. Otiogiakhi's continued operation of a competing business from this location undeniably creates an unfair competitive advantage for Otiogiakhi. Id. at ¶ 39. Moreover, ATI has other AAMCO Transmission Centers in this market area. Id. at ¶ 40. If Otiogiakhi is permitted to flagrantly violate the non-compete covenant without penalty or recourse, ATI will not be able to police its own mark. Id. at ¶ 41. ATI has a legitimate interest in enforcing the non-compete covenant to protect its system and its franchisees from such unfair competition.

Re-franchising. Franchisors have a valid business interest in re-franchising the territory of a former franchisee. Piercing Pagoda, 351 A.2d at 211-212. The presence of a former franchisee operating in the same area can act as a disincentive to potential franchisees, who would have to pay franchise fees to operate essentially the same business as the former franchisee, who may have already gained the business of a substantial portion of the market in that territory. See, e.g., Domino's Pizza, Inc., 1995 WL 367893 at *3 (franchisor would suffer irreparable harm absent enforcement of covenant not to compete because it would be unable to attract new franchisees to the area served by the former franchisee).

In this case, ATI's efforts to set up a new AAMCO Transmission Center in the Perth Amboy area will be unfairly stymied as potential franchisees will not likely be willing to pay franchise fees to operate essentially the same businesses as Otiogiakhi, who is already operating from an established AAMCO location with AAMCO advertising.  See O'Donnell Aff. at ¶ 42.

In breach of the non-compete covenant, Otiogiakhi is competing with ATI from the former Center location using ATI's marks, goodwill and proprietary information, creating a grossly unfair competitive environment and making it virtually impossible for ATI to re-franchise the territory.  As such, ATI is entitled to injunctive relief enjoining Otiogiakhi from further breach of his non-compete obligations.

### c.    Otiogiakhi is Causing ATI to Suffer Irreparable Harm.

#### i.    Trademark Infringement

The courts have long recognized that the franchisor's trademark is the "cornerstone" of a franchise system.  Susser v. Carvel Corp., 206 F.Supp. 636, 640 (S.D.N.Y. 1962), aff'd, 332 F.2d 505 (2d Cir. 1964), cert. denied, 381 U.S. 125 (1965); Principe v. McDonald's Corp., 631 F.2d 303, 309 (4th Cir. 1980), cert. denied, 451 U.S. 970 (1981).  The uniformity that franchisors seek to have associated with their trademarks is what "causes the public to turn to franchise stores for the product."  Susser, 206 F.Supp. at 640.  Accordingly, when one improperly uses the trademark of another, the courts will not tolerate such behavior.  As articulately stated by Judge Learned Hand:

> If another uses [the trademark of the owner], he borrows the owner's reputation whose quality no longer lies within his control. This is an injury even though the borrower does not tarnish it, or divert any sales by its use; for a reputation, like a face, is the symbol of its possessor and creator, and another can use it only as a mask.

Yale Electric Corp. v. Robertson, 26 F.2d 972, 974 (2nd Cir. 1928).

In this case, Otiogiakhi continues to utilize ATI's AAMCO mark in his business.  See O'Donnell Aff. at ¶ 43.  Further, Otiogiakhi continues to use a telephone number that has been and continues to be advertised as linking to an AAMCO Transmission Center.  Id. at ¶ 44.  Succinctly stated, Otiogiakhi is misleading customers into believing that his competing business is a bona fide AAMCO Transmission Center when it is not.  Id. at ¶ 45.  Where a trademark holder establishes such a likelihood of confusion, it is presumed that the trademark holder will suffer irreparable harm if the injunctive relief is not granted.  S & R Corp, 968 F.2d at 375; Vision Sports, Inc. v. Mellville Corp., 888 F.2d 609, 612, n.3 (9th Cir. 1989) (citing Rodeo Collection, Ltd. v. West Seventh, 812 F.2d 1215, 1220 (9th Cir. 1987)).

Otiogiakhi has infringed upon ATI's trademark and continues to unfairly compete with ATI and its legitimate franchisees in violation of the Franchise Agreement.  Otiogiakhi's wrongful actions are causing irreparable harm to ATI that cannot be adequately addressed by money damages.

### ii.    Non-Compete Covenant

The harm being inflicted upon ATI by reason of Otiogiakhi's continued operation of a transmission repair business at the former Center location is irreparable.  As the Court in Weiss Bros. opined:

> [The Franchisor] may suffer irreparable harm if it is prevented from enforcing the provisions of a Franchise Agreement similar to one signed by all of its franchisees. [The Franchisees] have been caught with their hands in the till – indeed, they've admitted to putting their hands there. Were [Franchisor] not allowed to terminate an errant franchisee…other franchisees would get the message that they could defraud with impunity.  In a system dependent on accurate communication of information, such a result could be devastating.

