NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| EMMANUEL OTIOGIAKHI, an individual : : : Plaintiff, : : vs. : : AAMCO TRANSMISSIONS, INC., : : Defendant/Counterclaimant. : | Hon. Dennis M. Cavanaugh<br><br>**OPINION**<br><br>Civil Action No. 2:11-CV-04620 (DMC)(JAD) |

DENNIS M. CAVANAUGH, U.S.D.J.:

      This matter comes before the Court upon a motion for a Preliminary Injunction by Defendant and Counterclaimant AAMCO Transmissions, Inc. ("ATI") pursuant to FED. R. CIV. 65 to enjoin Plaintiff Emmanuel Otiogiakhi ("Plaintiff" or "Otiogiakhi") from infringing on ATI's marks and continuing to violate his post termination obligations under the Franchise Agreement (the "Franchise Agreement"). Pursuant to FED. R. CIV. P. 78, no oral argument was heard. The Court has reviewed the submissions of the parties, and for the reasons set forth below, Defendant/Counterclaimant's request for relief is **granted**.

**I.    BACKGROUND[1]**

      Defendant AAMCO Transmissions, Inc. ("ATI") is in the business of franchising or licensing others to use the mark and name "AAMCO" in the operation of transmission and general automotive

---

[1] Theses facts have been adopted from the Parties' respective submissions.

repair centers throughout the United States and Canada. ATI has continually used the name "AAMCO" as its trade name, trademark, and service mark in connection with the operation of this network of transmission repair centers. ATI is the exclusive owner of the AAMCO marks and maintains current registrations with the United States Patent and Trademark Office for said marks.

On November 6, 2006, ATI and Emmanuel Otiogiakhi ("Plaintiff" or "Otiogiakhi") entered into a franchise agreement (the "Franchise Agreement"). Pursuant to the Agreement, Mr. Otiogiakhi was authorized to use the name and mark "AAMCO" in connection with the operation of a transmission center located in Perth Amboy, New Jersey. The Center in question has been operated as an AAMCO franchise since February 1967 and was purchased by Otiogiakhi from a previous franchisee.

Under to the Franchise Agreement, Otiogiakhi was provided access to ATI's proprietary system of doing business, attended ATI training classes where he was given in-depth instruction on how to operate an AAMCO Transmission Center, and was provided access to ATI proprietary business management software, technical assistance, and other materials and programs. The Franchise Agreement also provided that Mr. Otiogiakhi agreed to pay a weekly franchise fee equal to 5% of the gross receipts of the preceding week. Mr. Otiogiakhi was to mail an accurate report of the Center's gross receipts with copies of the repair orders for all work completed and such other information or reports as AAMCO may request.

In an effort to regulate the quality of services provided throughout its franchise, ATI has established a system of standards and policies that govern the operation of each Center. To ensure that such standards and policies are being followed, ATI has established procedures calling for the inspection of franchisees' centers.

On April 5, 2011, ATI sent a field auditor, Edward Boyle ("Auditor"), to Mr. Otiogiakhi's Center to perform an onsite inspection of Otiogiakhi's books and records.[2] During the visit, Boyle discovered documentation revealing that numerous transactions reported to ATI as not collected or only partially collected had in truth been paid, documentation of numerous transactions that were reported to ATI as noncollectable that were in fact bona fide sales on which Otiogiakhi received payment, and numerous repair orders documenting customer sales that had never been reported to ATI. The Auditor confronted Mr. Otiogiakhi with the discrepancies. Upon confrontation, Mr. Otiogiakhi admitted to intentionally concealing sales so that he would not have to pay the corresponding franchise fees to ATI.

On May 25, 2001, Mr. Otiogiakhi attended a meeting at AAMCO's headquarters in Horsham, Pennsylvania to discuss the auditor's findings. The meeting was attended by AAMCO's auditor who conducted the inspection, General Counsel, Senior Vice President of Operations, and Regional Vice President of Operations. At this meeting, Mr. Otiogiakhi again admitted to intentionally concealing the sales so that he would not be required to pay the corresponding franchise fees to ATI.

On June 2, 2011, ATI issued a Letter of Termination to Mr. Otiogiakhi, indicating that as a result of his intentional underreporting of sales to AAMCO, his Franchise Agreement would terminate sixty days thereafter. Accordingly, the Franchise Agreement was terminated on August 1, 2011.