834 F.Supp. at 693; see also Novus Franchising, Inc., 795 F. Supp. at 130-31 (holding that Franchisor would suffer irreparable harm, for purposes of a preliminary injunction, through damage to its good will and its ability to compete effectively in regional market if the restrictive covenant was not enforced.); Maaco Enterprises, Inc. v. Bremner, No. 98-CV-2727, 1998 WL

669936, *5 (E.D.Pa. Sept. 29, 1998) (holding that the franchisor had no adequate remedy at law because it could not be adequately compensated for the harm inflicted on its relationships with its franchisees, its inability to re-franchise the defendants' trading area, and the deprivation and dilution of the consumer recognition and goodwill built up under the franchisor's trademarks, trade dress and business system over many years); <u>Sparks Tune-Up, Inc. v. White</u>, No. 89-664, 1989 WL 41321, *2 (E.D.Pa. April 18, 1989) (holding that, because the violation of a covenant not to compete results in interference with customer relationships causing unquantifiable damages, such covenants are prima facie enforceable in equity).  Because Otiogiakhi's flagrant violation of the Franchise Agreement's covenant not to compete is causing and will continue to cause ATI irreparable harm, the Court should issue injunctive relief forcing Otiogiakhi to comply with his contractual obligations.

### d.   <u>Otiogiakhi Will Not Suffer Undue Harm</u>

#### i.   **Trademark Infringement**

Otiogiakhi will not suffer any legitimate harm if he is precluded from exercising rights that he does not lawfully possess.  As a result of the termination of Otiogiakhi's franchise, he is no longer authorized to use ATI's trademarks.  <u>See</u> <u>S & R Corp.</u>, 968 F.2d 375.  Under the facts of this case, the harm that would be visited upon ATI as a result of Otiogiakhi's ongoing, unauthorized use of ATI's marks would undeniably outweigh any harm that Otiogiakhi might suffer if he is enjoined from the further, unlawful use of those marks.

#### ii.   **Non-Compete Covenant**

The covenant not to compete in this matter is a collateral term to a binding contract and supported by valuable consideration (<u>i.e.</u>, the right to use ATI's marks during the term of the franchise agreement).  There is no legitimate reason not to enforce the covenant.  To the extent Otiogiakhi suffers harm as a result of being forced to comply with his contractual obligations, Otiogiakhi brough any such harm on himself as a result of his breach of the Franchise Agreement and related misconduct.  <u>Weiss Bros.</u>, 834 F.Supp. at 693.

Moreover, the scope of the restrictive covenant is tailored to minimize the harm to Otiogiakhi.  Under the covenant, Otiogiakhi is only precluded from engaging in the automotive repair business and only for a two (2) year period within a ten (10) mile radius of the former Center and/or any other AAMCO location.  The requested preliminary injunction should thus issue because the harm inflicted upon ATI outweighs the potential harm to Otiogiakhi which would be both self-inflicted and limited in nature.

**e.     The Requested Relief will Serve the Public Interest.**

**i.     Trademark Infringement**

The public interest will be served by issuing the injunctive relief requested in that customers who bring their vehicles to Otiogiakhi's business will no longer be misled into believing that they are receiving repair services and warranties from a bona fide AAMCO Transmission Center, which they are not.  See O'Donnell Aff. at ¶ 46.

**ii.     Non-Compete Covenant**

The public interest in this matter is best served by protecting the contractual agreement of the parties as embodied in the non-competition clause.  Novus Franchising, Inc., 795 F. Supp. at 132.

**CONCLUSION**

Based on the forgoing arguments and authorities, ATI respectfully requests that, in connection with Otiogiakhi's activities at the Center, the Court issue a Preliminary Injunction enjoining Otiogiakhi, his agents, servants, employees and/or those persons in active concert or participation with him, as follows:

A.     from using in any manner, including without limitation on or in any signs, stationery, letterheads, forms, printed matter or advertising, the proprietary marks "AAMCO", "AAMCO Transmissions" or similar names or marks.

B.      from advertising or otherwise holding himself out, directly or indirectly, as an authorized franchisee of ATI or as being in any way sponsored by or connected or associated with ATI.

C.      from doing anything to cause potential purchasers of transmission repair services to believe that any services or repairs performed by Otiogiakhi or any business with which he is associated originate with ATI or are endorsed or sponsored by ATI.

D.      to deliver to ATI or to persons designated by the Court all materials, including without limitation signs, stationery, letterhead, forms, printed matter and advertising, which contain the proprietary marks "AAMCO", "AAMCO Transmissions", or similar names or marks.

E.      to transfer to ATI or at ATI's direction, each telephone number listed by him under the designation "AAMCO Transmission" or any similar designation, including the telephone number (732) 324-1777, and to execute any instruments and take such steps as may be necessary or appropriate to transfer any such telephone numbers, and if he shall fail to do so, that counsel for ATI be designated by the Court as his attorney-in-fact to execute such documents in his name and in his place.

F.      from engaging in, directly or indirectly, the transmission repair business within ten (10) miles of the former Center located at 209 New Brunswick Avenue, Perth Amboy, NJ  08861 and/or any other AAMCO Transmission Center.

G.      to serve on ATI within thirty (30) days after the issuance of the preliminary injunction, a report in writing, under oath, setting forth in detail the measures undertaken by Otiogiakhi to comply herewith.

Respectfully submitted,

GIBBONS P.C.
*Attorneys for Defendant/Counterclaimant*
*AAMCO Transmissions, Inc.*

DATED:    September 6, 2011          BY: s/ Robert C. Brady
                                          Patrick C. Dunican, Jr.
                                          Robert C. Brady
                                          Timothy J. Duva