The Franchise Agreement provides for "Procedures after Termination." These procedures

---

[2]This was the second audit conducted of Mr. Otiogiakhi's Center and was precipitated by an amassment of uncollected cash. The first audit resulted in an assessment in the amount of $2,542.65 in unpaid franchise fees which Mr. Otiogiakhi agreed to and then paid. At the time of the first assessment Mr. Otiogiakhi was reminded that intentional underreporting was a material breach of the Franchise Agreement.

directed Mr. Otiogiakhi as the terminated franchisee to, inter alia, discontinue use of the mark "AAMCO" and any other designation tending to indicate that the Franchisee is or was an authorized AAMCO franchisee, to promptly surrender all signs, stationary, advertising, and training materials containing the mark "AAMCO" or any other designation tending to indicate that Franchisee is or was an authorized franchisee of AAMCO, to discontinue all advertising as an authorized AAMCO dealer, and to promptly transfer to AAMCO, and take any requisite steps necessary to accomplish the transfer of, each telephone number listed under the designation "AAMCO" or similar designation.

The Franchise Agreement also contains a "Covenant Not-To-Compete" which provides that "[f]or a period of two (2) years after termination of this Agreement, Franchisee shall not directly or indirectly engage in the transmission repair business within a radius of ten (10) miles of the former center or any other AAMCO center." The Covenant expressly specifies that the basis for the covenant was the provision of confidential information, materials, and trade secrets, as well as the fact that the development of the marketplace in which the Center is located is solely the result of the AAMCO name and trademark. The Covenant further provides that the Franchisee acknowledges that the restrictions contained therein are "reasonable and necessary to protect the legitimate interests of AAMCO" and that any violation of these restrictions would result in irreparable injury to AAMCO and would entitle AAMCO to preliminary and permanent injunctive relief, damages and an accounting, as well as any other rights and remedies to which AAMCO would be entitled.

In spite of the termination of the Franchise Agreement and the operation of the termination provisions therein provided, to date Mr. Otiogiakhi continues to operate a transmissions repair business at the same location and under the name and style "AAMCO Transmissions." Mr. Otiogiakhi has also failed to remove the AAMCO name and trademark from the Center or to turn

over to ATI the telephone numbers that link to current or former advertising for "AAMCO Transmission." The Center continues to be advertised in the local Yellow Pages under the "AAMCO" name.

On July 14, 2011, Plaintiff commenced this action in the New Jersey Superior Court, alleging claims against ATI for breach of contract, violation of the New Jersey Law Against Discrimination, and seeking an accounting.[3]  On August 10, 2011, ATI removed this matter to the United States District Court for the District of New Jersey and on August 31, 2011 filed an Answer, Affirmative Defenses, and Counterclaim against Mr. Otiogiakhi.  In its Counterclaim, ATI seeks to enforce the termination of the Franchise Agreement against Mr. Otiogiakhi and alleges, inter alia, causes of action for trademark infringement under the Lanham Act and breach of contract seeking specific performance of the Franchise Agreement's post termination provisions. Defendant/Counterclaimant has now asked this Court to grant a Preliminary Injunction to enjoin Plaintiff from infringing on ATI's marks and from continuing to violate his post termination obligations.

For the reasons discussed herein, Defendant/Counterclaimant's motion for a preliminary injunction is hereby **granted**.

## II. LEGAL STANDARD

Injunctive relief is an "extraordinary remedy, which should be granted only in limited circumstances." Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer

---

[3] In his complaint, Plaintiff disputes the amount of money that is owed to ATI and claims that the agreement was terminated for reasons other than the claim that he owes money.  Plaintiff claims that ATI is attempting to gain his franchise so that they can sell it to someone else because they have a problem with his accent and the fact that he is a black man. Plaintiff filed an application for an Order to Show Cause with Temporary Restraints seeking to temporarily enjoin ATI from enforcing the termination of the Franchise Agreement.

Pharms. Co., 290 F.3d 578, 586 (3d Cir. 2002) (quotation and citation omitted); Kos Pharm. Inc. v. Andrx Corp., 369 F.3d 700, 708 (3d Cir. 2004); see also Am. Tel. & Tel. Co. v. Winback & Conserve Program, Inc., 42 F.3d 1421, 1427 (3d Cir. 1994).  "A decision to grant or deny a preliminary injunction is within the sound discretion of the district court." Sanofi-Aventis Deutschland GmbH v. Glenmark Pharms. Inc., 2010 WL 2428561 (D.N.J. June 9, 2010) (citing Oakley, Inc. v, Sunglass Hut Int'l, 316 F.3d 1331, 1339 (Fed. Cir. 2003)); see also Spartacus, Inc. v. Borough of McKees Rocks, 694 F.2d 947, 949 (3d Cir. 1982).  To determine whether a preliminary injunction should be granted, a district court must consider four factors:

> (1) whether the movant has shown a reasonable probability of success on the merits; (2) whether the movant will be irreparably injured by denial of the relief; (3) whether granting preliminary relief will result in even greater harm to the nonmoving party; and (4) whether granting preliminary relief will be in the public interest.

Gerardi v. Pelullo, 16 F.3d 1363, 1373 (3d Cir. 1994); see also ACLU of N.J. v. Black Horse Pike Reg'l Bd. of Educ., 84 F.3d 1471, 1477 n. 2 (3d Cir. 1996); Opticians Ass'n of Am. v. Indep. Opticians of Am., 920 F.2d 187, 191-92 (3d Cir. 1990); CIBA-GEIGY Corp. v. Bolar Pharm. Co., Inc., 747 F.2d 844, 850 (3d Cir. 1984) cert. denied 471 U.S. 1137 (1985).  The moving party bears the burden of showing that these factors weigh in favor of granting the injunction.  Kos Pharm. Inc., 369 F.3d at 708.  "Only if the movant produces evidence sufficient to convince the [court] that all four factors favor preliminary relief should the injunction issue." Opticians Ass'n of Am., 920 F.2d at 192; see also Nutrasweet Co. v. Vit-Mar Enter. Inc., 176 F.3d 151, 153 (3d Cir. 1999);  Am. Tel. & Tel. Co., 42 F.3d at 1427 (citation omitted).

  The Third Circuit has accorded particular weight to the first two of the Injunction Factors: irreparable harm and likelihood of success on the merits. Hoxworth v. Blinder, Robinson & Co.,

903 F.2d 186, 197 (3d. Cir. 1990) (quoting In re Arthur Treacher's Franchisee Litig., 689 F.2d 1137, 1143 (3d Cir. 1982) ("[W]e cannot sustain a preliminary injunction ordered by the district court where either or both of these prerequisites are absent.")); see also Scholastic Funding Grp., LLC v. Kimble, 2007 U.S. Dist. LEXIS 30333, at *28 (D.N.J. Apr. 24, 2007).  Nonetheless, the district court should only award preliminary injunctive relief upon weighing all four factors. Am. Tel. & Tel. Co., 42 F.3d at 1427, (citing Duraco Prod, Inc. v. Joy Plastic Enter. Ltd., 40 F.3d 1431, 1438 (3d Cir. 1994).)

Federal Jurisdiction in the instant matter is based on diversity of citizenship pursuant to 28 U.S.C. § 1332(d).

**III.  DISCUSSION**

A.  Likelihood of Success on the Merits

In their Counterclaim, Defendant raises claims of, and seeks injunctive relief for, trademark infringement and breach of the Franchise Agreement.  For the reasons herein discussed, this court finds that Defendant/Counterclaimant has established a likelihood of success on the merits on both claims for which it seeks injunctive relief.

1.  Breach of Franchise Agreement

Pursuant to Sections 3.1 and 4.1 of the Franchise Agreement, Mr. Otiogiakhi as franchisee agreed to accurately report sales and pay franchise fees on the gross receipts of his Center's business.  Plaintiff has not once, but twice, admitted to having under-reported sales and consequently underpaid franchise fees owed under the Franchise Agreement.  Such under-reporting and underpaying constituted a material breach of the Franchise Agreement, and entitled ATI to terminate the Franchise Agreement.  Specifically, the Franchise Agreement provides that

AAMCO may terminate the agreement "by giving written notice to Franchisee upon the occurrence of...failure to make any payments required under any provision of [the] Agreement" or "if Franchisee shall commit a violation of any provision of [the] Agreement." ATI was therefore entitled to terminate the Franchise Agreement and did so by notice on June 2, 2011, effective August 1, 2011.

Mr. Otiogiakhi's failure to perform the requisite obligations under the Franchise Agreement subjected him to the termination provisions and therefore divested him of his rights under the contract. See  S&R Corp. v. Jiffy Lube Int'l, Inc., 968 F.2d 371, 376 (3d Cir. 1992)("Under no circumstances may the non-breaching party stop performance *and* continue to take advantage of the contract's benefits."(emphasis in original)).[4]  Yet in spite of his receipt of notification of termination of the Franchise Agreement, it appears undisputed that Mr. Otiogiakhi has continued to operate his Center under the same marks, using the same materials, and in the same location.

Mr. Otiogiakhi's continued operation of his transmission center is also in clear violation of the Covenant-Not-To-Compete contained in the Franchise Agreement.  Pursuant to the Covenant, Mr. Otiogiakhi agreed that for a period of two years after the termination of the Agreement he would not directly or indirectly engage in the transmission repair business within a radius of ten miles of the former Center or any other AAMCO center.  This promise was made by Mr. Otiogiakhi in specific recognition of the fact that, as a franchisee, he would receive confidential information, proprietary materials, and trades secrets, as well as enjoy the benefit of

---

[4] As will be discussed in greater detail below, it is of no moment that Mr. Otiogiakhi raises claims that the termination of the Agreement was unlawful.  Mr Otiogiakhi's claims do not entitle him to continued use of the trademark.

the marketplace built solely as the result of the AAMCO name and trademark.

The Franchise Agreement provides that it is governed by Pennsylvania law. Accordingly, the covenant will only be enforced to the extent that it comports with Pennsylvania law. See Marblelife, Inc. v. Stone Resources, Inc., 759 F. Supp.2d 552, 558 (E.D.Pa. 2010) (applying Texas law to determine enforceability of covenant-not-to-compete when the Franchise Agreement contained Texas choice of law provision). In order for a covenant-not-to-compete to be enforceable under Pennsylvania law, it must: (1) relate to a contract for the sale of goodwill or other subject property or to a contract for employment; (2) the covenant must be supported by adequate consideration; and (3) the application of the covenant must be reasonably limited in both time and territory." Maintenance Specialties, Inc. v. Gottus, 455 Pa. 327, 331 (1974)(Jones, C.J., concurring). Pennsylvania courts will "permit the equitable enforcement of a covenant not to compete included in a franchise agreement where the restrictions are reasonably necessary for the protection of the franchisor without imposing undue hardship on the franchisee and the restrictions are reasonably limited as to duration of time and geographical extent." Id. at 212.

Pennsylvania courts have analogized covenants-not-to-compete contained in franchise agreements with those found in employment contracts when considering their enforcement. Piercing Pagoda, Inc. v. Hoffner, 351 A.2d 207, 210 (Pa. 1976). In the employment context, Pennsylvania Courts have upheld covenants-not-to-compete of similar duration and geographical scope to that at issue here. See Jacobson & Co. v. Int'l Env't Corp., 235 A.2d 612, 620 (Pa. 1967) (upholding the enforcement of a covenant-not-to-compete prohibiting a salesman from engaging in similar business for two years within the eastern half of Pennsylvania, southern half of New Jersey and New Castle County, Delaware); Barb-Lee Mobile Frame Co. v. Hoot, 416

9

A.2d 222, 225 (Pa. 1965) (upholding modified covenant that would not compete for five years in all of Pennsylvania); Bettinger v. Carl Berke Assoc., 314 A.2d 296, 298 (Pa. 1974)(affirming injunction enforcing covenant-not-to-compete that prohibited employee from engaging in similar business for one year within fifty miles of City Hall, Philadelphia, Pennsylvania); Piercing Pagoda, 351 A.2d at 213 (modifying covenant-not-to-compete in a franchise agreement that prohibited the franchisee from owning, operating, or participating in the same business for one year within 30 miles of an individual store).

Here, Defendant requests that we enforce the covenant not to compete for a period of two years within the ten mile radius from the current Center's location or any other AAMCO Center. Given Pennsylvania precedent, this two year and ten mile limitation is clearly reasonable.[5]  ATI has operated a franchise at the Center in question for forty-four years and has a legitimate business interest in maintaining the business and goodwill that its trademark has developed and maintained during that time.  The limitations imposed are reasonable to enable ATI to reinstitute a new franchisee in the developed marketplace and to prohibit Plaintiff from utilizing the proprietary information obtained from ATI to directly compete with Defendant in the relevant marketplace.

Defendant has therefore exhibited a likelihood of success on the merits on their claim of breach of franchise agreement.

---

[5]We note a tendency of Pennsylvania Courts to modify a covenant not to compete to comport with their conception of reasonableness. See Jacobson & Co., 235 A.2d at 620 (Pa. 1967); Barb-Lee Mobile Frame Co. v. Hoot, 416 A.2d at 225; Bettinger, 314 A.2d at 298; Piercing Pagoda, 351 A.2d at 213.  Accordingly, we hold that to whatever extent the covenant would be held enforceable, Plaintiff's continued occupation and operation of the previous Center would likely be found in violation of its terms.

      2. <u>Trademark Infringement</u>

Defendant seeks injunctive relief for their claim of trademark infringement under the Lanham Act. 15 U.S.C. § 1125(a) provides

> "[a]ny person who, on or in connection with any goods or services...uses in commerce any word, term, name, symbol, or device, or any combination thereof...which (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person...shall be liable in a civil action by any person who believes that he or she is likely to be damaged by such act."

15 U.S.C. § 1116 authorizes the issuance of an injunction to prevent the violation of § 1125(a).

ATI claims that Plaintiff has committed trademark infringement through his continued unauthorized use of the AAMCO trademark after the termination of the Franchise Agreement. To prevail on a claim of unauthorized trademark use, a party must establish that the continued use of the moving party's valid trademark is "likely to create confusion concerning the origin of the goods or services." See <u>S&R Corp.</u> 968 F.2d at 375, citing <u>Opticians Ass'n of Am.</u>, 920 F.2nd at 192. "Likelihood of confusion exists when consumers viewing the mark would probably assume that the product or service it represents is associated with the source of a different product or service identified by a similar mark." <u>Fisons Horticulture v. Vigoro Indus. Inc.</u>, 30 F.3d 466, 472 (3d Cir. 1994), citing <u>Dranoff-Perlstein Assoc. v. Sklar</u>, 967 F.2d 852, 862 (3d Cir. 1992). "There is a great likelihood of confusion when an infringer uses the exact trademark of the [moving party]" <u>S&R Corp.</u>, 968 F.2d at 375, citing <u>Opticians Ass'n of Am.</u>, 920 F.2d at 195; see also <u>Pappan Enter., Inc. v. Hardee's Food Systems, Inc.</u>, 143 F.3d 800, 805 (3d Cir. 1998); <u>Marblelife, Inc.</u>, 759 F.Supp. at 561 (finding likelihood of confusion to be further evidenced when Defendant continues to hold itself out as a franchisee, "not only using [the

franchise] name but also retaining the company's phone numbers, email addresses, and advertising arrangements thus adding to the likelihood of confusion").  Here, Plaintiff continues to operate out of the same center, using the same marks, and using the same telephone numbers advertised under the AAMCO trade name.  It is highly likely that such continued operation will cause confusion to any customers who wish to utilize Mr. Otiogiakhi's services.

Plaintiff's claims of wrongful termination of the Franchise Agreement and contentions regarding the amount of money owed pursuant to the Agreement do not change the analysis, nor do they permit Mr. Otiogiakhi to continue in his unauthorized use of the AAMCO mark.  Rather, ATI's right to terminate the Agreement exists independent of any claims Otiogiakhi may have against it.  See S&R Corp., 968 F.2d at 375 ("[A] franchisor's right to terminate a franchisee exists independently of any claims the franchisee might have against the franchisor.") Mr. Otiogiakhi's remedy for his allegations of wrongful termination does not include continued unauthorized use of the trademarks, but is rather limited to an action for money damages. Id. at 376, citing Burger King Corp. v. Hall, 770 F.Supp. 633, 638 (S.D. Fla 1991)("[A] terminated franchisee's remedy for wrongful termination is an action for money damages, and not the continued unauthorized use of its franchisor's trademarks.")  Plaintiff's failure to comply with the requirements of the Franchise Agreement are therefore not excused by his allegations, and Plaintiff is "not entitled to continue using the [franchise] name in accordance with the agreement without performing the reciprocal obligations of the agreement." Id. at 377.

Defendant has therefore succeeded in demonstrating a likelihood of success on their claim of trademark infringement.

B. <u>Irreparable Injury</u>

We must next consider the irreparable injury that would be suffered by the moving party if the injunction were not issued. Several recognized grounds for irreparable injury apply to the case at hand. The Third Circuit has found grounds for irreparable injury in the "loss of control of reputation, loss of trade, and loss of goodwill," as well as the possibility of confusion. <u>Opticians Ass'n of Am.</u>, 920 F.2d at 195. Importantly here, the Third Circuit has held that "trademark infringement amounts to irreparable injury as a matter of law." <u>S&R Corp.</u>, 968 F.2d at 387, citing <u>Opticians Ass'n of Am.</u>, 920 F.2d at 195. Therefore, the court will *a fortiori* find irreparable injury where the moving party has demonstrated a likelihood of success on a claim that the party to be enjoined is infringing on its trademark. <u>Id.</u>; <u>see also</u> <u>Pappan Enter., Inc.</u>, 143 F.3d at 805 (holding "once the likelihood of confusion caused by trademark infringement has been established, the inescapable conclusion is that there was also irreparable injury.")

As previously discussed, we find that ATI has established a likelihood that it will succeed on its claim of trademark infringement. Therefore, irreparable injury has been established.

C. <u>Balance of Harms</u>

Having established both a likelihood of success on the merits and irreparable injury to ATI if the injunction is not issued, we must next consider the hardship that will befall Mr. Otiogiakhi if the injunction is issued. The hardship to Plaintiff must be balanced against the already established irreparable injury to ATI. <u>See</u> <u>Opticians Ass'n of Am.</u>, 920 F.2d at 197.

As a preliminary matter, we note that any harm occasioned by Mr. Otiogiakhi is the result of his own admitted non-compliance with the terms of the Franchise Agreement. Mr. Otiogiakhi further admitted that his deficient performance was a conscious attempt to avoid his obligations

13

under the Franchise Agreement. The Third Circuit has held that "[a] party's self-inflicted harm by choosing to stop its own performance under contract and thus effectively terminating the agreement is outweighed by the immeasurable damage done to the franchisor of the mark." Pappan Enter., Inc., 143 F.3d at 806. Therefore, any self-inflicted harm that Mr. Otiogiakhi suffers as the result of his deficient performance is outweighed by the irreparable injury suffered by ATI in the infringement of its trademark, damage to good-will, and loss of control of its reputation.

Moreover, as Defendant notes, Plaintiff cannot suffer legally cognizable harm in being precluded from exercising rights that he does not lawfully possess. As previously discussed, ATI's right to terminate the Franchise Agreement existed independent of any claim Mr. Otiogiakhi may have. See Pappan Enter., Inc., at 806-07 ("where the franchise agreement gives the franchisor the power to unilaterally terminate the agreement under certain conditions, and those conditions exist, pre-termination complaints are not relevant to infringement under the Lanham Act.") This termination concluded Plaintiff's rights to operate as an AAMCO franchisee and to use the AAMCO marks. Plaintiff may not allege harm in his inability to exercise the rights that ceased to exist upon the termination of the agreement.

We therefore conclude that ATI's irreparable injury outweighs the harm occasioned upon Otiogiakhi for his failure to comply with the terms of the Agreement.

D. Public Interest

Finally, we must consider the extent to which the issuance of the injunction would benefit the public interest. The Third Circuit has held that "[i]n a trademark case, the public interest is 'most often a synonym for the right of the public not to be deceived or confused." S&R Corp.,

968 F.2d at 379, citing Opticians Ass'n of Am., 920 F.2d at 197.  Where likelihood of confusion has been established due to concurrent unauthorized use of a trademark, the infringer's use similarly damages the public interest.  Id. (finding "harm to the public interest is much like irreparable injury to the trademark owner.")  Therefore, because it has already been established that Mr. Otiogiakhi's unauthorized use of the AAMCO trademark could result in consumer confusion, it is clear that the public interest will be served by enjoining any further unauthorized use.  The issuance of an injunction would eliminate the confusion associated with the unauthorized use of the trademark and would prevent customers from being misled into believing they were receiving services from an authorized AAMCO franchise, when in fact they are not.

ATI has therefore succeeded in demonstrating that the issuance of the injunction would be in the public interest.  As such, ATI has sufficiently demonstrated that a preliminary injunction should be issued to prohibit Mr. Otiogiakhi from infringing on ATI's marks and continuing to violate his post termination obligations under the Franchise Agreement

IV.  CONCLUSION

For the foregoing reasons, Defendant's motion for preliminary injunction is **granted**.  An appropriate Order accompanies this Opinion.

    S/ Dennis M. Cavanaugh
    DENNIS M. CAVANAUGH, U.S.D.J.

Dated: November 17, 2011
cc:    All counsel of record
        Hon. Joseph A. Dickson, U.S.M.J.